IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| CHILDREN'S HEALTH DEFENSE, TRIALSITE, INC., CREATIVE DESTRUCTION MEDIA, LLC, ERIN ELIZABETH FINN, JIM HOFT, DR. BEN TAPPER, BEN SWANN, DR. JOSEPH MERCOLA, TY BOLLINGER, CHARLENE BOLLINGER, & JEFF CROUERE, | ) ) ) ) ) ) ) ) ) | Civil Action No. 3:23-cv-00720 |
| *Plaintiffs,* | ) ) | Judge Terry A. Doughty |
| v. | ) ) | Magistrate Judge Kayla D. McClusky |
| WP COMPANY LLC D/B/A THE WASHINGTON POST, THE BRITISH BROADCASTING CORP., THE ASSOCIATED PRESS, & REUTERS NEWS & MEDIA, INC., | ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

**BRIEF IN SUPPORT OF THE ASSOCIATED PRESS, REUTERS
NEWS & MEDIA INC., AND WP COMPANY LLC'S MOTION TO TRANSFER**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

      A.    None of the Plaintiffs Reside Within the Western District of
            Louisiana, and All but One Plaintiff Reside Completely Outside
            of Louisiana. ...................................................................................... 3

      B.    No Defendant Is Headquartered or Has Its Principal Place of
            Business in Louisiana. ...................................................................... 4

      C.    The Operative Facts of the Lawsuit Did Not Occur in Louisiana. ................. 5

      D.    The Case Was Initially Filed in Amarillo, TX, and Was
            Transferred to the Southern District of New York. ......................... 6

ARGUMENT ................................................................................................................... 7

I.      PLAINTIFFS COULD HAVE BROUGHT THIS ACTION IN THE
        SOUTHERN DISTRICT OF NEW YORK, OR ALTERNATIVELY,
        THE DISTRICT OF COLUMBIA. ................................................................ 8

II.     PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO NO
        DEFERENCE. ............................................................................................. 10

III.    THE 1404(A) FACTORS STRONGLY SUPPORT TRANSFER. .......................... 11

      A.    The Private Factors Support Transfer. ............................................. 12

            1.    Access to Sources of Proof ................................................. 12

            2.    Availability of Compulsory Process To Secure Witness
                 Attendance ........................................................................ 13

            3.    Witness Convenience and Access ....................................... 15

            4.    Other Practical Considerations—Lack of Personal
                 Jurisdiction over the BBC ................................................. 21

      B.    The Public Factors Support Transfer. .............................................. 22

            1.    Court Congestion ............................................................... 22

            2.    Local Interest .................................................................... 23

            3.    Familiarity with Law ......................................................... 25

4.   Conflict of Laws .......................................................................... 25

CONCLUSION ............................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co.*, 2020 WL 4050243, at *3 (E.D. La. July 17, 2020)..................................................................9

*Baswell v. Yazoo River Towing*, 2014 WL 5469746 (W.D. La. Oct. 28, 2014) .....................23, 25

*Child.'s Health Def. v. WP Co.*,
2023 WL 3940446 (N.D. Tex. May 12, 2023) ............................................... *passim*

*CM Constr. & Excavation LLC v. Worley Servs. Inc.*, 2019 WL 2896594 (W.D. La. Apr. 29, 2019), *R. & R. adopted*, 2019 WL 2896596 (W.D. La. July 3, 2019)..............................25

*Cornelius v. Am. Com. Barge Line LLC*, 2021 WL 4762578 (W.D. La. Oct. 12, 2021)....... *passim*

*Crochet v. Seadrill Americas Inc.*, 2022 WL 18492150 (W.D. La. Dec. 19, 2022), *R. & R. adopted*, 2023 WL 424884 (W.D. La. Jan. 26, 2023)...............................................23

*Datamedia Comput. Serv., Inc. v. AVM Corp.*, 441 F.2d 604 (5th Cir. 1971)................................9

*Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022).........................................................21, 22

*Extreme Technologies, LLC v. Stabil Drill Specialties, LLC*,
2019 WL 2353168 (W.D. La. May 30, 2019) ............................................1, 3, 7, 11

*Fowler v. Deloitte & Touche, LLP*, 2017 WL 1293983 (W.D. La. Mar. 24, 2017) .............. *passim*

*Godoy v. BP Expl. & Prod. Inc.*, 2019 WL 2122955 (E.D. La. May 15, 2019)...........................16

*Guidry v. Select Oilfield Servs., LLC*, 2016 WL 6639164 (W.D. La. Nov. 8, 2016) ........10, 11, 12

*Hard Metal Advantage LLC v. Kennametal Inc.*, 2022 WL 1088887 (W.D. La. Mar. 22, 2022), *R. & R. adopted*, 2022 WL 1090549 (W.D. La. Apr. 6, 2022) ........................... *passim*

*Haughton v. Plan Adm'r of Xerox Corp. Ret. Income Guarantee Plan*,
2 F. Supp. 3d 928 (W.D. La. 2014)...................................................................23, 25

*In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201 (5th Cir. 2004)...........................................15

*In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304 (5th Cir. 2008) ..................8, 12, 13

*Kaneka Corp. v. SKC Kolon PI, Inc.,* No. 1:10-CV-430,
2011 WL 13134647 (E.D. Tex. Mar. 30, 2011) .............................................15, 20

*Louisiana ex rel. Tureau v. BEPCO, L.P.*, 2018 WL 3581126 (M.D. La. July 2, 2018), *R. & R. adopted sub nom. Louisiana v. Bepco, L.P.*,
2018 WL 3579474 (M.D. La. July 25, 2018) .................................................10, 11

*Matirne v. Advancial Fed. Credit Union*, 2018 WL 1023813 (W.D. La. Feb. 21, 2018) .......22, 23

*Nexen Petroleum U.S.A., Inc. v. Ensco Offshore Co.*,
    2015 WL 6511879 (W.D. La. Oct. 27, 2015) .........................................................2, 13, 15, 21

*Osterweil v. Edmonson*, 2010 WL 2428074 (W.D. La. June 10, 2010) ........................................12

*Potts v. Cameron Offshore Boats, Inc.*, 401 F. Supp. 2d 733 (S.D. Tex. 2005) ...........................20

*Richards v. Stone*, 2019 WL 6997917 (W.D. La. Nov. 4, 2019), *R. & R. adopted*, 2019
    WL 6974776 (W.D. La. Dec. 18, 2019) ....................................................................................19

*Roulston v. Yazoo River Towing, Inc.*, 2004 WL 1687232 (E.D. La. 2004)...........................10, 11

*Smiley v. Reno*, 131 F. Supp. 2d 839 (W.D. La. 2001)................................................................22

*St. Paul Surplus Lines Ins. Co. v. Ace Am. Ins. Co.*, 2010 WL 4875683, (W.D. La. Oct.
    12, 2010), *R. & R. adopted*, 2010 WL 4830213 (W.D. La. Nov. 22, 2010)...............15, 24, 25

*Ventress v. Radiator Specialty Co.*, 2012 WL 1247205 (E.D. La. Apr. 13, 2012).......................10

## STATUTES AND RULES

12 U.S.C. § 22..................................................................................................................................9

15 U.S.C. § 12..................................................................................................................................9

15 U.S.C. § 15..................................................................................................................................8

15 U.S.C. § 22.........................................................................................................................7, 8, 9

15 U.S.C. § 26..................................................................................................................................8

28 U.S.C. § 1331........................................................................................................................7, 8

28 U.S.C. § 1337..............................................................................................................................8

28 U.S.C. § 1404......................................................................................................................1, 2, 7

Fed. R. Civ. P. 45(c)(1)(A)(B)......................................................................................................13

## INTRODUCTION

This Court has previously explained that it "refuses to respect choices that appear to be blatant attempts at 'judge shopping.'" *Extreme Technologies, LLC v. Stabil Drill Specialties, L.L.C.*, 2019 WL 2353168, at *3 (W.D. La. May 30, 2019). That is precisely what Plaintiffs are attempting in this case. Neither the Plaintiffs, nor the Defendants, nor the claims, have any connection to this District whatsoever. Pursuant to 28 U.S.C. § 1404, the Court should transfer this case back to the District Court for the Southern District of New York—where the case was transferred previously, before Plaintiffs voluntarily dismissed it—or in the alternative, to the District of Columbia.

It is important to consider this Motion to Transfer in the context of the unusual procedural history that brought Plaintiffs to this Court in the first place. Plaintiffs initially filed this lawsuit in the Amarillo Division of the Northern District of Texas. Recognizing that none of the parties had any connection to that forum—and that Plaintiffs, Defendants and the conduct at issue had more meaningful connections to New York—Judge Kacsmaryk granted Defendants' Motion To Transfer to the Southern District of New York. *See generally Child.'s Health Def. v. WP Co. (CHD)*, 2023 WL 3940446 (N.D. Tex. May 12, 2023). However, shortly after the case was assigned to Judge Edgardo Ramos, Plaintiffs voluntarily dismissed it. They then refiled this substantially identical lawsuit in this Court.

There is no connection between this case and the Western District of Louisiana. Of the eleven plaintiffs, *none* lives or is based or incorporated in the District (and only one newly added plaintiff even lives in Louisiana, near New Orleans). None of the defendants are incorporated in or have their principal place of business in Louisiana, and none of the alleged anticompetitive conduct took place in Louisiana. The alleged events in this case took place far away from Louisiana, and largely on a different continent altogether, namely, at the offices of the British

Broadcasting Corporation ("BBC") in the United Kingdom, and Defendants' offices in New York, the District of Columbia, and London.

Accordingly, there is "good cause" to transfer this case back to the District Court for the Southern District of New York, or in the alternative, to the District of Columbia. 28 U.S.C. § 1404. Such a transfer would, among other considerations, maximize witness convenience and avoid the need to sever the case against the BBC due to a lack of personal jurisdiction in this forum.

The relevant Section 1404(a) private- and public-interest factors strongly favor transfer. 28 U.S.C. § 1404(a). Specifically, all four private-interest factors and two public-interest factors support transfer, while the other two public-interest factors are neutral. Of particular significance, "the most important factor" of witness convenience warrants transfer. *See Nexen Petroleum U.S.A., Inc. v. Ensco Offshore Co.*, 2015 WL 6511879, at *4 (W.D. La. Oct. 27, 2015). Not a single party resides in this District. Only *one* out of fifteen parties and *no* nonparty witnesses live in Louisiana. And the overwhelming majority of likely defense witnesses live in New York, the District of Columbia, or London, as do many nonparty witnesses, who are otherwise spread across the globe. Accordingly, as Judge Kacsmaryk already recognized, transfer to the Southern District of New York would serve the convenience of nearly all witnesses (including at least one Plaintiff who is located in the New York area). *See CHD*, 2023 WL 3940446, at *3; *Nexen Petroleum U.S.A., Inc.*, 2015 WL 6511879, at *10 (finding this factor weighs in favor of transfer where majority of the witnesses were located in the transferee district, "while only one witnesses [sic] is located within 100 miles of the Western District of Louisiana").

Further, if the Court grants the BBC's motion to dismiss for lack of personal jurisdiction, filed concurrently with this motion, *see* ECF No. 39, then the BBC may be severed from this suit, *see CHD*, 2023 WL 3940446, at *3. This problem would be avoided and judicial economy would be served by transfer to either the District of Columbia, which has jurisdiction over all Defendants

under the Clayton Act, or the Southern District of New York, which has jurisdiction over The AP, Reuters, and the Post under the Clayton Act, and where, upon transfer, the BBC would not contest jurisdiction for purposes of this action.  *See* Brief Supp. BBC's Mot. To Dismiss ("BBC Mot."), ECF. No. 39; *Hard Metal Advantage LLC v. Kennametal Inc.*, 2022 WL 1088887, at *5 (W.D. La. Mar. 22, 2022) (noting the court places "high importance on avoiding the possibility of inconsistent, piecemeal litigation of closely related claims"), *R. & R. adopted*, 2022 WL 1090549 (W.D. La. Apr. 6, 2022).

In sum, the District Court for the Southern District of New York or, in the alternative, the District of Columbia is "clearly [a] more convenient" venue, and a transfer is "in the interests of justice." *Fowler v. Deloitte & Touche, LLP*, 2017 WL 1293983, at *8, *9 (W.D. La. Mar. 24, 2017) (granting transfer).  The Court should "refuse[] to respect" Plaintiffs' gamesmanship and transfer this case back to the Southern District of New York or to the District of Columbia.  *See Extreme Technologies, LLC*, 2019 WL 2353168, at *3.

## BACKGROUND

The following discussion summarizes key facts relevant to this transfer motion.  Additional factual background of this case is discussed in more detail in Defendants' Rule 12(b)(6) Motion To Dismiss and the BBC's Motion To Dismiss, which Defendants incorporate by reference.

### A.   None of the Plaintiffs Reside Within the Western District of Louisiana, and All but One Plaintiff Reside Completely Outside of Louisiana.

None of the eleven Plaintiffs in this case live in or are incorporated or based in the Western District of Louisiana.  Only one Plaintiff is located in Louisiana at all.  Children's Health Defense is incorporated in California and headquartered in New Jersey.  Compl. ¶ 39, ECF No. 1.  TrialSite, Inc. is incorporated and headquartered in Utah.  *Id.* ¶ 43.  Creative Destruction Media, LLC is incorporated and headquartered in Wyoming.  *Id.* ¶ 53.  Erin Elizabeth Finn is a Florida resident.

3

*Id.* ¶ 61.  Jim Hoft is a Missouri resident.  *Id.* ¶ 75.  Dr. Ben Tapper is a Nebraska resident.  *Id.* ¶ 69.  Ben Swann is a Georgia resident.  *Id.* ¶ 87.  Ty and Charlene Bollinger are Tennessee residents.  *Id.* ¶ 96.  While the Complaint does not provide Dr. Joseph Mercola's location, on information and belief, he is a resident of Florida.  *See id.* ¶ 103 (identifying mercola.com as his website, which states that Mercola's headquarters are located in Cape Coral, Florida).  Finally, newly added Plaintiff Jeff Crouere is a Louisiana resident, on information and belief, residing near New Orleans.  *Id.* ¶ 111; *see, e.g.*, Jeff Crouere, LinkedIn, https://www.linkedin.com/in/jeff-crouere-58bb692/ (stating that Mr. Crouere's "Ringside Politics show is based in the New Orleans area").

### B.    No Defendant Is Headquartered or Has Its Principal Place of Business in Louisiana.

All of the Defendants are both incorporated and have their principal places of business outside of Louisiana.  WP Company LLC d/b/a The Washington Post ("the Post") is a Delaware limited liability company headquartered in the District of Columbia.  Ex. A, Decl. of Peter Wallsten ("Post Decl.") ¶ 3; Compl. ¶ 116.  The Associated Press ("The AP") is incorporated in New York and headquartered in New York, N.Y.  Ex. B, Decl. of John Daniszewski ("AP Decl.") ¶ 4; Compl. ¶ 118.  Reuters News & Media Incorporated ("Reuters") is incorporated in Delaware and headquartered in New York, N.Y.  Ex. C, Decl. of Jane Barrett ("Reuters Decl.") ¶ 4; Compl. ¶ 119.  The BBC was established in the United Kingdom through a Royal Charter, and its principal place of business is London.  Appendix For BBC Mot., ECF No. 39, Decl. of Jonathan Munro ("BBC Decl.") ¶ 5; Compl. ¶ 117.  The Post, The AP, and Reuters all have offices in New York, N.Y.  Post Decl. ¶ 4; Reuters Decl. ¶ 4; AP Decl. ¶ 4.  And all Defendants or their parents have offices in the District of Columbia.  Post Decl. ¶ 3; Reuters Decl. ¶ 5; AP Decl. ¶ 5; BBC Decl. ¶ 10.

All of Defendants' potential witnesses with knowledge of the facts concerning Plaintiffs' claims regarding the TNI are also located outside of Louisiana.  The three former BBC-affiliated individuals named in the Complaint—Tony Hall, Jamie Angus, and Jessica Cecil, *see, e.g.*, Compl. ¶¶ 260, 266, 280—are located outside of the United States.  Tony Hall and Jessica Cecil are believed to be residents of the United Kingdom, and Jamie Angus is believed to be a resident of Dubai.  BBC Decl. ¶ 19.  Similarly, all of the BBC's other personnel who have been involved with running the TNI live in and work out of the United Kingdom.  *Id.* ¶ 16.

The Post's liaisons to the TNI, Greg Barber and later Peter Wallsten, are both residents of the District of Columbia area and work (or worked) in the Post's District of Columbia office.  Post Decl. ¶¶ 7, 9, 11–13.  The AP's liaisons to the TNI, John Daniszewski and Barbara Whitaker, are residents of New York, N.Y. (or within 100 miles thereof) and work in The AP's New York, N.Y. office.  AP Decl. ¶¶ 6, 10–12.  One of Reuters' liaisons to the TNI, Jane Barrett, is a resident of London and works in Reuters' London office, while another of Reuters' liaisons to the TNI, Stephanie Burnett, is a resident of the Netherlands.  Reuters Decl. ¶¶ 2, 9.

As for nonparty witnesses who represented platforms (*i.e.*, Google, Meta, Microsoft, and Twitter) at TNI meetings ("platform witnesses"), Compl. ¶ 11, these individuals are not located in Louisiana, either.  To the contrary, all TNI representatives from these platforms who materially participated in the TNI reside in the United Kingdom.  BBC Decl. ¶ 24.

### C.    The Operative Facts of the Lawsuit Did Not Occur in Louisiana.

Similarly, all operative facts concerning Defendants occurred outside of Louisiana, and primarily in London, New York and/or the District of Columbia.  The TNI was formed and led by the BBC in the United Kingdom.  BBC Decl. ¶ 13, 16.  The TNI meetings and summits largely took place virtually, while a small number of in-person meetings took place in the United Kingdom.  *Id.* ¶¶ 21–23.  Defendants did not participate in any TNI virtual meetings or events

while physically located in Louisiana.  *See* Post Decl. ¶ 14; AP Decl. ¶ 15; Reuters Decl. ¶¶ 13, 18; BBC Decl. ¶ 17.  To the extent the Post participated in the TNI, it did so from the District of Columbia; to the extent The AP participated, it did so from in or around New York, N.Y.; and to the extent Reuters participated, it did so from London, the Netherlands, and/or New York.  *See* Post Decl. ¶¶ 7–11; AP Decl. ¶ 14; Reuters Decl. ¶¶ 9–11.  Meanwhile, nonparties such as platforms generally participated from the United Kingdom as well.  *See* BBC Decl. ¶ 24.  Other non-defendant participants in the TNI (such as other news organizations) participated from around the world, including from the United Kingdom, Ireland, Canada, France, Switzerland, Netherlands, Kenya, South Africa, Australia, Pakistan, India, Indonesia, and Japan.  *See id.* ¶¶ 14, 23, 25.

The Complaint does not contain any credible allegations that any conduct by any Defendant, let alone any significant conduct, took place in Louisiana, and only identifies *one* party and *no other* material witnesses in Louisiana.

### D.    The Case Was Initially Filed in Amarillo, TX, and Was Transferred to the Southern District of New York.

Plaintiffs initially filed this case in the Amarillo Division of the Northern District of Texas despite the fact that no Plaintiffs are residents of Texas and none of the underlying conduct occurred anywhere near Texas.

Defendants filed a motion to transfer the case from the Northern District of Texas to the Southern District of New York, which Judge Kacsmaryk granted.  *See CHD*, 2023 WL 3940446, at *3.  Following transfer, the case was assigned to Judge Edgardo Ramos.  *See* Case Transfer, ECF No. 65, *Child.'s Health Def. v. WP Co.*, 23-cv-4072 (ER) (S.D.N.Y. docketed May 16, 2023).  Just a week later, Plaintiffs filed a notice of voluntary dismissal pursuant to Rule 41(a).  *Id.*, Notice of Voluntary Dismissal, ECF No. 70 (S.D.N.Y. filed May 23, 2023).  Plaintiffs refiled their lawsuit in this Court.  The changes to the Complaint were insubstantial.  Plaintiffs added a new Plaintiff,

Jeff Crouere.  Compl. ¶ 111.  They removed a New York-based Plaintiff, Robert F. Kennedy, Jr., who now appears as counsel of record, and will remain a key witness in his capacity as the chairman of Plaintiff Children's Health Defense.  Compl. ¶ 368(C), (I).

## ARGUMENT

"District courts have discretion to order transfer within the limitations set forth by 28 U.S.C. § 1404 . . . ."  *Cornelius v. Am. Com. Barge Line LLC*, 2021 WL 4762578, at *2 (W.D. La. Oct. 12, 2021).  This statute provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought" or to any district or division to which all parties have consented. *See Extreme Technologies, LLC*, 2019 WL 2353168, at *2 (quoting 28 U.S.C. § 1404(a)); *Cornelius*, 2021 WL 4762578, at *2 (same).

Analysis under Section 1404(a) is a two-step inquiry that first asks if the case could have initially been brought in the proposed transferee court.  *Extreme Technologies, LLC*, 2019 WL 2353168, at *2; *Cornelius*, 2021 WL 4762578, at *2.  This inquiry looks at both jurisdiction and venue.  Subject matter jurisdiction over a case is proper when there is a federal question raised on the face of the complaint, *i.e.*, when the action arises under the laws of the United States.  28 U.S.C. § 1331.  Pursuant to the Clayton Act, venue and personal jurisdiction are proper where a defendant is "an inhabitant," "may be found," or "transacts business."  15 U.S.C. § 22.

Second, the party seeking transfer has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue.  *Extreme Technologies, LLC*, 2019 WL 2353168, at *2.  "The Fifth Circuit applies private interest and public interest factors for determining whether to transfer pursuant to § 1404(a)."  *Id.*  "The private interest factors are: (1) the relative ease of access [to] sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) cost of attendance for willing witnesses; and (4) all other practical

problems that make trial of a case easy, expeditious and inexpensive." *Id.* (quoting *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc)). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that [will] govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *Id.* (quoting *Volkswagen II*, 545 F.3d at 315). And while "Plaintiff[s'] choice of forum is not to be lightly discarded, . . . it cannot overcome considerations of fairness to other parties and witnesses." *Fowler*, 2017 WL 1293983, at *9 (granting transfer where "Plaintiff himself is the only part of this case located in this district").

Both steps of the transfer test are easily satisfied in this case, as Judge Kacsmaryk previously found. *See CHD*, 2023 WL 3940446, at *2–3. Venue and jurisdiction are proper in the Southern District of New York and the District of Columbia, and the remaining factors and the interests of justice strongly weigh in favor of transfer to one of those Districts, especially in light of the minimal deference that should be given to Plaintiffs' choice of venue. *Id.*

I.   **PLAINTIFFS COULD HAVE BROUGHT THIS ACTION IN THE SOUTHERN DISTRICT OF NEW YORK, OR ALTERNATIVELY, THE DISTRICT OF COLUMBIA.**

Both the Southern District of New York and the District of Columbia have subject matter jurisdiction over the case for the same reasons Plaintiffs allege here: Plaintiffs' claims arise under federal law. *See* Compl. ¶ 121 (citing 28 U.S.C. §§ 1331, 1337; 15 U.S.C. §§ 15, 26).

In this antitrust action specifically, venue is proper and all Defendants are subject to personal jurisdiction under the Clayton Act where they are "inhabitant[s]" or where they "transact[] business." *See* 15 U.S.C. § 22. That is because the Clayton Act, which provides for

venue and jurisdiction in antitrust actions,[1] provides that personal jurisdiction is proper where venue is proper.  *See id.*  Accordingly, as venue is proper where a defendant is an "inhabitant" or "transacts business," this point is pivotal for both personal jurisdiction and venue purposes.  *Id.*

Courts have found that a defendant is an "inhabitant" under the Clayton Act where it is "incorporated under the laws of that jurisdiction," and that a defendant "transacts business" when its business activities are of a "substantial character" in the jurisdiction.  *Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co.*, 2020 WL 4050243, at *3 (E.D. La. July 17, 2020).

This standard is easily met in both New York, N.Y. and the District of Columbia.  For the Post, the majority of its business functions are performed from the District of Columbia and a smaller, although substantial, portion of its business functions are performed from New York, N.Y.  Post Decl. ¶¶ 3, 4.  Within the United States, The AP and Reuters are principally operated out of New York, N.Y., and each has a smaller, although substantial, office in the District of Columbia.  AP Decl. ¶¶ 4, 5; Reuters Decl. ¶¶ 4, 5.  Lastly, the BBC is an inhabitant of the District of Columbia.  BBC Decl. ¶ 10.

Accordingly, because Defendants all "transact business" in or are "inhabitants" of the District of Columbia, venue and personal jurisdiction are proper there.  Post Decl. ¶ 3; AP Decl. ¶ 5; Reuters Decl. ¶ 5; BBC Decl. ¶ 10.[2]  In addition, the Post, The AP, and Reuters transact business in New York, while the BBC will not contest jurisdiction in New York for purposes of

---

[1] Section 12 of the Clayton Act confers venue and jurisdiction for "antitrust suits."  *Datamedia Comput. Serv., Inc. v. AVM Corp.*, 441 F.2d 604, 605 (5th Cir. 1971) (applying 12 U.S.C. § 22 to a Sherman Act claim); *see also* 15 U.S.C. § 12 (defining "Antitrust laws" to which Section 12 applies to include the Sherman Act).

[2] Alternatively, should the Court find Clayton Act jurisdiction lacking, all Defendants agree to consent to personal jurisdiction in the District of Columbia for purposes of this case.

this case if the action is transferred there.  *See* Post Decl. ¶ 4; AP Decl. ¶ 4; Reuters Decl. ¶ 4; BBC Mot. at 20 n.2.

For these reasons, the case indisputably could have been brought in the transferee forums.

## II.     PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO NO DEFERENCE.

"Generally, a plaintiff's choice of forum is given great deference; however, when a plaintiff is not a resident of the chosen forum and the relevant actions giving rise to the dispute did not occur in the chosen forum, a court need not give deference to the plaintiff's choice." *Louisiana ex rel. Tureau v. BEPCO, L.P.*, 2018 WL 3581126, at *5 (M.D. La. July 2, 2018), *R. & R. adopted sub nom., Louisiana v. Bepco, L.P.*, 2018 WL 3579474 (M.D. La. July 25, 2018); *Guidry v. Select Oilfield Servs., LLC*, 2016 WL 6639164, at *4 (W.D. La. Nov. 8, 2016) (Plaintiffs' choice of forum is entitled to "the 'least weight' when the plaintiff is not domiciled in the forum wherein he filed suit or when the operative facts of the dispute occur outside plaintiff's chosen forum."); *Roulston v. Yazoo River Towing, Inc.*, 2004 WL 1687232, at *2 (E.D. La. July 26, 2004) (same).  Such is the case here.

First, the Western District of Louisiana is not home to any Plaintiff.  In fact, only one Plaintiff, Jeff Crouere, lives within the state of Louisiana at all.  Compl. ¶¶ 39–111; *see supra* Background Section A.  But Crouere lives in the *Eastern* District of Louisiana, which is insufficient.  *See, e.g.*, *Ventress v. Radiator Specialty Co.*, 2012 WL 1247205, at *2 (E.D. La. Apr. 13, 2012) (granting transfer despite plaintiff living in the neighboring district, *i.e.*, the Middle District of Louisiana, noting "the only factor that weighs in favor of the Eastern District is plaintiff's choice of forum"); *Cornelius*, 2021 WL 4762578, at *4 (granting transfer where "[al]though Plaintiff lives near the Western District of Louisiana[, in Port Arthur, Texas,] he does not live in it").

Second, none of the operative facts occurred within the Western District of Louisiana, or even within Louisiana more broadly. *Guidry*, 2016 WL 6639164, at *4–5 (finding the fact that plaintiff chose to file his lawsuit in the Western District cannot negate the purpose of the transfer statute where the operative facts occurred in the Eastern District); *Roulston*, 2004 WL 1687232, at *2. Here, Plaintiffs do not and cannot point to any material TNI facts that took place in Louisiana. *See, e.g.*, Compl. ¶¶ 327–362 (describing the TNI's alleged "parallel" conduct).

Further, this Court has emphasized that it "refuses to respect choices that appear to be blatant attempts at 'judge shopping.'" *Extreme Technologies, LLC*, 2019 WL 2353168, at *3. And here, Plaintiffs' conduct illustrates an obvious attempt at forum shopping. As described above, Plaintiffs first filed this case in a division to which the case had absolutely no ties—no Plaintiffs live in the entire state of Texas and none of the underlying conduct occurred there. After Plaintiffs' original case was transferred to the Southern District of New York, Plaintiffs voluntarily dismissed the case quickly and refiled here, in another district which has no ties to the facts. Plaintiffs have no reason for this conduct except forum shopping.

Accordingly, this Court should refuse to accept Plaintiffs' choice to file their lawsuit in this District. *See, e.g.*, *Tureau*, 2018 WL 3581126, at *5; *Extreme Technologies, LLC*, 2019 WL 2353168, at *3.

## III.   THE 1404(A) FACTORS STRONGLY SUPPORT TRANSFER.

The 1404(a) factors strongly support transfer of this case. Six factors support transfer and two are neutral. There is not a single factor that weighs against transfer. Below, Defendants analyze each of the factors in the typical order, though the "most important" factors in this case are the third and fourth private-interest factors (witness convenience and access, because Defendants anticipate that this case, to the extent it survives preliminary motions to dismiss, will

11

involve numerous third-party witnesses for whom the transferee forums are far more convenient, and practical considerations, because the Court lacks personal jurisdiction over the BBC).

### A.    The Private Factors Support Transfer.

#### 1.    Access to Sources of Proof

The first private factor—the relative ease of access to sources of proof—"supports transfer because no evidence is in [Louisiana] and the relevant documents are in Defendants' respective headquarters in New York, the District of Columbia, and London." *CHD*, 2023 WL 3940446, at *3.  "This factor examines the location of documents and physical evidence." *Cornelius*, 2021 WL 4762578, at *3; *Volkswagen II*, 545 F.3d at 316.  In this case, the greater volume of relevant documents will be within Defendants' control, as it is Defendants' conduct that is allegedly at issue.  Defendants' documents are generally controlled at their (or their parent's) respective headquarters in New York, the District of Columbia, and London.  *See* Post Decl. ¶ 12; AP Decl. ¶ 13; Reuters Decl. ¶ 12; BBC Decl. ¶ 18.  This supports transfer to a more convenient location that is closer to those documents.  *See, e.g.*, *Fowler*, 2017 WL 1293983, at *8 (finding this factor supported transfer because sources of proof were located outside of the district, in the transferee venue); *Osterweil v. Edmonson*, 2010 WL 2428074, at *3 (W.D. La. June 10, 2010) (finding likely sources of proof to be located in the location where the party resides); *CHD*, 2023 WL 3940446, at *3.

As for the Plaintiffs' evidence, it also does not appear to be located within Louisiana.  Such evidence, including evidence of any alleged harm, generally will be at the location of Plaintiffs' residences or principal places of business.  *But see Guidry*, 2016 WL 6639164, at *3 (noting this factor's focus on "[w]here the alleged injury or wrong occurred, rather than where the plaintiff worked").  But here, only one of the numerous Plaintiffs claims their residence or principal place of business to be in Louisiana.  *See* Compl. ¶¶ 39–111.  In fact, most Plaintiffs are located in or

are much closer to the districts to which Defendants seek transfer, as Judge Kacsmaryk acknowledged in his order transferring the case to the Southern District of New York. *See infra* Argument Section III(A)(3)(b); Compl. ¶¶ 39, 43, 53, 61, 75, 69, 87, 96, 103, 111; *CHD*, 2023 WL 3940446, at *3 ("Additionally, 'most Plaintiffs are located in or are much closer to the districts to which Defendants seek transfer.'").  For example, upon information and belief, Children's Health Defense is located in Franklin Lakes, New Jersey—a suburb of New York City—and a key CHD witness, former Plaintiff Robert F. Kennedy, Jr., is located in New York.  Compl. ¶ 39; Am. Compl. at 9 ¶ 43, ECF No. 39, *Child.'s Health Def. v. WP Co.*, 23-cv-004-Z (N.D. Tex. March 9, 2023) (Plaintiff Robert F. Kennedy, Jr.[ is] a natural person and citizen of New York.").  These facts also support transfer.

Accordingly, "this factor favors transfer because no sources of proof are in the Western District of Louisiana, but significant sources of proof are in the [Southern District of New York and District of Columbia]." *Cornelius*, 2021 WL 4762578, at *3.

## 2.     Availability of Compulsory Process To Secure Witness Attendance

The second private factor—the availability of compulsory process to secure the attendance of witnesses—also supports transfer because, just like in the Northern District of Texas, "'all relevant nonparty witnesses are more than 100 miles from the Court, and many are within 100 miles of the [transferee court].'" *CHD*, 2023 WL 3940446, at *3.

A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 315–16.  The court gives more weight to "specific proposed witnesses," and less weight to vague assertions that witnesses are likely to be found in a particular forum. *Hard Metal Advantage LLC*, 2022 WL 1088887, at *4.  Rule 45 empowers courts with subpoena power to command a person to attend a trial, hearing, or deposition only if the person lives, works, or regularly transacts business in person within 100 miles of the

13

courthouse.  Fed. R. Civ. P. 45(c)(1)(A)(B).  "Thus, the focus of this factor is the consideration of the availability of compulsory process to compel attendance of unwilling non-party witnesses." *Nexen Petroleum U.S.A., Inc.*, 2015 WL 6511879, at *9.

Here, all relevant nonparty witnesses are more than 100 miles from the Court, and many are within 100 miles of the Southern District of New York or the District of Columbia.

> ### a. No Relevant Witnesses Are Located Within 100 Miles of This District.

There are no nonparty witnesses within 100 miles of Monroe, Louisiana who Defendants believe have any relevant information as to the TNI, much less witnesses who Defendants would *expect* to call to testify.  Plaintiffs have similarly identified no witnesses in the Complaint who live within 100 miles of Monroe, Louisiana.

> ### b. Multiple Relevant Witnesses Are Located Within 100 Miles of Either the Southern District of New York or the District of Columbia.

In contrast, a number of relevant nonparty witnesses are located within 100 miles of the courts to which Defendants seek transfer.

The following nonparties (former employees) are located within 100 miles of the Southern District of New York:

- Steve Adler, former Reuters Editor in Chief, and Michael Freidenberg, former Reuters President.  Messrs. Adler and Freidenberg reside in New York (or within 100 miles thereof) and, if called, would be expected to testify about Reuters' participation in the TNI.  Reuters Decl. ¶ 11.

The following nonparty (former employee) is located within 100 miles of the District of Columbia area:

- Greg Barber, former Post Director of News Product.  Mr. Barber resides in the District of Columbia (or within 100 miles thereof) and, if called, would be expected to testify about the Post's participation in the TNI.  *See* Post Decl. ¶¶ 5–6, 9.

Accordingly, this factor heavily weighs in favor of transfer considering there are no nonparties over which this Court has subpoena power, while Defendants' proposed venues have subpoena power over multiple witnesses.

### 3.      Witness Convenience and Access

The third private factor—the cost of attendance for party and nonparty witnesses—weighs strongly in favor of transfer.  *See CHD*, 2023 WL 3940446, at *3 ("The third private interest factor supports transfer for the same reasons [as the second].")

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)."  *Nexen Petroleum U.S.A., Inc.*, 2015 WL 6511879, at *4. The analysis considers all witnesses, with special attention given to nonparty witnesses.  *See Cornelius*, 2021 WL 4762578, at *3 (noting "the convenience of key non-party witnesses is accorded greater weight than the convenience of party witnesses").

Just like in *St. Paul Surplus Lines Insurance Co. v. Ace American Insurance Co.*, "[t]he expense of compensating any of the potential witnesses . . . who are willing to travel . . . a distance of well over 500 miles each way, is impractical, inconvenient and will unduly and unnecessarily increase the costs of litigation."  2010 WL 4875683, at *7 (W.D. La. Oct. 12, 2010) ("*St. Paul*"), *R. & R. adopted*, 2010 WL 4830213 (W.D. La. Nov. 22, 2010).  As the Fifth Circuit found, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 204–05 (5th Cir. 2004); *see Kaneka Corp. v. SKC Kolon PI, Inc.*, 2011 WL 13134647, at *5–6 (E.D.

Tex. Mar. 30, 2011) (granting motion to transfer to California, noting "the inconvenience to the Asian witnesses in terms of travel time and cost of airfare to Texas").

Here, the Southern District of New York or the District of Columbia would both be substantially more convenient for the likely witnesses in the case.

### a.   Defendants Have Identified Several Witnesses Likely To Have Relevant Testimony in the Case.

In addition to the witnesses referenced in the second factor, there are a number of additional witnesses who have knowledge regarding Defendants' involvement in the TNI.[3]  None of the witnesses live anywhere near Louisiana.  In general, the overwhelming majority of these witnesses are located in New York, the District of Columbia, or London.  For witnesses from each of these locations, the Southern District of New York or the District of Columbia are significantly more convenient forums.

A number of current and former employees from The AP, the BBC, the Post, and Reuters possess relevant information as to the organizations' involvement in the TNI.  Specifically, the individuals who at one time or another served as Defendants' liaisons to the initiative—Greg Barber (former) and Peter Wallsten from the Post; John Daniszewski and Barbara Whitaker from The AP; Jane Barrett, Hazel Baker (former), and Stephanie Burnett from Reuters; and Jessica Cecil (former) from the BBC—would likely be key witnesses as they possess the information most relevant to the claims.  As such, the convenience of these witnesses is significant and weighs highly in favor of transfer.  *See, e.g.*, *Godoy v. BP Expl. & Prod. Inc*., 2019 WL 2122955, at *2 (E.D. La. May 15, 2019) (finding that "accommodating the convenience of the key fact witnesses . . . is the most significant factor in determining" transfer).  In addition to these current and former employee

---

[3] Defendants' identification of relevant witnesses in this Motion is based on an understanding of the current record.  Should this case progress into discovery, Defendants reserve the right to identify additional or different witnesses.

witnesses, Defendants anticipate that this case will involve significant testimony from non-party witnesses who participated in the TNI on behalf of non-party technology companies, such as Google, Meta, Microsoft, and Twitter.  The testimony of these platform witnesses will be highly relevant to the processes involved in the alleged decisions to remove Plaintiffs from their services, including the content policies and other terms of service at issue, and Defendants' lack of involvement in these decisions.

Defendants expect the following District of Columbia area residents to testify:

- Former Post (nonparty): Greg Barber, former Post Director of News Product.  Mr. Barber served as the Post's liaison to the TNI while he was employed at the Post in the District of Columbia, until his departure in October 2021.  Post Decl. ¶¶ 7, 9.  Mr. Barber resides in the District of Columbia area, in Arlington, Virginia, and is expected to testify about the Post's participation in the TNI.  *Id*. ¶¶ 5–6, 9.

- Current Post: Peter Wallsten, Post Senior National Investigations Editor.  Mr. Wallsten served as the Post's liaison to the TNI after Mr. Barber departed the company from late 2021 to present.  Mr. Wallsten resides in the District of Columbia and is expected to testify about the Post's participation in the TNI.  Post Decl. ¶¶ 5–6, 11.

Defendants expect the following New York area residents to testify:

- Current CHD:  Robert F. Kennedy, Jr, CHD Chairman, and Mary Holland, CHD President and General Counsel.  Upon information and belief, Mr. Kennedy and Ms. Holland are residents of New York (or within 100 miles thereof).  *See, e.g.*, Am. Compl. at 9 ¶ 43, ECF No. 39, *Child.'s Health Def.*, 23-cv-004-Z.  Both are expected to testify about CHD's claims and harm relating to the TNI.  Allegations surrounding Mr. Kennedy's alleged de-platforming are featured in the Complaint.  *See* Compl. ¶ 368(C), (I).

- Current AP: John Daniszewski, AP Vice President and Editor at Large for Standards, and Barbara Whitaker, AP New York Editor, Fact Check Desk.  Both reside in New York (or within 100 miles thereof) and are expected to testify about The AP's participation in the TNI.  AP Decl. ¶¶ 6, 8, 11.

- Former Reuters (nonparties): Steve Adler, former Reuters Editor in Chief, and Michael Freidenberg, former Reuters President.  Both reside in New York (or within 100 miles thereof) and are expected to testify about Reuters' participation in the TNI.  Reuters Decl. ¶ 11.

Defendants would also expect the following European residents to testify:

- Current BBC: Every potential witness in this action that is currently affiliated with the BBC is located in the United Kingdom.  BBC Decl. ¶ 20.  These witnesses are expected to testify about the BBC's participation in the TNI.  *Id.*

- Former BBC (nonparties): Of the three former BBC employees who are named in the Complaint, upon information and belief, Tony Hall and Jessica Cecil are current residents of the United Kingdom, and Jamie Angus is a current resident of the United Arab Emirates.  BBC Decl. ¶ 19.  They were each involved with the creation and leadership of the TNI and would be in a position to testify on the BBC's creation and participation in the TNI.  *Id.*

- Current Reuters: Jane Barrett, Reuters Global Editor, Media News Strategy, and Stephanie Burnett, Reuters Digital Verification Editor.  Ms. Barrett is a resident of England, while Ms. Burnett is a resident of the Netherlands.  Reuters Decl. ¶¶ 2, 9.  These witnesses are expected to testify about Reuters' participation in the TNI.  *Id.* ¶¶ 6–7.

- Former Reuters (nonparty): Hazel Baker, former Reuters Head of Digital Newsgathering and Verification.  Upon information and belief, Ms. Baker is a resident of England.  Reuters

18

Decl. ¶ 8.  Ms. Baker is expected to testify about Reuters' participation in the TNI. *Id.* ¶¶ 6–7.

- Former Post (nonparty): Cameron Barr, former Post Senior Managing Editor.  Mr. Barr participated in a virtual TNI conference in March 2021.  Post Decl. ¶ 8.  Mr. Barr is in the process of moving to England and is expected to testify about the Post's participation in the TNI.  *Id.* ¶¶ 5–6, 8, 10.

- Platform Witnesses (nonparties): All key TNI representatives of the platform members are residents of the United Kingdom, including TNI representatives from Google, Meta, Microsoft, and Twitter.  BBC Decl. ¶ 24.  These witnesses would be expected to testify to their alleged moderation of Plaintiffs' content, including the relevant policies and other terms of service at issue, and Defendants' lack of involvement in these decisions.  *Id.*

> **b.    The Southern District of New York or the District of Columbia Are Substantially More Convenient Venues for These Witnesses.**

As to all identified witnesses above, either the Southern District of New York or the District of Columbia would be a substantially more convenient forum than Monroe, Louisiana.  Monroe is over 4,500 miles from London, over 1,300 miles from New York, N.Y., and over 1,000 miles from the District of Columbia.  *See Richards v. Stone*, 2019 WL 6997917, at *4 & n.5 (W.D. La. Nov. 4, 2019) (taking judicial notice of the distance between two locations using Google maps and compiling cases allowing judicial notice), *R. & R. adopted*, 2019 WL 6974776 (W.D. La. Dec. 18, 2019) (Doughty, J.).

Conversely, New York, N.Y. and the District of Columbia are closer geographically to most witnesses.  Travel between New York, N.Y., the District of Columbia, and London is substantially more efficient than travel as between any of those cities and Monroe, Louisiana.

If the case were transferred to New York, N.Y., travel would be eliminated entirely for New York witnesses, and would be reduced for the District of Columbia witnesses by about 80%, and for London witnesses by almost half when compared to travel to Monroe, Louisiana. Alternatively, if the case were transferred to the District of Columbia, travel would be eliminated entirely for District of Columbia witnesses, and would be reduced for New York witnesses by 80%, and for London witnesses by almost half.  Courts consider the travel burden on international witnesses as an important basis for transfer.  *See, e.g.*, *Kaneka Corp.*, 2011 WL 13134647, at *6 (granting transfer to C. D. Cal., which was more convenient for witnesses from Asia).

| Court/Location[4] | Distance from London (miles) | Distance from New York, N.Y. (miles) | Distance from D.C. (miles) |
|---|---|---|---|
| Monroe, Louisiana | 4,500 | 1,300 | 1,090 |
| New York, N.Y. | 3,650 | 0 | 250 |
| District of Columbia | 3,450 | 250 | 0 |

| Court/Location[5] | Flight Time from London | Flight Time from New York, N.Y. | Flight Time from D.C. |
|---|---|---|---|
| Monroe, Louisiana | Over 14 hours | 4.5 hours | 4.5 hours |
| New York, N.Y. | 8 hours | 0 | 1 hour 10 minutes |
| District of Columbia | 8.5 hours | 1 hour 10 minutes | 0 |

The Southern District of New York or the District of Columbia would also be more convenient for many of the Plaintiffs and their key witnesses.  *See Hard Metal Advantage LLC*, 2022 WL 1088887, at *4 (analyzing each party's proposed witnesses).  Children's Health Defense and its Chairman and former Plaintiff Robert F. Kennedy, Jr. and its President and General Counsel Mary Holland are located within the New York metropolitan area.  *See* Compl. ¶ 39; Am. Compl. at 9 ¶ 43, ECF No. 39, *Child.'s Health Def.*, 23-cv-004-Z; *see also Potts v. Cameron Offshore*

---

[4] Approximate directions from each city center.  *See, e.g.*, Directions from Monroe, Louisiana to New York City, N.Y., Google Maps, https://shorturl.at/iqBO6.

[5] Approximate most-direct flight times from each city's airport.  *See, e.g.*, Flights from New York, NY to Monroe, Louisiana, Google, https://shorturl.at/ixAEP.

*Boats, Inc.*, 401 F. Supp. 2d 733, 739 (S.D. Tex. 2005) ("Plaintiff cannot complain of a transfer to

his home District.").  On information and belief, transfer to the Southern District of New York or

the District of Columbia would also be substantially more efficient for Erin Elizabeth Finn

(Florida), Ben Swann (Georgia), Dr. Joseph Mercola (Florida), Jim Hoft (Missouri), Dr. Ben

Tapper (Nebraska), and Ty and Charlene Bollinger (Tennessee).[6]  And for the remaining two

Plaintiffs—TrialSite, Inc. (Utah) and Creative Destruction Media, LLC (Wyoming)—the distance

is comparable.[7]

Thus, for eight out of the eleven Plaintiffs, travel to both New York, N.Y. and the District

of Columbia is more convenient than travel to Monroe, Louisiana.  And one Plaintiff's location in

Louisiana "cannot overcome considerations of fairness to other parties and witnesses."  *Fowler*,

2017 WL 1293983, at *9 (finding transfer appropriate despite plaintiff's location *within* the

district).  Accordingly, because transferring the case will be significantly more convenient for the

vast majority, if not all, of the material witnesses in this case, this factor heavily favors transfer.

*Id.*; *Nexen Petroleum U.S.A., Inc.*, 2015 WL 6511879, at *4.

### 4.    Other Practical Considerations—Lack of Personal Jurisdiction over the BBC

The fourth private factor—all other practical considerations that affect whether a case is

easy, expeditious, and inexpensive to litigate in the forum—"supports transfer to the extent this

---

[6] *Compare, e.g.*, Flights from St. Louis, Missouri to Monroe, Louisiana, Google, https://shorturl.at/CLRT6 (shortest flight 4 hours and 37 minutes) *with* Flights from St. Louis, Missouri to Washington, D.C., Google, https://shorturl.at/flwI7 (shortest flight 2 hours) *and with* Flights from St. Louis, Missouri to New York, N.Y., Google, https://shorturl.at/iqO36 (shortest flight 2 hours and 25 minutes).

[7] *Compare, e.g.*, Flights from Cheyenne, Wyoming to Monroe, Louisiana, Google, https://shorturl.at/fsYZ3 (shortest flight 4 hours and 8 minutes) *with* Flights from Cheyenne, Wyoming to Washington, D.C., Google, https://shorturl.at/kFGM5 (shortest flight 3 hours and 15 minutes) *and with* Flights from Cheyenne, Wyoming to New York, N.Y., Google, https://shorturl.at/irvxB (shortest flight 3 hours and 42 minutes).

Court lacks personal jurisdiction over BBC." *CHD*, 2023 WL 3940446, at \*3.  In particular, severing a case as a result of a lack of jurisdiction is strongly disfavored. *See, e.g.*, *Def. Distributed v. Bruck*, 30 F.4th 414, 429 (5th Cir. 2022); *Hard Metal Advantage LLC*, 2022 WL 1088887, at \*5; *Smiley v. Reno*, 131 F. Supp. 2d 839, 841 & n.4 (W.D. La. 2001) ("[S]ection 1404 does not allow a partial transfer except in special circumstances.").  "Severance and transfer requires two courts to engage in the work of one, prompting serious concerns about duplication of judicial resources, the consistency of rulings, and litigation costs." *Def. Distributed*, 30 F.4th at 429. Severance would only result in delay, inconvenience, or added expense. *Id.*

Here, the Court lacks personal jurisdiction over the BBC, as explained in the BBC's concurrent Motion To Dismiss and brief in support thereof, which Defendants incorporate by reference.  ECF No. 39.  As in *Hard Metal*, this severance problem would be avoided and judicial economy would be served by transfer to a venue with personal jurisdiction over all Defendants. *See id.*; *Def. Distributed*, 30 F.4th at 429; *CHD*, 2023 WL 3940446, at \*3.

**B.      The Public Factors Support Transfer.**

**1.      Court Congestion**

The first public factor—the administrative difficulties flowing from court congestion— weighs in favor of transfer.

This factor "favors a district that can bring a case to trial faster." *Matirne v. Advancial Fed. Credit Union*, 2018 WL 1023813, at \*4 (W.D. La. Feb. 21, 2018).  Courts commonly consider the Federal Judicial caseload statistics to determine whether one court's docket is more congested than another's. *Hard Metal Advantage LLC*, 2022 WL 1088887, at \*5.  Although these statistics "may not always tell the whole story," absent more comprehensive metrics, courts in this district have relied on them in finding this factor weighs in favor of transfer. *Fowler*, 2017 WL 1293983, at \*9; *Hard Metal Advantage LLC*, 2022 WL 1088887, at \*5.

Here, the relevant Federal Judicial caseload statistics establish that the average time to dispose of cases in the Southern District of New York or the District of Columbia is generally faster than the average time to dispose of cases in the Western District of Louisiana.  As of March 2023, the median time from filing to disposition was 5.9 months in the Southern District of New York, 4.7 months in the District of Columbia, but 9.1 months in the Western District of Louisiana. U.S. Dist. Ct. – Nat'l Jud. Caseload Prof. at 2, 11, 31, Admin. Off. of the U.S. Cts. (March 2023).[8]

Accordingly, this factor weighs in favor of transfer.

### 2.    Local Interest

The second public factor—the local interest in having localized interests decided at home—weighs in favor of transfer.

"[T]he Court must consider any localized interests in deciding local disputes within its own district." *Crochet v. Seadrill Americas Inc*., 2022 WL 18492150, at *3 (W.D. La. Dec. 19, 2022) (comparing the Western District of Louisiana's interest in the case to the Eastern District of Louisiana's interest in the case), *R. & R. adopted*, 2023 WL 424884 (W.D. La. Jan. 26, 2023). "This factor seeks to uphold the ideal that '[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *Haughton v. Plan Adm'r of Xerox Corp. Ret. Income Guarantee Plan*, 2 F. Supp. 3d 928, 937 (W.D. La. 2014); *Baswell v. Yazoo River Towing*, 2014 WL 5469746, at *5 (W.D. La. Oct. 28, 2014) (same). "Courts examining this factor are concerned not only with each party's ties to each forum, but also each

---

[8] Further, at least one court in this district has noted that the "current judicial vacancies in the Western District of Louisiana could play a role in delaying the resolution of [a] lawsuit." *Matirne v. Advancial Fed. Credit Union*, 2018 WL 1023813, at *4 (W.D. La. Feb. 21, 2018).  Currently, the Western District of Louisiana has two vacancies left by Judges Michael Joseph Juneau and Elizabeth Foote taking senior status in early 2022.  *See* Current Judicial Vacancies, U.S. Courts, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies  (last updated 7/10/2023).  No nominees have been put forth to fill these two vacancies in the more than a year they have been open.  *Id.*

forum's connection to the events at issue in the case." *Hard Metal Advantage LLC*, 2022 WL 1088887, at *5.

Just like in the first iteration of this case—where "Amarillo ha[d] little interest in the resolution of this case," *see CHD*, 2023 WL 3940446, at *3—Monroe has little, if any, interest in the resolution of this case.  The location of all events giving rise to this suit lies outside of the Western District of Louisiana.  In fact, the events giving rise to this action occurred in the transferee districts for the reasons described in the sections above.  *See supra* Background Section C.  "[I]t is clear that a [New York or District of Columbia] court has a far greater interest" in the resolution of the case because multiple Defendants are headquartered there or have offices there. *St. Paul*, 2010 WL 4875683, at *9.  New York is further affected because of its proximity to Plaintiff Children's Health Defense, a New Jersey resident, Compl. ¶ 39, and because key Plaintiff witness Robert F. Kennedy, Jr. is located in that jurisdiction and allegedly felt harm in the state, *id.* ¶ 368(C), (I).

Here, the case's only connection to Louisiana is newly added Plaintiff Jeff Crouere.  Mr. Crouere's residence, however, is not in the Western District of Louisiana—it is in the Eastern District of Louisiana, as he lives near New Orleans.  And as a court in this district held in *Cornelius*, "[a]lthough [one] Plaintiff lives near the Western District of Louisiana, he does not live in it, and this district's connection to the case is otherwise minimal." 2021 WL 4762578, at *4 (holding this factor favored transfer).  And this "minimal" local interest is "not sufficient to weigh the scales in favor of having this entire lawsuit decided by this Louisiana federal court." *St. Paul*, 2010 WL 4875683, at *8.  Even if Mr. Crouere did reside in the district, it would not be enough to establish a local interest. *See Fowler*, 2017 WL 1293983, at *9 (granting transfer where although plaintiff lived in the district, "not a single other person involved in the events giving rise to this case lives or works in this district, and many of them both live and work in the [transferee district]").

Considering the large majority of the witnesses—*i.e.*, all but one—live outside of Louisiana and all relevant conduct occurred outside of Louisiana, a finding that adding one Louisiana plaintiff to almost a dozen plaintiffs created a local Louisiana interest "would 'stretch[] logic in a manner that eviscerates the public interest that this factor attempts to capture.'" *St. Paul*, 2010 WL 4875683, at *8; *see also Fowler*, 2017 WL 1293983, at *9.  Therefore, this factor favors transfer.  *See Baswell*, 2014 WL 5469746, at *5.

### 3.    Familiarity with Law

The third public factor—the familiarity of the forum with the law that will govern the case—is neutral, as federal courts are equally familiar with federal statutes.  *See Haughton*, 2 F. Supp. 3d at 937 (finding federal courts "are equally capable of applying federal law"). Accordingly, as Plaintiffs bring only claims under the Sherman Act, a federal statute, all three venues are equally equipped to address Plaintiffs' claims.

### 4.    Conflict of Laws

The fourth public factor—the avoidance of unnecessary problems of conflict of laws—is neutral for the same reasons as above.  Federal antitrust law clearly governs the issues in this case and no conflict of laws issues are expected.  *See, e.g.*, *CM Constr. & Excavation LLC v. Worley Servs. Inc.*, 2019 WL 2896594, at *5 (W.D. La. Apr. 29, 2019) ("[U]niform application of this federal legislation alleviates any concerns regarding conflicts of laws."), *R. & R. adopted*, 2019 WL 2896596 (W.D. La. July 3, 2019).

## <u>CONCLUSION</u>

Considering all of these factors, Defendants respectfully request transfer to the United States District Court for the Southern District of New York, or in the alternative the District of Columbia, for the convenience of all Parties and nonparty witnesses and in the interests of justice.

Dated: July 11, 2023

/s/ Leslie E. John
Leslie E. John (*pro hac vice*, #917698)
Elizabeth P. Weissert (*pro hac vice*, #917700)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500; Fax: (215) 864-8999
johnl@ballardspahr.com
weisserte@ballardspahr.com

Jay Ward Brown (*pro hac vice*, #917699)
Ballard Spahr LLP
1909 K Street N.W., 12th Floor
Washington, D.C. 20006
Tel: (202) 661-2200; Fax: (202) 661-2299
brownjay@ballardspahr.com

Loretta Mince #25796
Fishman Haygood LLP
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170
Tel: (504) 586-5252; Fax: (504) 586-5250
lmince@fishmanhaygood.com

*Attorneys for The Associated Press*

/s/ Jeffrey C. Bank
Jeffrey C. Bank (*pro hac vice*)
Allison B. Smith (*pro hac vice*)
Wilson Sonsini Goodrich & Rosati
1700 K Street, N.W., 5th Floor
Washington, D.C. 20006
Tel: (202) 973-8800; Fax: (202) 973-8899
jbank@wsgr.com
allison.smith@wsgr.com

Thomas M. McEachin #26412
Andrea V. Timpa #29455
William P. Gibbens #27225
Schonekas, Evans, McGoey
& McEachin, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112

Respectfully submitted,

/s/ John E. Schmidtlein
John E. Schmidtlein (*pro hac vice*, #917694)
Thomas G. Hentoff (*pro hac vice*, #917696)
Nicholas G. Gamse (*pro hac vice*, #917695)
Kathryn E. Garza (*pro hac vice*, #917697)
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Tel: (202) 434-5000; Fax: (202) 434-5029
jschmidtlein@wc.com
thentoff@wc.com
ngamse@wc.com
kgarza@wc.com

Bernard S. Johnson #07280
Cook, Yancey, King & Galloway
333 Texas Street, Suite 1700 (71101)
P.O. Box 22260
Shreveport, Louisiana 71120-2260
Tel: (318) 221-6277; Fax: (318) 227-7850
bernard.johnson@cookyancey.com

*Attorneys for WP Company LLC
d/b/a The Washington Post*

Tel: (504) 680-6050; Fax: (504) 680-6051
thomas@semmlaw.com
andrea@semmlaw.com
billy@semmlaw.com

*Attorneys for Reuters News & Media Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned Counsel hereby certifies that on the 11th day of July 2023, notice of the foregoing pleading was provided via the CM/ECF system to the counsel of record.  In addition, notice was provided via email to the following counsel.

*/s/ John E. Schmidtlein* _____
John E. Schmidtlein

Edward B. Schwartz
Reed Smith LLP
1301 K Street, N.W.
Suite 1000, East Tower
Washington, D.C., 20005
Tel: (202) 414-9200
eschwartz@reedsmith.com

Michelle A. Mantine
Reed Smith LLP
Reed Smith Centre, 225
Fifth Avenue
Pittsburgh, PA, 15222
Tel: (412) 288-3131
mmantine@reedsmith.com

Casey J. Olbrantz
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
colbrantz@reedsmith.com

28