UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

---------------------------------------------------------

CHILDREN'S HEALTH DEFENSE,
TRIALSITE, INC., CREATIVE
DESTRUCTION MEDIA, LLC,
ERIN ELIZABETH FINN,  JIM HOFT,
DR. BEN TAPPER, BEN SWANN,
DR. JOSEPH MERCOLA,  TY
BOLLINGER, CHARLENE
BOLLINGER, & JEFF CROUERE,

        *Plaintiffs,*

      v.

WP COMPANY, LLC D/B/A THE
WASHINGTON POST, THE BRITISH
BROADCASTING CORP., THE
ASSOCIATED PRESS & REUTERS
NEWS & MEDIA INC.,

        *Defendants.*

---------------------------------------------------------

CIVIL ACTION NO. 3:23-cv-00720

Judge Terry A. Doughty
Magistrate Judge Kayla D. McClusky

JURY TRIAL DEMANDED


**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**<u>DEFENDANTS' VENUE TRANSFER MOTION</u>**

# **TABLE OF CONTENTS**

Introduction ................................................................................................................ 1

Statement of Facts ...................................................................................................... 3

Procedural Statement .................................................................................................. 3

Argument .................................................................................................................... 5

    I.    Plaintiffs' factual allegations must be accepted as true on this motion, factual conflicts must be resolved in Plaintiffs' favor, and Defendants bear the "significant burden" of proving that transfer is "clearly" warranted. .................................................................... 5

    II.    Transfer is barred under clear and controlling Supreme Court precedent. ........................ 7

    III.    Defendants have not demonstrated and cannot demonstrate that transfer would be "clearly more convenient" under the well-known private and public interest factors. .......................... 14

        A.    In antitrust cases, plaintiffs' choice of venue is entitled to special weight. ................. 15

        B.    The witness convenience factor favors keeping this case here. .................................... 17

        C.    The access-to-proof factor is neutral. ....................................................................... 22

        D.    The compulsory-process factor is neutral. ................................................................. 22

        E.    The local-interest factor favors keeping this case here. .............................................. 23

        F.    The familiarity of the forum strongly favors Plaintiffs. .............................................. 24

Conclusion ................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Air Vent Inc. v. Powermax Elec. Co.*, No. 3:21-CV-00229-X, 2021 U.S. Dist. LEXIS 204873 (N.D. Tex. Oct. 25, 2021) ................................................................................................................ 9

*Align Techs. Corp. v. Atlassian United States Inc.*, No. 1:22-CV-00824, 2023 U.S. Dist. LEXIS 21916 (W.D. Tex. Feb. 9, 2023) ..................................................................................... 25

*All. Transp. & Logistics, LLC v. G&J Truck Sales, Inc.*, No. 3:20-CV-3451-B, 2021 U.S. Dist. LEXIS 237499 (N.D. Tex. Dec. 13, 2021) .................................................................... 23

*Allcapcorp, Ltd. v. CHC Consulting, Congruex LLC*, No. 3:17-CV-0757, 2019 U.S. Dist. LEXIS 19320 (N.D. Tex. Jan. 10, 2019) ............................................................................. 14, 17

*Allcapcorp, Ltd. v. CHC Consulting*, No. 3:17-CV-0757, 2019 U.S. Dist. LEXIS 16633 (N.D. Tex. Feb. 1, 2019) ...................................................................................................................... 14

*Am. Home Healthcare Sys. v. Floyd Mem. Hosp. & Health Servs.*, No. 3:17-CV-00048, 2017 U.S. Dist. LEXIS 77825 (W.D. Ky. May 23, 2017) ...................................................... 13

*Associated Press v. United States*, 326 U.S. 1 (1945) ................................................................ 25

*Atlas Glob. Techs. LLC v. Tp-Link Techs. Co., Ltd.*, No. 2:21-cv-00430-JRG-RSP, 2023 U.S. Dist. LEXIS 17774 (E.D. Tex. Feb. 2, 2023) ............................................................... 8

*Atlas Global Techs. LLC v. Tp-Link Techs. Co., Ltd.*, No. 2:21-cv-430, 2022 U.S. Dist. LEXIS 237296 (E.D. Tex. Dec. 28, 2022) .................................................................................. 8

*AudioEye, Inc. v. accessiBe Ltd.*, No. 6:20-CV-997-ADA, 2022 U.S. Dist. LEXIS 48277 (W.D. Tex. Mar. 9, 2022) ........................................................................................................... 20

*Bederson v. United States*, 756 F. Supp. 2d 38 (D.D.C. 2010) .................................................. 18

*Beijing iQIYI Science & Tech. Co. v. iTalk Global Communs., Inc.*, No. 6-19-CV-00272, 2019 U.S. Dist. LEXIS 216697 (W.D. Tex. Dec. 17, 2019) ............................................... 6, 17

*Bionx Implants, Inc. v. Biomet, Inc.*, No. 99 Civ. 740, 1999 U.S. Dist. LEXIS 8031 (S.D.N.Y. 1999) ...................................................................................................................................... 21

*Black v. Acme Mkts., Inc.*, 564 F.2d 681 (5th Cir. 1977) ................................................ 2, 10, 15

*Centennial Ins. Co. v. W.C. Fore Trucking, Inc.*, No. 05-166, 2005 U.S. Dist. LEXIS 52213 (E.D. La. Dec. 6, 2005) .......................................................................................................... 5

*Centro Group, S.p.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058 (S.D.N.Y. 1993) ...................... 21

*Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392 (S.D. Tex. 1992) ........ 15

*Cornerstone Sys. v. Prestress Servs. Indus. of Tenn., LLC*, No. 2:15-cv-02255, 2016 U.S. Dist. LEXIS 87946 (W.D. Tenn. July 7, 2016) ..................................................................... 24

*Crompton Corp. v. Clariant Corp.*, 221 F. Supp. 2d 683 (M.D. La. 2002) ................................ 10

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005) ......................................... 10

*Danmark v. Shenzhen Apaltek Co.*, No. W-21-CV-00501-ADA, 2022 U.S. Dist. LEXIS 82249 (W.D. Tex. May 6, 2022) ............................................................................................ 20

*Dennis v. JPMorgan Chase & Co.*, 345 F. Supp. 3d 122 (S.D.N.Y. 2018) ................................ 13

*Fontenot v. Mullins Mfg. Co.*, No. 95-31013, 1996 U.S. App. LEXIS 43933 (5th Cir. May 1, 1996) ................................................................................................................................. 10

*Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, No. 2:16-CV-01425, 2017 U.S. Dist. LEXIS 213778 (E.D. Tex. Dec. 28, 2017) .................................................................. 8

*Graphic Packaging Int'l v. DuCharme, McMillen & Assocs.*, No. 13-CV-231, 2013 U.S. Dist. LEXIS 96267 (M.D. La. July 10, 2013) ............................................................................ 4

*GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) .................. 11

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ...................................................................... 7, 8, 14, 17

*Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375 (W.D. La. 1996) ...................... 15

*Ill. Union Ins. Co. v. Tri Core, Inc.*, 191 F. Supp. 2d 794 (N.D. Tex. 2002) ................................. 7

*In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3rd Cir. 2004)............................... 15

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)................................................................. 20

*In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625 (5th Cir. 2022). .................. 22, 23, 24

*In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219 (S.D.N.Y. 2019)..................................... 12

*In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678 (E.D. Tex. 1999)............................................... 22

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004). ................................................................... 17

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008).................................................. 6, 14

*Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*, No. 2:19-CV-00266, 2020 U.S. Dist. LEXIS 208572 (E.D. Tex. Sep. 30, 2020) .................................................................................. 6, 17

*Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010)........................................................................ 11

*Jorge v. Atl. Hous. Found. Inc.*, No. 2:19-CV-00296, 2020 U.S. Dist. LEXIS 262856 (E.D. Tex. July 28, 2020)................................................................................................................... 6, 17

*Kajeet, Inc. v. Trend Micro, Inc.*, No. 6:21-CV-389-ADA, 2022 U.S. Dist. LEXIS 6603 (W.D. Tex. Jan. 12, 2022)................................................................................................................. 20

*Kelly v. Berry Contr., LP*, No. 19-10501, 2019 U.S. Dist. LEXIS 196549 (E.D. La. Nov. 13, 2019) ...................................................................................................................................... 11, 13

*Kennedy et al. v. Biden et al.*, No. 3:23-CV-00381 (W.D. La.) (Doughty, J.) ............................... 5

*Koss Corp. v. Apple Inc.*, No. 6-20-CV-00665, 2021 U.S. Dist. LEXIS 222697 (W.D. Tex. Apr. 22, 2021) ................................................................................................................................ 6

*Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097-ADA, 2021 U.S. Dist. LEXIS 258130 (W.D. Tex. May 19, 2022)......................................................................................... 20

*Mendoza v. Microsoft*, 1 F. Supp. 3d 533 (W.D. Tex. 2014) ....................................................... 18

*Missouri et al. v. Biden et al.*, No. 3:22-CV-01213 (W.D. La.) (Doughty, J.) ............................... 5

*Motion Games, LLC v. Nintendo Co.*, 2014 U.S. Dist. LEXIS 188044 (E.D. Tex. Mar. 28, 2014) ............................................................................................................................................... 21

*NRDC v. United States DOE*, No. 17 Civ. 6989, 2018 U.S. Dist. LEXIS 36548 (S.D.N.Y. Mar. 5, 2018) ........................................................................................................................................ 9

*Nride Semiconductors Co. v. Lite-On Tech. Corp.*, No. W-21-CV-00183, 2022 U.S. Dist. LEXIS 21086 (W.D. Tex. Feb. 7, 2022) ............................................................................................. 8

*Open Text Corp. v. Alfresco Software*, No. 6:20-CV-0920, 2021 U.S. Dist. LEXIS 223228 (W.D. Tex. Sep. 30, 2021) .................................................................................................................. 6

*Peppers Unlimited, Inc. v. Trujillo*, No. 4:18-cv-01001, 2019 U.S. Dist. LEXIS 165152 (N.D. Tex. Sep. 26, 2019) ......................................................................................................................... 6

*Phoji, Inc. v. Atlassian, Inc.*, No. 6:21-cv-00888, 2022 U.S. Dist. LEXIS 116531 (W.D. Tex. June 23, 2022) ................................................................................................................................ 20

*Pruitt v. Bruce Oakley, Inc.*, No. 18-8621, 2019 U.S. Dist. LEXIS 97622 (E.D. La. June 11, 2019) ................................................................................................................................................ 8

*Qualls v. Prewett Enters.*, 594 F. Supp. 3d 813 (S.D. Tex. 2022)........................................ 14, 17

*Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-118, 2019 U.S. Dist. LEXIS 206019 (E.D. Tex. Nov. 27, 2019) .......................................................................................................................... 6

iii

*Radoszewski v. Plastics Indus. Ass'n*, No. 3:22-CV-1482-B, 2022 U.S. Dist. LEXIS 214286 (N.D. Tex. Nov. 29, 2022) .................................................................................................................. 24

*Ricoh Co. v. Honeywell, Inc*., 817 F. Supp. 473 (D.N.J. 1993) ................................................ 21

*Robles v. Eminent Med. Ctr., LLC*, 619 F. Supp. 3d 609, 626 (N.D. Tex. 2022) ........................ 11

*Rochester Med. Corp. v. C.R. Bard*, No. 5:04-CV-60, 2005 U.S. Dist. LEXIS 62559 (E.D. Tex. Feb. 25, 2005): .......................................................................................... 16, 21, 22, 23

*Shat Acres Highland Cattle, LLC v. Am. Highland Cattle Ass'n*, No. 2:20-CV-62, 2021 U.S. Dist. LEXIS 101038 (D. Vt. Jan. 13, 2021) ...................................................................... 12

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) ...................................................... 9, 11

*Skyline Corp. v. Nat'l Labor Relations Bd.*, 613 F.2d 1328 (5th Cir. 1980) ............................... 12

*Sonus Networks, Inc. v. Metaswitch Networks Ltd*., No. 2:18-CV-00057, 2019 U.S. Dist. LEXIS 234453 (E.D. Tex. Mar. 27, 2019).......................................................................... 21

*Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth*., 442 F. Supp. 1201 (S.D.N.Y. 1978) .. 15

*Staton Techiya, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:21-CV-00413, 2023 U.S. Dist. LEXIS 51692 (E.D. Tex. Feb. 1, 2023) ................................................................................ 8

*Staton Techiya, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:21-CV-00413-JRG-RSP, 2023 U.S. Dist. LEXIS 50601 (E.D. Tex. Mar. 24, 2023) ................................................................ 8

*Texas Utilities Co. v. Santa Fe Industries, Inc*., 553 F. Supp. 106 (N.D. Tex. 1982) ................ 15

*Thompson v. Greyhound Lines, Inc.*, 574 Fed. Appx. 407  (5th Cir. 2014).................................... 4

*United Servs. Auto. Ass'n v. Truist* Bank, No. 2:22-cv-00291, No. 2:22-CV-00291, 2023 U.S. Dist. LEXIS 62443 (E.D. Tex. Apr. 8, 2023)............................................................. 6, 15

*Utah v. Walsh,* Case No. 2:23-CV-016-Z, 2023 U.S. Dist. LEXIS 52503 (N.D. Tex. March 28, 2023) .......................................................................................................................... 24

*Williams v. Netflix, Inc.*, No. 22-1132, 2023 U.S. Dist. LEXIS 84945 (D. Del. May 16, 2023).... 9

*XR Comm'ns, LLC v. HP Inc.*, No. 6:21-CV-694, 2022 U.S. Dist. LEXIS 146975 (W.D. Tex. Aug. 1, 2022) ....................................................................................................................... 20

*Z-TEL Communs., Inc. v. SBC Communs., Inc.*, 331 F. Supp. 2d 567 (E.D. Tex. 2004) ............. 16

**Statutes**

28 U. S. C. § 1404 ...................................................................................................................... 3

28 U.S.C. § 1404(a) ........................................................................................................ 7, 9, 17

The Clayton Antitrust Act of 1914 ("Clayton Act"), Pub. L. No. 63-212, 38 Stat. 730.2, 12, 15, 16

The Sherman Act, 84 P.L. 135, 69 Stat. 282, 84 Cong. Ch. 281 ......................................... 4, 24

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 3

Fed. R. Civ. P. 41 ....................................................................................................................... 4

**PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANTS' VENUE TRANSFER MOTION**

## INTRODUCTION

This is an antitrust case brought against members of the "Trusted News Initiative" ("TNI"), an online news censorship cartel through which some of the world's most prominent news organizations, joined by the world's largest Internet platforms, have since 2020 been censoring rival online news publishers all over the United States who engage in reporting that the TNI prohibits. This brief responds to Defendants' motion to transfer venue from the Western District of Louisiana to either New York City or Washington, DC.

Win or lose, this case is now before the right court. At the heart of this case is social media censorship of speech related to COVID-19 and U.S. politics. No court in the country is more familiar than this Court with these issues. Three other related cases dealing with such censorship are pending here, and this Court has already issued detailed, fact-intensive rulings in one of those cases. No court in the country understands better the deceptive practices through which social media companies have been censoring legitimate speech, frequently discriminating against disfavored viewpoints, under the guise of combating "misinformation." As shown below, the existence of pending related cases and a forum's familiarity with the issues are "powerful" factors weighing against transfer. (*See* Point III(F) *infra*.)

But even more important, before reaching the private and public interest factors relevant to venue transfer motions, Defendants' motion is categorically ***barred by clear, controlling contrary Supreme Court precedent nowhere mentioned in Defendants' brief***. (*See* Point II *infra*.) Transfer must be denied for this reason alone. And that's not the Defendants' only egregious error. In addition, without limitation:

- Defendants assert that Plaintiffs' choice of forum is entitled to "no deference," but fail to

mention the numerous cases holding that "*in an antitrust action a plaintiff's 'choice of forum is entitled to particular respect.'*" (*See* Point III(A) *infra*.)

- Defendants state over and over that Plaintiffs are not residents of this District and that Defendants' misconduct was not centralized in this District, but in cases alleging a *nationwide antitrust violation, those facts have "little effect" and do not state a claim for transfer of venue*. (*See* Point III(A) *infra*.)

- Contrary to Defendants' unsupported assertions, the *witness convenience factors—which are among the most important of the numerous factors considered in venue transfer motions—strongly favor this District over an East Coast venue*. (*See* Point III(B) *infra*.)

- Defendants repeatedly claim or imply that Plaintiffs have engaged in improper "forum-shopping," but (1) this claim is untrue and unfair (*see infra* p. 5), and (2) Defendants fail to mention that *in antitrust cases, the Fifth Circuit has expressly held "forum-shopping" to be not only permissible, but statutorily contemplated*. *See Black v. Acme Mkts., Inc.*, 564 F.2d 681, 687 (5th Cir. 1977) (stating that Clayton Act's broad venue provision "manifests a congressional belief that forum shopping plays a role along with product shopping in insuring the vitality of a competitive market")*.* In reality, it is Defendants who are forum-shopping here, seeking to shift this litigation to one of their home forums.

- Finally, Defendants rely heavily on the transfer ruling in this case previously issued by the Hon. Judge Matthew Kacsmaryk of the Northern District of Texas (where this case was originally filed) without mentioning that due to a judicial procedural error, Judge Kacsmaryk issued his transfer order *a month before Plaintiffs' opposition brief was due* (under the court's own briefing schedule)—so that Judge Kacsmaryk was never informed that Defendants' transfer motion violated clear Supreme Court precedent, and instead was apparently under the

impression that he was granting an unopposed motion. As will be shown below, Judge Kascmaryk's ruling is entitled to no deference here and is a legal "nullity." (*See infra* p. 4.)

The ultimate question under 28 U.S.C. § 1404 is what forum best serves "the interests of justice." For the reasons stated below, this is not a close call: Plaintiffs are entitled to have their antitrust case heard here.

**STATEMENT OF FACTS**

The facts of this case are summarized in Plaintiffs' brief opposing Defendants' Rule 12(b)(6) motion to dismiss. Facts pertinent to this motion are discussed below.

**PROCEDURAL STATEMENT**

This case was originally filed in the Northern District of Texas on January 10, 2023. As here, Plaintiffs and Defendants submitted to the Court a jointly agreed-to briefing schedule. (N.D. Tex. ECF No. 23.) On February 23, 2023, Judge Kacsmaryk issued an order memorializing that briefing schedule, which gave Defendants until April 18, 2023 "to answer or otherwise respond" to the Complaint, and gave Plaintiffs until June 19, 2023, to "respond to Defendants' motions." (N.D. Tex. ECF No. 24 at 1 (attached hereto as Exhibit ("Exh.") A).)

Pursuant to this briefing schedule, on their due date (April 18, 2023), Defendants in the Texas proceedings filed the same three motions they have filed here: a BBC personal jurisdiction motion, a Rule 12(b)(6) motion, and a venue transfer motion. (N.D. Tex. ECF Nos. 51, 54, 56.) Accordingly, under the Court's order, Plaintiffs had until June 19, 2023 to respond.

But on May 12, 2023—without notice, more than a month before Plaintiff's response brief was due, and without giving Plaintiffs any opportunity to address the Court—Judge Kacsmaryk transferred this case to Southern District of New York. (N.D. Tex. ECF No. 64.) Because Plaintiffs were denied the opportunity to oppose, Judge Kacsmaryk was never informed that transfer was

3

unlawful under clear and controlling Supreme Court precedent. He was never informed that in antitrust cases challenging a nationwide Sherman Act violation, the plaintiff's choice of venue is entitled to special weight and the situs of plaintiff residency is irrelevant. He was never informed that Defendants had misstated the critical witness convenience factors and that those factors actually disfavored transfer. Instead, Judge Kacsmaryk appeared to be under the impression that he was granting an unopposed motion. *Compare* N.D. Tex. ECF No. 24 at 1 (Feb. 23, 2023) (Court's scheduling order) ("Plaintiffs must respond to Defendants' Motions . . . ***on or before June 19, 2023***") (original emphasis) (attached hereto as Exh. A) *with* N.D. Tex. ECF No. 64 at 1 (May 12, 2023) (ruling on transfer motion) ("But Plaintiffs did not respond to the Motion.").

On May 23, 2023, exercising their rights under Fed. R. Civ. P. 41, Plaintiffs filed in the Southern District of New York a voluntary dismissal of the action without prejudice (S.D.N.Y. ECF No. 70), and on May 31, 2023, Plaintiffs refiled the case here (ECF No. 1).

In these circumstances, Judge Kacsmaryk's transfer ruling—improperly relied on by Defendants throughout their brief—is entitled to no deference, and his findings no weight. First, Judge Kacsmaryk's ruling is not "law of the case"; on the contrary, "[t]he rule in the federal courts is that the effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) ***is to render the [prior] proceedings a nullity and leave the parties as if the action had never been brought***." *Thompson v. Greyhound Lines, Inc.*, 574 Fed. Appx. 407, 409 (5th Cir. 2014) (emphasis added); *see also, e.g.*, *Graphic Packaging Int'l v. DuCharme, McMillen & Assocs.*, No. 13-CV-231, 2013 U.S. Dist. LEXIS 96267, at *6 n.14 (M.D. La. July 10, 2013) (same). Second, because Judge Kacsmaryk denied Plaintiffs the opportunity to oppose—contrary to the scheduling order he himself had issued—his ruling was based on ill-informed premises, both factual and legal, as a direct result of the denial of adversarial due process.

4

One last procedural point of utmost significance: Defendants accuse Plaintiffs of "forum shopping," but the reason why Plaintiffs chose to refile this case in the Western District of Louisiana is simple. By the time of refiling, a related case—*Kennedy et al. v. Biden et al.*, No. 3:23-CV-00381 (W.D. La.) (Doughty, J.)—had already been filed in this Court by some of the same Plaintiffs, also involving claims of social media censorship of speech related to COVID-19 and U.S. political elections. Indeed, the complaints in the two cases contain pages of identical allegations (*compare* ECF No. 1 at pp. 50-54 *with* Kennedy Action ECF No. 1 at pp. 108-12). Two Plaintiffs in this case (Plaintiff Hoft and Plaintiff Children's Health Defense) are also plaintiffs in *Kennedy v. Biden*. Moreover, two other related cases pending before your Honor—*Missouri et al. v. Biden et al.*, No. 3:22-CV-01213 (W.D. La.) (Doughty, J.), and *Hines et al. v. Stamos et al.*, No. No. 3:23-cv-571 (W.D. La.) (Doughty, J.), in both of which Mr. Hoft is a plaintiff—also involve claims of social media censorship of speech related to COVID-19 and U.S. political elections. This Court has already issued lengthy, thorough, fact-intensive opinions in the *Missouri* proceedings. Plaintiffs were not engaged in improper forum-shopping when they refiled here; they were filing the case before the most knowledgeable Court in the United States.

## ARGUMENT

I.   **Plaintiffs' factual allegations must be accepted as true on this motion, factual conflicts must be resolved in Plaintiffs' favor, and Defendants bear the "significant burden" of proving that transfer is "clearly" warranted.**

On a motion for venue transfer, allegations in a complaint are taken as true, all reasonable inferences must be drawn in plaintiff's favor, and all factual conflicts must also be resolved in plaintiff's favor.[1] Venue transfer movants bear a "significant burden" of proof and must establish

---

[1] *See, e.g., Centennial Ins. Co. v. W.C. Fore Trucking, Inc.*, No. 05-166, 2005 U.S. Dist. LEXIS 52213, at *2 n.2 (E.D. La. Dec. 6, 2005) ("For the purposes of this Motion to Transfer Venue, the Court takes the allegations in the plaintiff's complaint as true."); *Intertrust Techs. Corp. v.*

that transfer is "***clearly***" warranted. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) (emphasis added); *see, e.g.*, *Koss Corp. v. Apple Inc*., No. 6-20-CV-00665, 2021 U.S. Dist. LEXIS 222697, at *47 (W.D. Tex. Apr. 22, 2021) ("Apple has failed to meet the heavy burden of showing that [the Northern District of California] is a clearly more convenient venue warranting transfer."); *Peppers Unlimited, Inc. v. Trujillo*, No. 4:18-cv-01001**,** 2019 U.S. Dist. LEXIS 165152, at *13 (N.D. Tex. Sep. 26, 2019) ("Defendant must meet the heavy burden of proving the transferee venue is 'clearly more convenient than the venue chosen by plaintiff.'").

Under this "elevated burden" of proof, the "moving party 'must show materially more than a mere preponderance of convenience.'" *United Servs. Auto. Ass'n v. Truist Bank*, No. 2:22-CV-00291, 2023 U.S. Dist. LEXIS 62443, at *4 (E.D. Tex. Apr. 8, 2023) (citations omitted); *see also, e.g.*, *Open Text Corp. v. Alfresco Software*, No. 6:20-CV-0920, 2021 U.S. Dist. LEXIS 223228, at *14-15 (W.D. Tex. Sep. 30, 2021) (same); *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-118, 2019 U.S. Dist. LEXIS 206019, at *15 (E.D. Tex. Nov. 27, 2019) (same).

To secure transfer, Defendants must satisfy two tests. First, Defendants must prove that the case could "have been brought in the destination venue." *In re Volkswagen*, 545 F.3d at 312 (citation omitted). If and only if Defendants so prove, the court moves on to a multi-factor test, and Defendants must then demonstrate that transfer is "clearly more convenient than the venue chosen by plaintiff" under a number of well-known private and public interest factors discussed below. *Id*. at 315. Here, Defendants have not made and cannot make either showing.

---

*Cinemark Holdings, Inc.*, No. 2:19-CV-00266, 2020 U.S. Dist. LEXIS 208572, at *6 (E.D. Tex. Sep. 30, 2020) ("when deciding a motion to transfer venue under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party."); *Jorge v. Atl. Hous. Found. Inc.*, No. 2:19-CV-00296, 2020 U.S. Dist. LEXIS 262856, at *4 (E.D. Tex. July 28, 2020) (same); *Beijing iQIYI Science & Tech. Co. v. iTalk Global Communs., Inc.*, No. 6-19-CV-00272, 2019 U.S. Dist. LEXIS 216697, at *20 n.8 (W.D. Tex. Dec. 17, 2019) (same).

**II.     Transfer is barred under clear and controlling Supreme Court precedent.**

Under clear and controlling Supreme Court precedent, Defendants have not made and cannot make the first showing—that this case could have been brought in their preferred venues.

To make this showing, a transfer movant must demonstrate that personal jurisdiction would have existed in the transferee court for ***all*** defendants at the time suit was brought. *See, e.g.*, *Ill. Union Ins. Co. v. Tri Core, Inc.*, 191 F. Supp. 2d 794, 797 (N.D. Tex. 2002) (movants "bear the burden of affirmatively demonstrating that each defendant would have been subject to personal jurisdiction in the transferee court"). Defendants apparently believe—or want this Court to believe—that they can satisfy this requirement by ***consenting*** to jurisdiction, or ***agreeing not to contest*** jurisdiction, in their preferred venues. Thus Defendants assert that "the BBC will not contest jurisdiction in New York," and "all Defendants agree to consent to personal jurisdiction in the District of Columbia," and hence (according to Defendants) "the case indisputably could have been brought in the transferee forums." (ECH 42-1 at 9-10 & n.2.)

But the Supreme Court expressly ruled sixty years ago that defendants cannot secure a venue transfer this way. In *Hoffman v. Blaski*, 363 U.S. 335 (1960), which Defendants never mention, a venue transfer had been granted where personal jurisdiction (and venue) did not clearly exist in the transferee court, but Defendants had consented to personal jurisdiction and venue there. *Id.* at 343. The Supreme Court reversed, holding that under the express language of the venue transfer statute, 28 U.S.C. § 1404(a), plaintiff must have had a "right" to bring the case in the transferee court at the time of filing, and that defendants cannot secure a transfer by "waiv[ing] their statutory defenses as to venue and jurisdiction." *Id.* at 344. "We do not think the [§] 1404(a)

phrase 'where it might have been brought' can be interpreted to mean, as petitioners' theory would require[], 'where it may now be re-brought, with defendants' consent.'" *Id*. at 342.

The rule established by *Hoffman* is clear, well-established, and directly violated by Defendants' attempt to transfer on the basis of the BBC's consent to jurisdiction in New York or the other parties' consent to jurisdiction in Washington.  *See, e.g.*, *Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, No. 2:16-CV-01425, 2017 U.S. Dist. LEXIS 213778, at *9 (E.D. Tex. Dec. 28, 2017) (citing *Hoffman*) ("The LG defendants contend that a defendant could consent to jurisdiction or venue in the transferee forum. This . . . argument . . . was rejected by the Supreme Court almost 60 years ago. The LG defendants have the burden of showing that the case could have been bought in the transferee forum ***irrespective of consent or waiver***.") (emphasis added). "[A]llowing a defendant to subsequently transfer a case wherever he wants by simply waiving personal jurisdiction or venue would 'do violence to the plain words of § 1404(a).'" *Pruitt v. Bruce Oakley, Inc.*, No. 18-8621, 2019 U.S. Dist. LEXIS 97622, at *6 (E.D. La. June 11, 2019) (quoting *Hoffman*). Literally hundreds of cases have followed *Hoffman* and denied transfer where defendants sought to do exactly what Defendants here seek to do: create jurisdiction in their preferred venue by consenting to it.[2]

To escape *Hoffman*, Defendants would have to have demonstrated the existence of personal

---

[2] To cite only a few recent in-Circuit cases, see, for example, *Staton Techiya, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:21-CV-00413, 2023 U.S. Dist. LEXIS 51692, at *8 (E.D. Tex. Feb. 1, 2023) ("'Wish or waiver' is insufficient" to show existence of personal jurisdiction in transferee court) (quoting *Hoffman*), *report adopted*, 2023 U.S. Dist. LEXIS 50601 (E.D. Tex. Mar. 24, 2023); *Atlas Global Techs. LLC v. Tp-Link Techs. Co., Ltd.*, No. 2:21-cv-430, 2022 U.S. Dist. LEXIS 237296, at *6 (E.D. Tex. Dec. 28, 2022) ("Submission to a transferee forum is insufficient to satisfy 28 U.S.C. § 1404(a)'s 'might have been brought' requirement. Instead, . . . personal jurisdiction and proper venue [must be shown] regardless of submission or waiver."), *report adopted*, 2023 U.S. Dist. LEXIS 17774 (E.D. Tex. Feb. 2, 2023); *Nride Semiconductors Co. v. Lite-On Tech. Corp.*, No. W-21-CV-00183, 2022 U.S. Dist. LEXIS 21086, at *11-12 (W.D. Tex. Feb. 7, 2022) (rejecting transfer where defendant "seeks to offensively waive venue" in the transferee court).

jurisdiction over all Defendants either in New York or Washington absent their consent to being sued there. This they have not done and cannot do.

Again, the movant's burden of proof on this issue is a heavy one.  A "transfer is authorized by the statute only if the plaintiff had an '*unqualified right*' to bring the action in the transferee forum at the time of the commencement of the action," and "[i]f there is a '*real question*' whether a plaintiff could have commenced the action originally in the transferee forum, it is evident that he would not have an unqualified right to bring his cause in the transferee forum." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970) (emphasis added) (citation omitted); *Air Vent Inc. v. Powermax Elec. Co.*, No. 3:21-CV-00229-X, 2021 U.S. Dist. LEXIS 204873, at *8 (N.D. Tex. Oct. 25, 2021) ("unqualified right"). ***"[A]ny ambiguity is resolved against transfer."*** *NRDC v. United States DOE*, No. 17 Civ. 6989, 2018 U.S. Dist. LEXIS 36548, at *13 (S.D.N.Y. Mar. 5, 2018) ("'The plaintiff must have had an unqualified right to bring the action in the proposed transferee district' . . . .  As such, even if there were some ambiguity as to whether NRDC's challenge could have been brought in the Seventh Circuit, any ambiguity is resolved against transfer.") (citation omitted); *see Williams v. Netflix, Inc.*, No. 22-1132, 2023 U.S. Dist. LEXIS 84945, at *4 (D. Del. May 16, 2023) (same).[3]

Defendants have not shown that Plaintiffs had an "unqualified right" to bring this suit in either of their preferred venues. As to New York, Defendants' insurmountable problem is jurisdiction over the BBC. Defendants do not even try to make an argument, of any kind, that the BBC would have been subject to personal jurisdiction in the Southern District of New York. (*See* ECF 42-1 at 9 (arguing that the BBC is subject to jurisdiction in Washington, but not New York)).

---

[3] The 2011 amendment to § 1404(a), which added that a district court may also transfer an action "to any district or division to which ***all*** parties have consented," does not apply here because Plaintiffs do ***not*** consent to either of Defendants' proposed transferee forums.

Instead, the only argument Defendants make is that the BBC "will not contest jurisdiction" if the case is transferred there (ECF No. 42-1 at 9)—the very argument that *Hoffman* bars.

And even if they had tried (which they have not), Defendants could not have proven that Plaintiffs had an unqualified right to sue the BBC in New York. As Plaintiffs explain in their brief opposing the BBC's Rule 12(b)(2) motion, personal jurisdiction over the BBC exists here, in this Court, because **in the Fifth Circuit** (as well as three other circuits), the Clayton Act confers personal jurisdiction over a corporate defendant so long as that corporation has minimum *national* contacts (contacts with "the United States as a whole"), a test easily satisfied for the BBC.[4] But that's not the rule in the **Second Circuit**, which is among the minority of appellate courts that reject the Clayton Act national-contacts test.[5] Thus to establish Clayton Act jurisdiction over the BBC in the Southern District of New York, Defendants would have to have argued and proven that the BBC transacts "substantial" business there.[6]

But Defendants have made no such argument, and they offer no such proof. Indeed, making such a claim would have contradicted the BBC's own arguments in its Rule 12(b)(2) motion. Hence Defendants have waived any argument they might have had that the BBC transacts substantial business in the Southern District of New York and is thereby subject to jurisdiction in

---

[4] *See, e.g.*, *Fontenot v. Mullins Mfg. Co.*, No. 95-31013, 1996 U.S. App. LEXIS 43933, at *2 (5th Cir. May 1, 1996) ("The relevant minimum contacts inquiry here, therefore, is whether [the defendant] had sufficient minimum contacts with the United States."); *Crompton Corp. v. Clariant Corp.*, 221 F. Supp. 2d 683, 688-89 (M.D. La. 2002) ("Based on decisions by the Fifth Circuit and many other circuits across the country, the Court finds that it must determine personal jurisdiction based on the defendants' contacts with the United States as a whole rather than just with the state of Louisiana."). *See* Pl. Brief Opposing BBC Motion to Dismiss at 3-7.

[5] *See, e.g.*, *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005); Pl. Brief Opposing BBC Motion to Dismiss at 9-10.

[6] Defendants concede that to establish Clayton Act jurisdiction in the Southern District of New York for a defendant that (like the BBC) is neither incorporated nor headquartered there, they must show that the defendant transacts "substantial" business there. (*See* ECF No. 42-1 at 9.)

that district.[7] At a minimum, a "real question" exists about whether Plaintiffs could have sued the BBC in New York, and transfer to that district is therefore barred. *See Shutte*, 431 F.2d at 24 ("If there is a '**real question**' whether a plaintiff could have commenced the action originally in the transferee forum, it is evident that he would not have an **unqualified right** to bring his cause in the transferee forum.") (emphasis added) (citation omitted).[8]

As to Washington, DC, Defendants have similarly failed to carry their heavy burden of proof—requiring them to demonstrate that Plaintiffs had an "unqualified right" to sue there—with respect to Reuters. To begin with, the D.C. Circuit is also (like the Second Circuit) among the minority of courts to have rejected the Fifth Circuit's holding that Clayton Act personal jurisdiction exists for a corporate defendant so long as it has minimum national contacts.[9] Thus while this Court has Clayton Act personal jurisdiction over all Defendants, the District Court for the District of Columbia does not. Instead, once again—as Defendants themselves acknowledge (*see* ECF 42-1 at 9)—to prove Clayton Act jurisdiction in DC, Defendants would have to demonstrate that all Defendants transact "substantial" business there. But Defendants have failed to so prove.

This failure of proof is particularly stark with respect to Reuters. Defendants concede that

---

[7] Nor can Defendants make this argument in their Reply brief. "Arguments 'raised for the first time in a reply brief are generally waived.'" *Robles v. Eminent Med. Ctr., LLC*, 619 F. Supp. 3d 609, 626 (N.D. Tex. 2022) (quoting *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010)); *see Kelly v. Berry Contr., LP*, No. 19-10501, 2019 U.S. Dist. LEXIS 196549, at *2-3 (E.D. La. Nov. 13, 2019) (defendant cannot submit new evidence in reply brief).

[8] By contrast to Defendants' failure to argue or prove that the BBC transacts substantial business in the Southern District of New York, Plaintiffs have shown not only that the BBC has sufficient business contacts with the United States as a whole, but also (although not necessary under Fifth Circuit case law) that the BBC has sufficient business contacts with this District. (*See* Plaintiffs' Brief Opposing BBC Motion to Dismiss at 14-21 and accompanying Declaration.) Thus while Plaintiffs have met their burden of proof (which was simply to make a *prima facie* case) on this issue, Defendants have (1) waived the argument that the BBC transacts business in New York, *see supra* note 7, and (2) offered no evidence thereof at all.

[9] *See, e.g.*, *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000); Plaintiffs' Brief Opposing BBC Motion to Dismiss at 9-10.

Reuters is "principally operated out of New York, N.Y.," but assert in their brief that it "has a smaller, though substantial office in the District of Columbia." (ECF 42-1 at 9.) This assertion, however, misrepresents—indeed sharply misrepresents—the actual declaration submitted by Reuters, which says nothing of the kind.  The Reuters declaration says only this:

> 4.      Reuters' principal place of business within the United States, and the location of the majority of its U.S.-based editorial staff, is New York, NY.
>
> 5.      Reuters also has ***U.S.-based editorial staff in the District of Columbia***.

(ECF 42-4 ¶¶ 4, 5 (emphasis added).)

In other words, contrary to Defendants' brief—which is "not evidence"[10]—the declaration does ***not*** say that Reuters has a "substantial office" in Washington; it does not even say that Reuters has ***any office at all*** in Washington. Nor does the declaration say that Reuters transacts substantial business in Washington; it does not even say that Reuters ***conducts any business at all*** in Washington. It merely says that Reuters has some unknown number of "U.S.-based editorial staff in" Washington. Whatever that means, it is plainly insufficient to satisfy the Clayton Act's substantial transaction of business requirement. *See, e.g.*, *Shat Acres Highland Cattle, LLC v. Am. Highland Cattle Ass'n*, No. 2:20-CV-62, 2021 U.S. Dist. LEXIS 101038, at *11-12 (D. Vt. Jan. 13, 2021) ("advanc[ing] conclusory, bare-bones allegations that a corporate organization has several employees who reside in a district" is "insufficient" to satisfy Clayton Act "transacting-business" requirement); *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 231 (S.D.N.Y. 2019) ("Plaintiffs also state that . . . Nomura International PLC has many employees based in New York. But without allegations of specific activities, these are 'minimal allegations' that do not satisfy the 'transacts business' standard."); *Am. Home Healthcare Sys. v. Floyd Mem. Hosp. &*

---

[10]  *See Skyline Corp. v. Nat'l Labor Relations Bd.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.").

*Health Servs.*, No. 3:17-CV-00048, 2017 U.S. Dist. LEXIS 77825, at *8 (W.D. Ky. May 23, 2017) ("The fact that some of [defendant's] employees resided in Kentucky, without a showing that they transacted any business in Kentucky, is not enough to satisfy the standard for Section 12 of the Clayton Act."); *cf. Dennis v. JPMorgan Chase & Co*., 345 F. Supp. 3d 122, 199-200 (S.D.N.Y. 2018) (allegation that defendant "maintains a Foreign Representative Office" in Manhattan, with no allegations of "specific activities," does not satisfy "burden to show that [defendant] 'transacts business' in the Southern District of New York").[11]

Thus the assertion that Reuters has "U.S.-based staff in" Washington is grossly insufficient to meet Defendants' burden of proving that Reuters transacts substantial business there. At best, the Reuters declaration is ambiguous, leaving open "real question[s]" about how much, if any, business Reuters transacts in Washington, and thus fails to demonstrate an "unqualified right" to transfer. *See Shutte*, 431 F.2d at 24.

And having failed to carry their burden of proof in their opening brief, Defendants cannot cure that defect by introducing new evidence in their reply. *See, e.g.*, *Kelly v. Berry Contr., LP*, No. 19-10501, 2019 U.S. Dist. LEXIS 196549, at *2-3 (E.D. La. Nov. 13, 2019) ("Defendant's reply includes several new pieces of evidence submitted in an attempt to remedy deficiencies in its original motion that were identified by Plaintiffs in their opposition. '[A] movant should not be permitted to cure by way of reply what is in fact a defective motion.' Accordingly, this Court will not consider this evidence.") (citation omitted).

Without any evidence demonstrating that Reuters transacts substantial business in Washington, all that remains is Defendants' contention that Reuters would "consent to

---

[11] Defendants have similarly failed to prove jurisdiction over the AP in Washington and over the Washington Post in New York.  (*See* ECF No. 42-3 ¶ 5 (stating only that the AP "has an office in Washington, DC"); ECF No. 42-2 ¶ 4 (stating only that "the Post has an office in New York").)

jurisdiction" there, which directly violates the Supreme Court's decision in *Hoffman*. Thus in both their preferred venues—the Southern District of New York and the District of Columbia—at least one Defendant has not been shown to be subject to personal jurisdiction except through waiver or consent. Transfer must be denied for this reason alone.

III.    **Defendants have not demonstrated and cannot demonstrate that transfer would be "clearly more convenient" under the well-known private and public interest factors.**

Because Defendants have not shown that this suit could have been brought in either of their preferred venues—absent a violation of the Supreme Court's *Hoffman* decision—this Court need not proceed to the second, multi-factor venue convenience test. Regardless, Defendants fare no better under the second test than they do under the first.

The well-known private and public interest factors to be considered on a venue transfer motion are as follows:

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*In re Volkswagen*, 545 F.3d at 315 (citation omitted). These factors are not "exhaustive," and none is "dispositive," *id.*, but witness convenience (private interest factor three) is often "accorded the most weight." *Allcapcorp, Ltd. v. CHC Consulting, Congruex LLC*, No. 3:17-CV-0757, 2019 U.S. Dist. LEXIS 19320, at *18 (N.D. Tex. Jan. 10, 2019) (citation omitted), *report adopted*, 2019 U.S. Dist. LEXIS 16633 (N.D. Tex., Feb. 1, 2019); *see Qualls v. Prewett Enters.*, 594 F. Supp. 3d 813, 824 (S.D. Tex. 2022). Defendants must show that transfer is "clearly" warranted, *In re Volkswagen*, 545 F.3d at 315, and to do so they "must show materially more than a mere

preponderance of convenience.'" *United Servs. Auto. Ass'n*, 2023 U.S. Dist. LEXIS 62443, at *4.

As shown below, not a single one of the listed factors favors transfer. Moreover, the key witness convenience factors disfavor transfer, and two additional factors strongly favor keeping this case here as well—the fact that this is an antitrust case and the fact that related cases are already pending before this Court, giving this Court unmatched familiarity with the issues.

### A.     In antitrust cases, plaintiffs' choice of venue is entitled to special weight.

The starting point of all venue analysis in antitrust cases is "the broad scope of the Clayton Act venue provisions," designed "to ***give plaintiff the widest possible selection of venue for his benefit***." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 295 (3d Cir. 2004) (emphasis added) (citation omitted). For this reason, "forum shopping" is not only permissible in antitrust cases, but statutorily contemplated. *See Black v. Acme Markets, Inc.*, 564 F.2d 681, 687 (5th Cir. 1977) (Clayton Act's broad venue provision "manifests a congressional belief that forum shopping plays a role along with product shopping in insuring the vitality of a competitive market").

Numerous cases hold that "[i]n an antitrust action a plaintiff's 'choice of forum is entitled to particular respect' and consequently that the defendant's burden" in an antitrust venue transfer motion is even "heavier than in other types of actions." *Texas Utilities Co. v. Santa Fe Indus., Inc.*, 553 F. Supp. 106, 109 (N.D. Tex. 1982) (citation omitted); *see also, e.g.*, *Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 385 (W.D. La. 1996) (citing "authority for the proposition that the defendants' § 1404(a) burden is 'especially heavy' in antitrust suits because the plaintiff's choice of forum is entitled to particular respect"); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992) ("the plaintiff's choice of forum is entitled to particular deference in antitrust cases"); *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth.*, 442 F. Supp. 1201, 1207 (S.D.N.Y. 1978) (transfer movant's "burden is especially heavy in antitrust suits, where plaintiff's choice of forum is entitled to particular respect").

15

Over and over, Defendants invoke the fact that Plaintiffs do not reside in this District and that the TNI's group boycott was not initiated or centralized in this District. But in an antitrust case, these facts are of "little effect" and do not state a claim for transfer. As Chief Judge Folsom stated in *Rochester Medical Corp. v. C.R. Bard*, No. 5:04-CV-60, 2005 U.S. Dist. LEXIS 62559 (E.D. Tex. Feb. 25, 2005):

> Defendants' demonstration that Plaintiff does not reside in the Eastern District of Texas has little effect on the deference afforded Plaintiff's choice of forum in this matter. *See Z-TEL Communs., Inc. v. SBC Communs., Inc.*, 331 F. Supp. 2d 567, 570 (E.D. Tex. 2004) (holding that the ***plaintiff's residence "does not usefully inform the Court's analysis" regarding the deference given to the plaintiff's forum choice in an action brought under the federal antitrust statute***). As mentioned above, the venue provisions of the Clayton Act . . . make no mention of the plaintiff's residence. 15 U.S.C. § 22; *see also id.* The Plaintiff has chosen the Texarkana Division of the Eastern District of Texas as the forum in which it wishes to pursue its lawsuit. At a minimum, this choice is a factor which weighs against transfer.
> . . . .
> [Similarly, the] place of alleged wrong does not support transfer to the District of Minnesota. ***Based on the nature of this action, antitrust, Plaintiff has alleged violations throughout the country. . . . As such, the Court finds that there is no one central place where the alleged wrongful conduct occurred. If there is no centralized location where the alleged wrongful conduct occurred, "then, as long as the plaintiff brings its action in a forum where the alleged [conduct] is occurring, that choice should not be undermined by allegations that infringing activities occur throughout the country."*** [] Thus, this factor does not support transfer because the alleged wrong occurred nationwide, including the Eastern District of Texas.

*Id*. at *11-12 (emphasis added) (citations omitted).

Moreover, it simply isn't true that the unlawful conduct and injuries in this case did not occur here. On the contrary, Plaintiffs allege a substantial loss of customers and revenue in the state of Louisiana and the Western District of Louisiana. (ECF No. 1 ("Compl.") ¶ 124; Declaration of Jeff Crouere ("Crouere Decl.," attached hereto as Exh. B); Declaration of Dr. Joseph Mercola ("Mercola Decl.," attached hereto as Exh. C); Declaration of Daniel O'Connor ("O'Connor Decl.," attached hereto as Exh. D).) Plaintiffs have readers, listeners, and viewers in this District (*e.g.*, Crouere Decl. ¶¶ 5-7, 8; Mercola Decl. ¶ 7; O'Connor Decl. ¶ 5), and damages

from Defendants' conduct have been incurred within this District as elsewhere. (*E.g.*, Crouere Decl. ¶¶ 6, 9; Mercola Decl. ¶ 8; O'Connor Decl. ¶¶ 6, 8.) Thus the TNI conspiracy has worked its effects in this District, and Plaintiffs' choice of forum is entitled to respect.

**B.    The witness convenience factor favors keeping this case here.**

**i.    Non-party witness convenience favors Plaintiffs.**

Putting aside the *Hoffman* bar to Defendants' motion, the convenience of key non-party witnesses is a highly material factor—perhaps the most important factor—in a venue transfer motion. *See Qualls*, 594 F. Supp. 3d at 824; *Allcapcorp, Ltd.*, 2019 U.S. Dist. LEXIS 19320, at *18 ("While the convenience of the witnesses 'is often regarded as the most important factor to be considered in deciding whether to transfer venue,' it is the convenience of non-party witnesses which is accorded the most weight.") (citations omitted). In the Fifth Circuit as elsewhere, witness convenience is generally measured by distance, so that "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004).

As Defendants acknowledge, employees of the TNI's platform members—Facebook, Google, Twitter, and Microsoft—are likely to be key non-party witnesses in this case. (ECF No. 42-1 at 17.) Defendants assert that "all" key TNI platform witnesses "are residents of the United Kingdom," (*id.* at 19), suggesting that an East Coast venue would be significantly closer than Louisiana. But Defendants' assertion is simply false, or at any rate it is far from undisputed,[12]

---

[12] It is well established that in venue transfer motions, defendants can rely only on "***undisputed***" facts tendered in outside-the-pleading evidence. *See, e.g.*, *Intertrust Techs. Corp.*, 2020 U.S. Dist. LEXIS 208572, at *6 ("when deciding a motion to transfer venue under § 1404(a), the court may consider ***undisputed*** facts outside of the pleadings") (emphasis added); *Jorge*, 2020 U.S. Dist. LEXIS 262856, at *4 ("court may consider ***undisputed*** facts outside of the pleadings") (emphasis added); *Beijing iQIYI Science & Tech. Co.*, 2019 U.S. Dist. LEXIS 216697, at *20 n.8 ("court may consider ***undisputed*** facts outside of the pleadings") (emphasis added); *Mendoza v. Microsoft, Inc.*

giving rise to a factual conflict that must be resolved in Plaintiffs' favor.

The facts alleged in the Complaint—which, unlike Defendants' declarations, must be accepted as true on this motion—dictate by reasonable inference that the crucial Platform witnesses are likely to be located **on the West Coast, not the United Kingdom**, making Louisiana by far the closer venue. To give just one illustration, at a 2022 TNI conference, Meta Head of Security Policy Nathaniel Gleicher made crucial and highly material remarks in a TNI video presentation entitled "Big Tech's Part in the Fight." (*See* Compl. at p. 48.) Some of Gleicher's material remarks are summarized in the Complaint as follows:

> 300.    He emphasized that it was a mistake to think of "misinformation" as consisting solely of "false claims," because a great deal of it is "not provably false."

> 301.    He further emphasized the importance not only of targeting specific items of misinformation, but of "banning" the sources thereof.

> 302.    He further stated that Facebook works together with its "industry partners" to combat "disinformation."

> 303.    Indeed, he stressed that "collaboration" among Internet platforms is critical in this endeavor, because otherwise sources banned from one platform would be able to move elsewhere and disseminate their content on other platforms.

> 304.    "As the established players are getting better at catching them," he stated, "they move to smaller platforms, to blogs, et cetera. ***This makes defender collaboration more important than ever and is going to continue to make it even more important going forward***."

(*Id*. (quoting from BBC, Trusted News Initiative, *Big Tech's Part in the Fight*, https://www.bbc.

com/mediacentre/2020/trusted-news-initiative-vaccine-disinformation).)   Given  these  damning

---

1 F. Supp. 3d 533, 539 n.2 (W.D. Tex. 2014) ("In considering motions to transfer venue, a court can rely on ***undisputed*** facts presented" in outside-the-pleading documents) (emphasis added); *Bederson v. United States*, 756 F. Supp. 2d 38, 46-47 (D.D.C. 2010) ("In ruling upon a motion to transfer under 28 U.S.C. § 1404(a), the Court may consider ***only undisputed facts*** presented to the Court by affidavit, deposition, stipulation or other relevant documents.") (emphasis added) (citations omitted).

admissions of TNI cross-platform "collaboration" to ban competing content as "misinformation" when such content was not even "provably false," Gleicher—along with others working with him at Facebook and at the other platforms with which Facebook "collaborat[ed]"—is a likely key non-party witness in this case.

But Gleicher is omitted from Defendants' list of "platform witnesses." No mention of Gleicher can be found in Defendants' papers. Defendants do not claim that he lives in the United Kingdom, and in fact it is a highly plausible inference that Gleicher resides near Facebook's Northern California headquarters, with public information suggesting a home in Menlo Park.[13] In other words, this key non-party witness appears to live more than *one thousand miles closer to Monroe* than to New York City or Washington, DC, clearly favoring the Western District of Louisiana over either the Southern District of New York or the District of Columbia.

And the same will be true of most other key non-party witnesses. As the Complaint alleges, the most important non-parties in this action are the TNI's Big Tech members—Facebook, Twitter, Google, and Microsoft. They are the TNI co-conspirators who take the final steps of blocking, de-boosting, and de-platforming Plaintiffs (and other online news publishers who run afoul of the TNI), in execution of the objective agreed to by all TNI members. By reasonable inference, officers and employees of those four Big Tech companies (whose identities are at present unknown to Plaintiffs) are therefore likely to be the most important non-party witnesses in this case, and because all four of those companies are headquartered on the West Coast,[14] most if not all of those witnesses will be West Coast residents. For all such key non-party witnesses, Monroe is a much

---

[13] *Nathaniel Gliecher*, Zoom Info, www.zoominfo.com/p/Nathaniel-Gleicher/1352800398 (last visited Aug. 1, 2023).

[14] Facebook, Google, and Twitter are headquartered in California. Microsoft is headquartered in Washington State.

closer venue than Manhattan or Washington DC.

ii.    **Witnesses located abroad are a neutral factor.**

Moreover, even as to witnesses located abroad—whether party or non-party witnesses—Defendants have not shown and cannot show that witness convenience favors transfer. Defendants claim that with respect to foreign-located witnesses, an East Coast forum is favored, citing the distance rule quoted above. (ECF No. 42-1 at 15.) Defendants even provide a handy table showing the additional distance of travel from London to Monroe as compared with travel from London to New York City or to Washington, DC. (*Id.* at 20.) But innumerable cases hold that the distance rule does ***not*** rigidly apply to foreign witnesses, who "***will have to travel a great distance***" no matter what, so that venue transfer analysis ***does not count the additional distance from a U.S. coast to a U.S. inland location***. As the Western District of Texas held last year, responding to a claim that Australian witnesses would have a much shorter distance to travel if venue were transferred to California:

> the Court accords ***little to no weight to Australian witnesses under this factor because they will have to travel a great distance independent of the result*** of Atlassian's Motion. *See, e.g.*, *In re Genentech, Inc.*, 566 F.3d 1338, 1334 (Fed. Cir. 2009); *Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097-ADA, 2021 U.S. Dist. LEXIS 258130, at *9 (W.D. Tex. May 19, 2022) (according no weight to European witness); *Danmark v. Shenzhen Apaltek Co.*, No. W-21-CV-00501-ADA, 2022 U.S. Dist. LEXIS 82249, at *6 (W.D. Tex. May 6, 2022) (reducing weight for Danish, Chinese, and Taiwanese witnesses); *AudioEye, Inc. v. accessiBe Ltd.*, No. 6:20-CV-997-ADA, 2022 U.S. Dist. LEXIS 48277, at *6 (W.D. Tex. Mar. 9, 2022) (reducing weight for Israeli witnesses); *Kajeet, Inc. v. Trend Micro, Inc.*, No. 6:21-CV-389-ADA, 2022 U.S. Dist. LEXIS 6603, at *4 (W.D. Tex. Jan. 12, 2022) (giving no weight to Taiwanese witnesses).

*Phoji, Inc. v. Atlassian, Inc.*, No. 6:21-cv-00888, 2022 U.S. Dist. LEXIS 116531, at *10-11 (W.D. Tex. June 23, 2022) (emphasis added).[15]

---

[15] *See also, e.g.*, *XR Comm'ns, LLC v. HP Inc.*, No. 6:21-CV-694, 2022 U.S. Dist. LEXIS 146975, at *15-16 (W.D. Tex. Aug. 1, 2022) (because Taiwanese "witness[es] must travel a significant distance no matter where they testify, the difference between traveling to California and Texas is

Thus even with respect to foreign-based witnesses, Defendants have failed to prove that the witness convenience factor clearly favors transfer. On the contrary, because these witnesses would have to travel many thousands of miles no matter whether this case is tried in Louisiana, New York, or Washington DC, their convenience is a neutral factor.

### iii.   As to U.S. witnesses, taken together, Louisiana is the superior forum.

While non-U.S. witnesses are a neutral factor here, Louisiana is the superior forum for U.S. witnesses taken all together (party and non-party), because the U.S. witnesses are spread out all over the country, and Louisiana is much more centrally located than either New York or Washington, DC. Plaintiffs, for example, reside in Louisiana, California, Florida, Georgia, Utah, Missouri, Nebraska, Wyoming, and Tennessee. Movants are primarily located in New York and Washington. Most platform witnesses, as stated above, will be residents of California (Facebook, Twitter, Google) or Washington State (Microsoft). Some Google witnesses may be residents of Texas (Google maintains at least two offices there). Given that the U.S. witnesses are scattered around the country, Defendants at a minimum have failed to show that an East Coast venue would be clearly superior. *See Rochester Med. Corp.*, 2005 U.S. Dist. LEXIS 62559, at *12-13 (finding

---

slight at best" and has "a neutral effect on the transfer analysis"); *Sonus Networks, Inc. v. Metaswitch Networks Ltd*., No. 2:18-CV-00057, 2019 U.S. Dist. LEXIS 234453, at *22-23 (E.D. Tex. Mar. 27, 2019) ("when a particular witness would be required to travel a significant distance regardless of the chosen venue, that witness is discounted for purposes of the analysis"); *Motion Games, LLC v. Nintendo Co*., 2014 U.S. Dist. LEXIS 188044, at *23-24 (E.D. Tex. Mar. 28, 2014) ("the convenience of the [Japanese-based] witnesses is discounted because they will have to travel a substantial distance for trial, regardless of [whether] it is held" in Washington State or Texas); *Bionx Implants, Inc. v. Biomet, Inc*., No. 99 Civ. 740, 1999 U.S. Dist. LEXIS 8031, at *10 (S.D.N.Y. 1999) (witness convenience factor did not favor New York over Indiana for witnesses located in Finland); *Centro Group, S.p.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058, 1061-62 (S.D.N.Y. 1993) (European plaintiff was no more inconvenienced by litigating in California than in New York); *Ricoh Co. v. Honeywell, Inc*., 817 F. Supp. 473, 484 (D.N.J. 1993) (plaintiff's witnesses from Japan were no more inconvenienced by testifying in Minnesota than in New Jersey).

that because witnesses are "scattered from California to New York" and "there is no single place where a majority of witnesses reside," "Defendants have not carried their burden as to the convenience of witnesses").

C.     **The access-to-proof factor is neutral.**

Defendants' other putative grounds for transfer are meritless. For example, Defendants contend that "ease and access to sources of proof" (private interest factor 1) favors transfer (ECF 42-1 at 12), but that claim flies in the face of Fifth Circuit case law.  Defendants concede that most communications among TNI members were electronic (*see, e.g.*, *id*. at 5), and where "the vast majority of the evidence [will be] electronic," the "access to sources of proof" factor is neutral because digital evidence is "equally accessible in [any] forum." *In re Planned Parenthood Fed'n of Am., Inc*., 52 F.4th 625, 630 (5th Cir. 2022). As to documentary evidence:

> the location of documents is entitled to little weight in the Court's transfer analysis. In fact, this Court has previously noted that ***this factor does not become important unless the documents are so voluminous that their transport constitutes a major undertaking***.  [*In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 690 (E.D. Tex. 1999)]. Defendants have not shown that the transport of [documents] is such a major concern.

*Rochester Med. Corp*., 2005 U.S. Dist. LEXIS 62559, at *14 (emphasis added).

D.     **The compulsory-process factor is neutral.**

Next, Defendants erroneously claim that the "availability of compulsory process" (private interest factor 2) somehow favors transfer.  (ECF No. 42-1 at 13.) In fact, neither a Manhattan nor District of Columbia court would have any more compulsory process power than this Court over the following crucial witnesses in this case: (a) the key current and former BBC officers who led the TNI and reside abroad; or (b) the key non-party officers and employees of the TNI's platform members (Facebook, Google, Twitter and Microsoft), who presumably reside in California or Washington State. On top of that, a District of Columbia court would lack compulsory process

power over the New York witnesses, and a New York court would lack compulsory process power over the Washington, DC witnesses.

In any event, more fundamentally, Defendants have not identified a single likely potential witness who is unwilling to testify, and when parties fail to identify any unwilling witnesses, "the compulsory process factor should be given little weight." *All. Transp. & Logistics, LLC v. G&J Truck Sales, Inc.*, No. 3:20-CV-3451-B, 2021 U.S. Dist. LEXIS 237499, at *3 (N.D. Tex. Dec. 13, 2021) (collecting cases); *see also In re Planned Parenthood*, 52 F.4th at 630-31 (approving District Court's finding that "this factor did not weigh in favor of transfer because the Petitioners failed to identify any witnesses who would be unwilling to testify"). Hence this factor is of little weight and by no means clearly favors transfer.

E.    **The local-interest factor favors keeping this case here.**

Defendants contend that "local interest" (public interest factor 3) favors transfer on the ground that "Monroe has little, if any, interest in the resolution of this case." (ECF 42-1 at 23.) But the Attorney General of Louisiana is far better positioned than Defendants to judge this State's interests, and the Attorney General of Louisiana (as this Court is well aware) has taken one of the strongest stands in the country against social media censorship, protecting the right of this state's citizens to a free press untrammeled by viewpoint discrimination.

Moreover, Defendants have yet again misapprehended the applicable law. The alleged antitrust violation in this case is occurring nationwide, and as former Chief Judge Folsom ruled in *Rochester Medical Corp.*:

> The Court finds that the public interest weighs in favor of having localized controversies resolved at home. However, ***the events of this action occurred nationwide***. While there is a strong connection between the lawsuit and [other potential venues], ***this does not negate the public interest related to the Eastern District of Texas. Thus, the public interest factors do not weigh in favor of transfer***.

2005 U.S. Dist. LEXIS 62559, at *14-15 (emphasis added); *cf. Utah v. Walsh*, Case No. 2:23-CV-016-Z, 2023 U.S. Dist. LEXIS 52503, at *14-15 (N.D. Tex. March 28, 2023) (denying transfer) ("[w]here parties 'are located across the state and across the country,' this is not the sort of 'localized case' where the citizens of Washington, D.C. have a greater 'stake' in the litigation than the residents of Amarillo") (citing *In re Planned Parenthood*, 52 F.4th at 632)).

 **F. The familiarity of the forum strongly favors Plaintiffs.**

 As to the remaining factors, which Defendants do not argue in detail,[16] one—"the familiarity of the forum" with the issues presented (public interest factor 3)—strongly counsels against transfer. As stated above, this case concerns social media censorship, since 2020, of supposed "misinformation" relating to COVID and U.S. political elections, and three related cases are currently pending in this Court also dealing with such censorship. (*See supra* p. 5.) The existence of pending related cases in a given forum (especially with overlapping parties) is a "powerful reason" favoring that forum in a venue transfer motion. *See Cornerstone Sys. v. Prestress Servs. Indus., LLC*, No. 2:15-cv-02255, 2016 U.S. Dist. LEXIS 87946, at *17 (W.D. Tenn. July 7, 2016) (citation omitted) (collecting numerous cases).

 No court in the country is more familiar with social media censorship of speech relating to COVID and U.S. political elections than this Court. No court in the country is more familiar with the truth about so-called "misinformation"—i.e., that the word has been used to mean whatever those seeking censorship want it to mean. No court in the country is more familiar with the grievous

---

[16] Defendants claim that the "congestion" factor favors transfer on the basis of small differences in average-time-to-disposition statistics (ECF No. 42-1 at 22-23), but such data are not meaningful: "this factor is not a 'race between the courts' because '[e]ach case is unique, and whether . . . the case would progress more rapidly here or in [the transferee] district is largely a matter of speculation.'" *Radoszewski v. Plastics Indus. Ass'n*, No. 3:22-CV-1482-B, 2022 U.S. Dist. LEXIS 214286, at *14 (N.D. Tex. Nov. 29, 2022) (citation omitted).

harm to free speech values threatened by social media censorship—values that, as the Supreme Court recognized long ago, are protected not only by the First Amendment, but also by the Sherman Act. *See Associated Press v. United States*, 326 U.S. 1, 20 (1945) (holding that group boycott by members of the Associated Press violated the Sherman Act in part because it "impose[d] restraints" on the "widest possible dissemination of information from diverse and antagonistic sources"). Because there is no forum in the country more familiar than this Court with the core issues raised here, transfer would be contrary to the public interest.

## CONCLUSION

At bottom, movants are New York and Washington, DC businesses seeking transfer this case to—unsurprisingly—a New York or Washington, DC venue. In essence, ***they*** are trying to forum-shop. They are asking that ***their*** convenience be elevated over that of all other parties and witnesses. This is manifestly improper. While of course it "would be much more convenient for ***Defendant*** to litigate this case in its home district," a venue transfer motion should be denied when "transferring venue would merely shift the inconvenience" to other parties. *Align Techs. Corp. v. Atlassian United States Inc.*, No. 1:22-CV-00824, 2023 U.S. Dist. LEXIS 21916, at *10 (W.D. Tex. Feb. 9, 2023) (original emphasis).

Because transfer would be unlawful under Supreme Court precedent, and because Defendants have not demonstrated that transfer would be clearly more convenient, Plaintiffs respectfully submit that Defendants' venue transfer motion must be denied.

Date: August 15, 2023

Respectfully submitted,

*/s/ G. Shelly Maturin, II*

_____

G. SHELLY MATURIN, II (# 26994)
WELBORN & HARGETT, LLC
1540 W. Pinhook Road
Lafayette, LA 70503
Telephone: (337) 234-5533
Facsimile: (337) 769-3173
shelly@wandhlawfirm.com
Attorney for Plaintiffs

JOHN W. HOWARD (CA 80200)
SCOTT J. STREET (CA 258962)
(pro hac vice)
JW HOWARD/ATTORNEYS, LTD.
600 West Broadway, Ste. 1400
San Diego, CA 92101
Telephone: (213) 205-2800
johnh@jwhowardattorneys.com
sstreet@jwhowardattorneys.com
Attorneys for Plaintiffs

JED RUBENFELD (NY 2214104)
(pro hac vice)
1031 Forest Rd. New Haven CT 06515
Tel.: (203) 432-7631
jed.rubenfeld@yale.edu

ROBERT F. KENNEDY, JR. (NY 1999993)
(pro hac vice forthcoming)
48 Dewitt Mills Rd., Hurley NY 12433
Tel: (845) 481-2622

ROGER I. TEICH (CA 147076)
(pro hac vice forthcoming)
337 Liberty St. San Francisco CA 94110
Tel.: (415) 948-0045
rteich@juno.com

Attorneys for Children's Health Defense

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 15th day of August, 2023, a true and correct copy of the above and foregoing was filed with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to all attorneys of record.

*/s/ G. Shelly Maturin, II*

_____

G. SHELLY MATURIN, II

27