# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

-----------------------------------------------------------

**CHILDREN'S HEALTH DEFENSE, TRIALSITE, INC., CREATIVE DESTRUCTION MEDIA, LLC, ERIN ELIZABETH FINN,  JIM HOFT, DR. BEN TAPPER, BEN SWANN, DR. JOSEPH MERCOLA,  TY BOLLINGER, CHARLENE BOLLINGER & JEFF CROUERE,**

          *Plaintiffs,*

     v.

**WP COMPANY, LLC D/B/A THE WASHINGTON POST, THE BRITISH BROADCASTING CORP., THE ASSOCIATED PRESS & REUTERS NEWS & MEDIA, INC.,**

          *Defendants.*

-----------------------------------------------------------

**CIVIL ACTION NO. 3:23-cv-00720**

**Judge Terry A. Doughty**

**Magistrate Judge Kayla D. McClusky**

**JURY TRIAL DEMANDED**

## PLAINTIFFS' BRIEF IN OPPOSITION TO THE BBC'S MOTION TO DISMISS <u>FOR LACK OF PERSONAL JURISDICTION</u>

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ...................................................................................................................... 2

I. Plaintiffs' uncontroverted allegations must be accepted as true, factual disputes must be resolved in Plaintiffs' favor, and Plaintiffs need only make a prima facie showing. ................ 2

II. In antitrust cases against corporations, personal jurisdiction is based on a defendant's contacts with the United States as a whole, not with the state where suit is brought. ............................. 2

III. The BBC unquestionably has minimum contacts with the U.S. as a whole, so personal jurisdiction is proper here. ................................................................................................... 4

IV. The BBC asks this Court to accept an interpretation of the Clayton Act rejected by the Fifth Circuit. ............................................................................................................................ 5

    A. The BBC's interpretation of the Clayton Act contradicts Fifth Circuit case law. .......... 6

    B. The BBC's position has also been rejected by this Court itself. ..................................... 7

    C. The BBC's position is not the "majority" rule. ............................................................. 10

    D. This case involves a foreign corporation. ..................................................................... 11

VI. In any event, the BBC does transact business in this District. ........................................... 11

    A. The term "transacting business" under the Clayton Act is construed broadly and can be satisfied by business activity unconnected to the subject matter of the suit. ........................ 11

    B. The BBC is a global broadcasting giant, with a vast audience in the U.S., and both its nonprofit and for-profit activities qualify as "business" for Clayton Act purposes. ............ 12

    C. The BBC transacts substantial business in this District. ............................................... 14

        i. *The BBC transacts business in this District through BBC Studios* ............................... 14

        ii. *The BBC transacts business in this District through its website, bbc.com* .................. 17

        iii. *The BBC transacts business here through the BBC World Service.* .......................... 19

        iv. *The BBC transacts business in this District through BBC News.* ............................... 20

VII. Because of the BBC's contacts with the U.S., there is no Due Process violation. ........... 21

CONCLUSION .................................................................................................................. 24

## **TABLE OF AUTHORITIES**

**Cases**

*Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694 (5th Cir. 1999)..................... 1, 4, 9

*Alpha Int'l, Inc. v. T-Reproductions, Inc.*, No. 02 Civ. 9586, 2003 U.S. Dist. LEXIS 11224 (S.D.N.Y. June 27, 2003).............................................................................................. 18

*Audiovox Corp. v. S. China Enter., Inc.*, No. 11-CV-5142, 2012 U.S. Dist. LEXIS 104656 (E.D.N.Y. July 26, 2012)............................................................................................... 18

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ...................................................... 19

*Black v. Acme Mkts., Inc.*, 564 F.2d 68 (5th Cir. 1977).......................................................... passim

*Bullion v. Gillespie*, 895 F.2d 213 (5th Cir. 1990) ........................................................................ 2

*Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994)............ 4, 9, 11

*Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351 (5th Cir. 2017) ...................................................... 7

*Campos v. Ticketmaster Corp.*, 140 F.3d 1166 (8th Cir. 1998)................................................... 15

*Crompton Corp. v. Clariant Corp.*, 221 F. Supp. 2d 683 (M.D. La. 2002)....................... 1, 4, 6, 9

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005).......................................... 10

*David B. Turner Builders LLC v. Weyerhaeser Co.*, No. 3:21-CV-309, 2021 U.S. Dist. LEXIS 236638 (S.D. Miss. Dec. 10, 2021) ......................................................................... 9, 22

*Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 848 (11th Cir. 1988) ....... 10

*Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284 (11th Cir. 2021). ................................. 2

*Donnelly v. Anand*, No. 21-cv-9562, 2022 U.S. Dist. LEXIS 171719 (S.D.N.Y. Sept. 22, 2022)19

*Double Eagle Energy Servs. v. Markwest Utica EMG*, 936 F.3d 260 (5th Cir. 2019)................ 22

*Entek Corp. v. Southwest Pipe & Supply Co.*, 683 F. Supp. 1092 (N.D. Tex. 1988) ................ 5, 8

*Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005) ......................................... 24

*Fintech Fund, F.L.P. v. Horne*, 836 Fed. Appx. 215 (5th Cir. 2020).............................................. 5

*Fontenot v. Mullins Mfg. Co.*, No. 95-31013, 1996 U.S. App. LEXIS 43933 (5th Cir. May 1, 1996) ................................................................................................................................. passim

*Go-Video Inc. v. Akai Elec. Co.*, 885 F.2d 1406 (9th Cir. 1989)............................................ passim

*Green v. U. S. Chewing Gum Mfg. Co.*, 224 F.2d 369 (5th Cir. 1955)........................................ 21

*GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) .................. 10

*Hernandez v. Wells Fargo & Co.*, No. C 18-07354, 2019 U.S. Dist. LEXIS 114817 (N.D. Cal. Jul 10, 2019) ........................................................................................................................ 13

*Hosp. Auth. of Metro. Gov't. v. Momenta Pharms., Inc.*, 244 F. Supp. 3d 705 (M.D. Tenn. 2017) ...................................................................................................................................... 10

*Icon Industrial Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375 (W.D. La. 1996)............ 7, 8, 9

*In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482 (E.D. Pa. 2005). ................. 4, 10, 24

*In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3rd Cir. 2004)........................... 4, 10

*In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269 (N.D. Ala. 2016)............ 5, 23

*In re Blue Cross Blue Shield Antitrust Litig.*, 26 F. Supp. 3d 1172 (N.D. Ala. 2014)................. 10

*In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).......................................................................... 5

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 307 F. Supp. 2d 145 (D. Me. 2004) . 11

*In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678 (E.D. Tex. 1999)................................................ 8

*In re Vitamin Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 11536 (D.D.C. Apr. 23, 2001) ................................................................................................................................... 24

ii

*Innovative Automation, LLC v. Audio Video & Video Labs, Inc.*, No. 6:11-CV-234, 2012 U.S. Dist. LEXIS 114501 (E.D. Tex. May 30, 2012)..............................................................................19
*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013)...............................10
*Levin v. Joint Committee on Accreditation of Hosps.*, 354 F.2d 515 (D.C. Cir. 1965) (per curiam) ........................................................................................................................................................14
*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429 (5th Cir. 2014) ................................................2
*Myers v. Am. Dental Ass'n*, 695 F.2d 716 (3rd Cir. 1982) ..........................................................14
*Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3rd Cir. 2002)....................................................23
*Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co.*, No. 08-487, 2008 U.S. Dist. LEXIS 99395 (S.D. Ohio Dec. 9, 2008) ..............................................................................................................11
*Pure Oil v. Suarez*, 384 U.S. 202 (1966) ......................................................................................8
*Red Hat v. Bedrock Computer*, No. 6:09-cv-549, 2011 U.S. Dist. LEXIS 171483 (E.D. Tex. Mar. 30, 2011) ...................................................................................................................................19
*Seville v. Maersk Line, Ltd.*, 53 F.4th 890 (5th Cir. 2022) .........................................................23
*Sherman College of Straight Chiropractic v. American Chiropractic Ass'n*, 534 F. Supp. 438 (N.D. Ga. 1982). ....................................................................................................................................14
*Skyline Corp. v. Nat'l Labor Relations Bd.*, 613 F.2d 1328 (5th Cir. 1980) ...............................18
*Steering Committee v. BP Exploration & Products (In re Deepwater Horizon)*, 785 F.3d 1003 (5th Cir. 2015) ...............................................................................................................................13, 14
*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002)....................19
*Tiger Trash v. Browning-Ferris Industries, Inc.*, 560 F.2d 818 (7th Cir. 1977) ...................15, 17
*Travelers Cas. & Sur. Co. of America v. Broussard*, No. 6:22-CV-00690, 2023 U.S. Dist. LEXIS 14577 (W.D. La. Jan. 27, 2023) (Summerhays, J.) ....................................................................14
*United States v. Olivares*, 833 F.3d 450 (5th Cir. 2016) (per curiam)..........................................7
*United States v. Scophony Corp.*, 333 U.S. 795 (1948)..........................................................12, 15
*Van Ornum v. Am. Med. Ass'n*, No. 2:14-cv-921, 2017 U.S. Dist. LEXIS 164269 (D. Utah Mar. 16, 2017) ...................................................................................................................................10
*Van Ornum v. AMA*, No. 2:14-cv-00921-RJS-EJF, 2017 U.S. Dist. LEXIS 161513 (D. Utah Sep. 29, 2017) ...................................................................................................................................10
*Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977)................................................................24
*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ..................................................21

## Statutes

15 U.S.C. § 22 ..................................................................................................................... passim
28 U.S.C. § 1391(b)....................................................................................................................5
28 U.S.C. § 1391(c)(3)................................................................................................................5
The Clayton Antitrust Act of 1914, Pub. L. No. 63-212, 38 Stat. 730. ...................................3, 9

## Other Authorities

BLACK'S LAW DICTIONARY 241 (10th ed. 2014) .........................................................................13

## Rules

5th Cir. Local R. 47.5.1................................................................................................................7
Fed. R. Civ. P. 12(b)(2)...........................................................................................................2, 5

iii

Fed. R. Civ. P. 12(b)(3)..................................................................................... 5
Fed. R. Civ. P. 12(b)(6)..................................................................................... 2
Fed. R. Civ. P. 12(h) ......................................................................................... 5
Fed. R. Civ. P. 4 ............................................................................................... 3

**Treatises**

8 J. VON KALINOWSKI, ANTITRUST LAWS & TRADE REG. § 163 (2d ed. 2023)................... 7, 11, 12

**Constitutional Provisions**

U. S. Const. amend. V.................................................................................... 22, 23
U. S. Const. amend. XIV ................................................................................ 22, 23

**PLAINTIFFS' BRIEF IN OPPOSITION TO
THE BBC'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

## INTRODUCTION

This is an antitrust case brought against members of the "Trusted News Initiative" (TNI), an online news censorship cartel founded by Defendant the British Broadcasting Corporation (BBC). This brief responds to the BBC's motion to dismiss for lack of personal jurisdiction.

The BBC devotes its entire brief to claiming that it lacks sufficient contacts with *Louisiana*. This is a fundamental misunderstanding of applicable law. In antitrust cases, *state* contacts do not determine personal jurisdiction; *national* contacts do. "When jurisdiction is invoked under the Clayton Act, the court examines the defendant's contacts *with the United States as a whole*." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 718 (5th Cir. 1999) (emphasis added); *Fontenot v. Mullins Mfg. Co.*, No. 95-31013, 1996 U.S. App. LEXIS 43933, at *2-3 (5th Cir. May 1, 1996) ("The relevant minimum contacts inquiry here, therefore, is whether [Defendant] had sufficient minimum contacts with the United States. . . . The district court erred in dismissing this case for lack of personal jurisdiction."); *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 684 (5th Cir. 1977) (stating that in antitrust cases, "the requirements of state long-arm statutes are simply irrelevant to the in personam jurisdiction of a federal court"); *Crompton Corp. v. Clariant Corp.*, 221 F. Supp. 2d 683, 688-89 (M.D. La. 2002) ("Based on decisions by the Fifth Circuit and many other circuits across the country, the Court finds that it *must determine personal jurisdiction based on the defendants' contacts with the United States as a whole rather than just with the state of Louisiana*.") (emphasis added). Because the BBC has undisputed, highly substantial contacts with "the United States as a whole," personal jurisdiction is not seriously in issue here.

The BBC also intimates that Plaintiffs have engaged in improper "forum shopping." (ECF

No. 39-1 at 1.) That claim is untrue,[1] but again, the BBC forgets that this is an antitrust case. In suits under the Clayton Act, the Fifth Circuit has expressly held "forum shopping" to be not only permissible, but statutorily contemplated. *See Black*, 564 F.2d at 687 ("Section 12 of the Clayton Act, thus, manifests a congressional belief that forum shopping plays a role along with product shopping in insuring the vitality of a competitive market.").

## STATEMENT OF FACTS

The facts of this case, detailed in the Complaint, are summarized in Plaintiffs' opposition to Defendants' Rule 12(b)(6) motion. Facts pertinent to this motion are discussed below.

## ARGUMENT

I. ***Plaintiffs' uncontroverted allegations must be accepted as true, factual disputes must be resolved in Plaintiffs' favor, and Plaintiffs need only make a prima facie showing.***

On a Rule 12(b)(2) personal-jurisdiction motion, "the court must accept as true all uncontroverted allegations in the complaint and must resolve any factual disputes in favor of the plaintiff." *Fintech Fund, F.L.P. v. Horne*, 836 Fed. Appx. 215, 220 (5th Cir. 2020) (internal quotation and citation omitted). To defeat the BBC's motion, Plaintiffs need make "only a *prima facie* case of personal jurisdiction." *Id.*; *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). Proof by a preponderance of the evidence is not required. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). A *prima facie* case means enough "to withstand a motion for a directed verdict." *Don't Look Media LLC v. Fly Victor Ltd*., 999 F.3d 1284, 1292 (11th Cir. 2021).

II. ***In antitrust cases against corporations, personal jurisdiction is based on a defendant's contacts with the United States as a whole, not with the state where suit is brought.***

The BBC seems to think—or wants this Court to think—that personal jurisdiction here

---

[1] *See* Plaintiffs' Brief in Opposition to Defendants' Venue Transfer Motion (filed simultaneously herewith) at 3-5.

depends on a showing that the BBC has Louisiana contacts sufficient under Louisiana's long-arm statute to confer general or specific jurisdiction on a Louisiana court. This is error. Under Fed. R. Civ. P. 4, service of process "establishes personal jurisdiction" *either* when state long-arm law is satisfied *or* when "authorized by a federal statute":

> Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>> (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located; . . . *or*
>> (C) *when authorized by a federal statute*.

Fed. R. Civ. P. 4(k)(1) (emphasis added). The Clayton Act is a federal statute authorizing service of process on a corporation "***wherever it may be found***." 15 U.S.C. § 22 (also referred to as Clayton Act Section 12) (emphasis added). Thus state contacts and long-arm law are "simply irrelevant":

> Section 12 of the Clayton Act, 15 U.S.C. § 22, permits service of process in anti-trust actions in any district of which the defendant corporation is an inhabitant, or wherever it may be found. In the typical case, the defendant might be served with process by . . . registered mail at its corporate headquarters . . . . *In such cases, the requirements of state long-arm statutes are simply irrelevant to the in personam jurisdiction of a federal court*.

*Black*, 564 F.2d at 684 (emphasis added).

Instead of *state* contacts, personal jurisdiction in antitrust cases is based on ***national*** contacts. The Fifth Circuit made this rule clear more than twenty-five years ago in a case directly analogous to this one. In *Fontenot*, 1996 U.S. App. LEXIS 43933—nowhere mentioned in the BBC's brief—suit was brought in Louisiana alleging antitrust violations by a Texas corporation. The District Court dismissed for want of personal jurisdiction, finding that the defendant lacked "minimum contacts with Louisiana,"[2] but the Fifth Circuit reversed. In language fully applicable to this case, the Fifth Circuit stated:

---

[2] *Fontenot v. Mullins Mfg. Co., Inc*., No. 6:94-CV-01676, Dkt. Entry No. 13 (W.D. La. Aug. 30, 1995) (docket attached as Exh. A).

3

This court has recognized that the Clayton Act provides for nationwide service of process. *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683-84 (5th Cir. 1977). "[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, ***the relevant inquiry is whether the defendant has had minimum contacts with the United States***." *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1257 (5th Cir. 1994) . . . . ***The relevant minimum contacts inquiry here, therefore, is whether [Defendant] had sufficient minimum contacts with the United States.*** . . . The district court erred in dismissing this case for lack of personal jurisdiction.

*Id.* at *2-3 (emphasis added); *see also, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 298 (3rd Cir. 2004) ("a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process") (citation omitted); *Access Telecom, Inc.*, 197 F.3d at 718 ("When jurisdiction is invoked under the Clayton Act, the court examines the defendant's contacts with the United States as a whole."); *Go-Video Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1414-15 (9th Cir. 1989) (holding that under "the worldwide service provision" of the Clayton Act, "personal jurisdiction may be established in any district, given the existence of sufficient national contacts"); *Crompton Corp.*, 221 F. Supp. 2d at 688-89 ("Based on decisions by the Fifth Circuit and many other circuits across the country, the Court finds that it must determine personal jurisdiction based on the defendants' contacts with the United States as a whole rather than just with the state of Louisiana.").

III. ***The BBC unquestionably has minimum contacts with the U.S. as a whole, so personal jurisdiction is proper here***.

While the BBC disputes its Louisiana contacts, it does not and cannot dispute its more-than-minimum contacts with the U.S. as a whole. In addition to the delivery of its news and media content to millions of consumers all over America,[3] the BBC—according to its own declaration in

---

[3] *See* Complaint, ECF No. 1 ("Compl.") at ¶ 117.

this case—maintains a bureau in Washington, DC, has 150 employees residing in the U.S., and although a foreign corporation, has even incorporated in Washington, DC. (ECF No. 39-2 at ¶ 10.) Accordingly, at the very least a *prima facie* case of minimum contacts with the United States exists here. *See Entek Corp. v. Southwest Pipe & Supply Co.*, 683 F. Supp. 1092, 1102-06 (N.D. Tex. 1988) (finding personal jurisdiction under the Clayton Act over a British corporation) ("PDPLC's evidence of its lack of contact with Texas does not address the question of whether it has minimum contacts with the United States. Therefore, the Court takes Plaintiffs' uncontroverted allegation that PDPLC has minimum contracts with the United States as true."); *see also, e.g.*, *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1299 (N.D. Ala. 2016) (minimum national contracts established where "defendant has . . . incorporat[ed] in one of the states").

IV. ***The BBC asks this Court to accept an interpretation of the Clayton Act rejected by the Fifth Circuit.***

Attempting to avoid this conclusion, the BBC asks this Court to accept an interpretation of the Clayton Act that the Fifth Circuit has repeatedly rejected. The BBC argues that personal jurisdiction under the Clayton Act is ***not*** determined, as the Fifth Circuit holds, "based on the defendants' contacts with the United States as a whole," but rather according to whether a defendant "transacts business" in the district where suit is brought. (ECF No. 39-1 at 12-16.) That, however, is a test set forth in a Clayton Act ***venue*** provision—which is not a personal jurisdiction provision, and which Plaintiffs do not even rely on for venue in this case.[4] As shown below, the

---

[4] Plaintiffs need not rely on the Clayton Act's venue provision because the BBC is, as it acknowledges, a "foreign" (i.e., non-U.S.) defendant (e.g, ECF No. 39-1 at 17), and hence venue lies under 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1359-60 (Fed. Cir. 2018) (alien corporation may be sued in any district). Venue lies here under 28 U.S.C. § 1391(b) as well. Because the BBC has not claimed that venue is improper under § 1391, it has waived that issue. *See* Fed. R. Civ. P. 12(h) (party that makes a Rule 12(b)(2) personal-jurisdiction motion omitting a Rule 12(b)(3) improper-venue defense waives that defense).

BBC's theory not only directly conflicts with Fifth Circuit case law; it has also been rejected by this Court as well as by a majority of the circuits with cases on point.

      A.   _The BBC's interpretation of the Clayton Act contradicts Fifth Circuit case law._

      The BBC's position is that if a corporation does not "transact business" in Louisiana, personal jurisdiction does not lie in a Louisiana federal court under the Clayton Act. (ECF No. 39-1 at 12.) This position, which rests on a contested reading of the word "such" in Clayton Act section 12,[5] directly conflicts with all the Fifth Circuit cases quoted above upholding a **_national-contacts_** test for personal jurisdiction under the Clayton Act, based on the defendant's contacts "with the United States as a whole." _See, e.g._, _Access Telecom, Inc._, 197 F.3d at 718; _Fontenot_, 1996 U.S. App. LEXIS 43933, at *2-3; _Crompton Corp._, 221 F. Supp. 2d at 688-89.

      Indeed, in _Fontenot_, the Fifth Circuit reversed the Western District of Louisiana on exactly this ground, finding personal jurisdiction under the Clayton Act where the defendant lacked even "minimum contacts with Louisiana." _See_ 1996 U.S. App. LEXIS 43933, at *2; Exh. A. The Court did not remotely suggest that the defendant was "transacting business" in Louisiana. Rather, the Court found personal jurisdiction due to the defendant's contacts "with the United States," without reference to the defendant's having done any in-state business at all. _Id._ at *2-3. Thus, _Fontenot_ squarely rejects any notion that transacting business in-district is a "prerequisite" (as the BBC puts it (ECF No. 39-1 at 13)) of Clayton Act personal jurisdiction.[6]

---

   [5] Section 12 of the Clayton Act deals with antitrust suits against corporate defendants and states: "all process in such cases may be served in the district of which [the corporation] is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. The statute also has a preceding venue clause, permitting suit to be brought in any district where the corporation "transacts business." _Id_. The BBC's theory reads the word "such" in the service-of-process provision as limited to cases where the venue provision is satisfied. As shown below, numerous courts, including this Court, have expressly rejected that argument. _See infra_ Points IV(B), (C).

   [6] _Fontenot_ is unpublished, but Fifth Circuit rules indicate that non-publication occurs where opinions "merely decide particular cases on the basis of well-settled principles of law." 5th Cir.

Thus the BBC's position directly conflicts with the Fifth Circuit's national-contacts test for Clayton Act personal jurisdiction. As one of the leading antitrust treatises puts it:

> The courts of appeals that have adopted the national contacts test have relied on the nationwide (indeed worldwide) service provision of Section 12 of the Clayton Act. . . . These courts have found that the service provision of Section 12 applies in all antitrust cases against corporate defendants, including suits where venue is proper under Section 12 and suits where venue is proper, not under Section 12, but under another venue provision of federal law. . . . ***The national contacts test has been adopted by the Court[] of Appeals for the . . . Fifth . . . Circuit***[].

8 J. von Kalinowski, Antitrust Laws & Trade Reg. § 163.02 (2d ed. 2023) (emphasis added).

### B. *The BBC's position has also been rejected by this Court itself.*

Incredibly, the BBC asserts that its interpretation of the Clayton Act has been "uniformly" applied by "[c]ourts in the Fifth Circuit." (ECF No. 39-1 at 13.) Not only does the BBC ignore the Fifth Circuit's own contrary case law; the BBC also fails to mention the many in-circuit district court cases squarely rejecting its theory, including the Western District of Louisiana's pre-*Fontenot* decision in *Icon Industrial Controls Corp. v. Cimetrix, Inc*., 921 F. Supp. 375 (W.D. La. 1996). The *Icon* opinion carefully considered the language and meaning of Section 12 of the Clayton Act, arriving at the same conclusion as the Fifth Circuit would in *Fontenot*:

> The defendants . . . contend that the worldwide service of process provision in Section 12 does not apply to all antitrust cases, but only to those antitrust cases where the special venue provisions set forth in the first clause of Section 12 are met. Thus, they argue . . . they should prevail on the jurisdictional issue given the absence of any significant contacts between any of the named defendants and the State of Louisiana.
>
> A virtually identical debate over the proper interpretation of Section 12 was presented to the Ninth Circuit in *Go-Video, Inc. v. Akai Elec. Co., Ltd*., 885 F.2d 1406 (9th Cir. 1989). In a thorough and well reasoned opinion, the Ninth Circuit concluded that the statute's worldwide service provision applies in all antitrust cases (the interpretation urged by the plaintiff in this case). . . .

---

Local R. 47.5.1. Thus unpublished appellate opinions in this Circuit are "persuasive," *United States v. Olivares*, 833 F.3d 450, 453 n.1 (5th Cir. 2016) (per curiam), and the Fifth Circuit itself frequently cites to and is guided by them. *See, e.g.*, *id.* at 453; *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 357 n.3 (5th Cir. 2017).

The Ninth Circuit first considered whether the venue provisions contained in Section 12 were intended to provide exclusive venue in antitrust actions, or whether those rules are supplemented by federal venue laws of general application. The import of this issue is that if section 12 provides exclusive rules of venue, then the worldwide service provision necessarily applies only when those rules are met, and the defendants carry the issue without need for further analysis. On the other hand, if Section 12's venue rules are non-exclusive, it is then necessary to consider whether its service provision applies when other venue rules are applicable.

Relying on the well established rule that special venue statutes ordinarily do not preempt general venue rules in the absence of some indication that Congress intended the special rules to be exclusive, *see Pure Oil v. Suarez*, 384 U.S. 202 (1966), the court . . . concluded that the venue provisions in section 12 are supplemented by the general venue statutes.

Having reached that conclusion, the court next considered whether there was any basis for holding that the worldwide service provision applies only to the special rules of venue set forth in Section 12, and does not apply when venue in an antitrust case is based on the general venue rules. The court found no support for that proposition in the legislative history. . . .

The court then considered the meaning of the terminology "process in such cases" in the final clause of Section 12. Does "such cases" modify only the clause "any suit, action or proceeding under the antitrust laws against a corporation" (the first twelve words of section 12), or does it also encompass the special venue provisions that follow that clause? The Ninth Circuit concluded that: "Under the canon *reddendo singula singulis*, we interpret a passage in which antecedents and consequents are unclear by reference to the context and purpose of the statute as a whole. Looking to the text of Section 12, the construction . . . urged by [plaintiff] Go-Video here, is clearly the one more consonant with the purpose of the Clayton Act and better comports with a section designed to expand the reach of the antitrust laws and make it easier for plaintiffs to sue for antitrust violations." 885 F.2d at 1412-13.

This court agrees with the Ninth Circuit's conclusion in *Go-Video* . . . .

921 F. Supp. at 378-80; *see In re Triton Ltd. Sec. Litig*., 70 F. Supp. 2d 678, 684-85 (E.D. Tex. 1999) (quoting *Icon* at length approvingly).

Another in-circuit pre-*Fontenot* decision directly on point is *Entek Corp.*, 683 F. Supp. 1092, which, like this case, involved a British corporation headquartered in London. The defendant moved to dismiss for lack of personal jurisdiction, claiming no minimum contacts with Texas. *See id*. at 1102. The court rejected that claim, holding that "minimum contacts with the United States is the correct standard to determine whether this Court may exercise personal jurisdiction over a corporate defendant in an antitrust case." *Id*. at 1101.

8

The most recent in-circuit case arrives at the same conclusion. *See David B. Turner Builders LLC v. Weyerhaeser Co.*, No. 3:21-CV-309, 2021 U.S. Dist. LEXIS 236638 (S.D. Miss. Dec. 10, 2021). In *Turner Builders*, the defendant, a Washington corporation, argued that personal jurisdiction was lacking because it had insufficient business contacts with Mississippi. Citing *Fontenot*, the Court rejected this contention:

> [T]he exercise of personal jurisdiction over a non-resident defendant is [ordinarily] determined by referring to the law of the state in which the court sits . . . . ***When, however, a federal statute provides for nationwide service of process, "the relevant inquiry is whether the defendant has had minimum contacts with the United States." Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1257 (5th Cir. 1994); *see also Fontenot v. Mullins Manu. Co.*, No. 95-31013, 1996 U.S. App. LEXIS 43933, 1996 WL 255289, at \*1 (5th Cir. May 1, 1996). . . . The Clayton Act provides for nationwide service of process. *See Black v. Acme Markets, Inc.*, 564 F.2d 681, 683-84 (5th Cir. 1977). ***[Defendant] therefore needs only to have sufficient minimum contacts with the United States*** . . . . *Black*, 564 F.2d at 683-84.

*Id*. at \*5 (emphasis added); *accord Crompton*, 221 F. Supp. at 688-89 (expressly rejecting argument that Clayton Act's transacting-business venue test must be satisfied and stating, "Based on decisions by the Fifth Circuit and many other circuits across the country, the Court finds that it must determine personal jurisdiction based on the defendants' contacts with the United States as a whole rather than just with the state of Louisiana.").[7]

---

[7] The BBC cites four in-circuit district court cases as supporting its position (ECF No. 39-1 at 13), but none of them mentions this Court's thorough analysis of the issue in *Icon*, and even more important, three of them do not mention *Fontenot*. The BBC also quotes *Access Telecom*, 197 F.3d at 718, for the proposition that the Clayton Act "allows for jurisdiction over any federal antitrust suit in any district in which a defendant transacts business." (ECF No. 39-1 at 13.) This selective quotation is misleading. First, the quoted sentence does not say that the Clayton Act confers jurisdiction *only* when a defendant transacts business in the forum district. As this Court put it in *Icon*, rejecting a similar argument, "the referenced passage . . . merely states that when venue is premised" on Clayton Act § 12, "the vehicle of worldwide service is available"; it "does not state, or even imply, that worldwide service would be unavailable if venue were premised on [another] basis." 921 F. Supp. at 381. Moreover, the *Access Telecom* Court had already found, in the immediately preceding paragraphs, that the defendant ***did no business at all in the state where suit had been brought***, 197 F.3d at 717-18, and yet went on to apply the ***national contacts*** test to determine Clayton Act personal jurisdiction. *See id*. ("[w]hen jurisdiction is invoked under the

C.  *The BBC's position is not the "majority" rule.*

Instead of confronting any of this contrary Fifth Circuit case law, the BBC cites decisions from three ***other*** circuits and asserts that its venue-based "transacting-business" interpretation of Clayton Act personal jurisdiction is the "majority" circuit court rule.[8] It would make no difference if the BBC's position were the majority rule, given that the Fifth Circuit rejects it, but the BBC's interpretation is ***not*** the majority rule.

In addition to the Fifth Circuit, the Third, Ninth, and Eleventh Circuits have all held that the Clayton Act's nationwide service of process provision confers personal jurisdiction over a corporate defendant even when venue is not based on the Clayton Act's transacting-business venue provision. *See, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d at 296-97 (holding that "the [Clayton Act's] service of process provision on foreign corporations," establishing personal jurisdiction, "is independent of, and does not require satisfaction of, the specific venue provision under Section 12 of the Clayton Act"); *Go-Video,* 885 F.2d at 1413 (same); *Delong Equip. Co. v. Washington Mills Abrasive Co*., 840 F.2d 843, 848, 855 n.16 (11th Cir. 1988).[9] Thus, out of seven circuits with cases on point, four do not support the BBC's theory.[10] The Ninth Circuit's *Go-Video*

---

Clayton Act, the court examines the defendant's contacts with the United State as a whole"). Thus, far from supporting the BBC, *Access Telecom* reaffirms that Clayton Act personal jurisdiction can be asserted based on national contacts even when the defendant does ***not*** transact business in the district where suit has been brought.

[8] *See* ECF No. 39-1 at 13 & n.1 (citing *KM Enters., Inc. v. Glob. Traffic Techs., Inc*., 725 F.3d 718 (7th Cir. 2013); *Daniel v. Am. Bd. of Emergency Med*., 428 F.3d 408 (2d Cir. 2005); *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000)).

[9] There is some disagreement about whether the Eleventh Circuit has definitively rejected the theory the BBC argues for here. *Compare Hosp. Auth. of Metro. Gov't. v. Momenta Pharms., Inc.*, 244 F. Supp. 3d 705, 711 (M.D. Tenn. 2017) (finding it has), *with In re Blue Cross Blue Shield Antitrust Litig.*, 26 F. Supp. 3d 1172, 1196 (N.D. Ala. 2014) (finding it has not).

[10] Numerous out-of-circuit district courts have rejected this theory as well. *See, e.g*., *Hosp. Auth. of Metro. Gov't.*, 244 F. Supp. 3d at 710-11; *Van Ornum v. Am. Med. Ass'n*, No. 2:14-cv-921, 2017 U.S. Dist. LEXIS 164269, at *17 (D. Utah Mar. 16, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 161513 (D. Utah Sept. 29, 2017); *Plaskolite, Inc. v. Zhejiang Taizhou*

decision (the leading case) is especially important because it has been repeatedly cited approvingly by the Fifth Circuit. *See, e.g.*, *Access Telecom*, *Inc.*, 197 F.3d at 718; *Busch*, 11 F.3d at 1257-58; *Fontenot*, 1996 U.S. App. LEXIS 43933, at *2.

       D.  *This case involves a foreign corporation.*

Under the Fifth Circuit's *Fontenot* decision, the national-contacts test applies to **all** antitrust corporate defendants, including domestic corporations (the defendant in *Fontenot* was a Texas corporation). Therefore the BBC's motion can and should be rejected in accordance with that simple rule. But if this Court wished to decide this case on narrower grounds, it could follow the rule announced in *Plaskolite*, 2008 U.S. Dist. LEXIS 99395, at *18 (emphasis added): "In an antitrust suit against an **alien** corporation . . . , personal jurisdiction can be obtained in any district . . . provided the corporation has adequate national contacts." *See also* 8 ANTITRUST LAWS & TRADE REG. § 163.02 ("A number of courts have held that in deciding whether an **alien** corporate defendant has sufficient minimum contacts to justify the exercise of personal jurisdiction over the defendant, a court should consider the defendant's contacts with the United States as a whole (the 'national contacts' test).") (emphasis added).

     VI. ***In any event, the BBC does transact business in this District.***

In any event, the BBC ***does*** "transact business" in this District and hence would satisfy the Clayton Act's venue provision if that provision were applicable to this case (which it is not).

       A. *The term "transacting business" under the Clayton Act is construed broadly and can be satisfied by business activity unconnected to the subject matter of the suit.*

As the Supreme Court explained three-quarters of a century ago, "the words 'transacting business'" in the Clayton Act have "a much broader meaning for establishing venue than the

---

*Eagle Mach. Co.*, No. 08-487, 2008 U.S. Dist. LEXIS 99395, at *18 (S.D. Ohio Dec. 9, 2008); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 307 F. Supp. 2d 145, 149 (D. Me. 2004).

concept of 'carrying on business.'" *United States v. Scophony Corp.*, 333 U.S. 795, 807 (1948). Under the Clayton Act, "business '*of any substantial character*'" is enough for venue. *Black*, 564 F.2d at 687-88 (quoting *Scophony*, 333 U.S. at 807). Typically, a corporation transacts business any place where customers are located. 8 ANTITRUST LAWS & TRADE REG., *supra*, at § 163.03(e)(i) ("The Supreme Court has found that Congress intended Section 12 to expand the forums available to antitrust plaintiffs and to afford victims of illegal antitrust activity a convenient forum, which 'it envisioned would often be where the customer . . . was located.'") (citation omitted)).

"Furthermore, the substantiality of the business transacted is to be judged from the point of view of the average businessman and not in proportion to the sales or revenues of the defendant." *Black*, 564 F.2d at 687. For example, the Fifth Circuit has found that a company transacted business in Texas under the Clayton Act where, out of $750 million in annual purchases, the company made just 0.05% ($375,000) of those purchases from a Texas manufacturer. *See id.* ("While this might be a small amount for a corporation with yearly purchases of $750,000,000, it certainly represents purchases significant to the ordinary businessman today."). Finally, and significantly for this case, the activities "which constitute the transaction of business ***need not be connected to the subject matter of this suit***." *Id*. (emphasis added). Thus, any substantial BBC business conducted in the Western District of Louisiana, measured by a "practical, nontechnical" standard, *Scophony*, 333 U.S. at 810, satisfies the Clayton Act's venue provision, even if the activities in question have nothing to do with the TNI.

    B.   *The BBC is a global broadcasting giant, with a vast audience in the U.S., and both its nonprofit and for-profit activities qualify as "business" for Clayton Act purposes.*

The BBC is an international broadcasting giant, with $6 billion in annual income and a total worldwide audience of 492 million people a week—"more," as the company says, "than both

Netflix and Disney's global subscribers combined."[11] Reaching audiences outside the United Kingdom is a core BBC objective, both as part of the BBC's mission to "champion British culture . . . all over the world" and to increase revenue. (*See* Creter Dec. ¶ 6.) Under British law, the BBC cannot engage in for-profit activity inside the United Kingdom, but elsewhere it can and does, recording annual sales of approximately $2.0 billion worldwide. (*See id*. ¶ 7.) In the U.S., the BBC conducts both not-for-profit and for-profit business, disseminating its news and entertainment products to millions of customers. (*See id.* ¶ 8.)

The BBC argues that its billion-dollar non-profit operations don't count as "business" because "business" includes only "commercial," "for profit" activity. (ECF No. 39-1 at 15.) As support for this argument, the BBC cites a single case commenting on Texas long-arm law. (*Id*.) Whatever may be true of Texas's long-arm law (which has nothing to do with this case), the notion that nonprofits are not engaged in "business" as the law defines that term, or do not "transact business," conflicts with Fifth Circuit precedent and is plainly mistaken under the Clayton Act.

In *Steering Committee v. BP Exploration & Products (In re Deepwater Horizon)*, 785 F.3d 1003, 1013 (5th Cir. 2015), the defendant similarly argued that "nonprofits are not 'businesses' in the 'commercial, for-profit' sense." The Fifth Circuit rejected this argument and instead approved a definition of "'business transaction' as '[a]n action that affects the actor's financial or economic interests.'" *Id*. (quoting BLACK'S LAW DICTIONARY 241 (10th ed. 2014)). As the Court observed, "modern nonprofits are commercial entities that seek to generate cash surpluses. . . . 'The principal

---

[11] *See* Declaration of Brian Creter ¶ 5 (submitted herewith) (hereafter "Creter Dec."). The sources on which the Creter Dec. relies are almost all BBC public documents, of which this Court could take judicial notice as party admissions even absent the Creter Dec. *See Hernandez v. Wells Fargo & Co.*, No. C 18-07354, 2019 U.S. Dist. LEXIS 114817, at *14-15 (N.D. Cal. Jul 10, 2019) ("party admissions may be judicially noticed for the truth of the matter if requested by the opposing party"). All such documents cited as sources in the Creter Dec. are incorporated herein by reference.

difference between [for-profit and nonprofit] firm[s] is . . . that a nonprofit enterprise is forbidden to distribute any surplus of revenues over expenses as dividends.'" *Id*. at 1012 (citation omitted). While a nonprofit's income might take the form of "gratuitous contributions and grants," such grants and contributions are the "result of business transactions." *Id.* at 1013; *cf. Travelers Cas. & Sur. Co. of America v. Broussard*, No. 6:22-CV-00690, 2023 U.S. Dist. LEXIS 14577, at *13-14 (W.D. La. Jan. 27, 2023) (Summerhays, J.) (term "business organization" in Louisiana statute did not "exclude an entity merely because it is organized as a nonprofit entity").

Because many nonprofits, like the BBC, engage in activities comparable to and in direct competition with for-profit firms, it is well established that nonprofit activity carried on by nonprofit organizations can constitute the transaction of business for Clayton Act purposes. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 730-31 (3rd Cir. 1982) (finding that American Dental Association "transacts business" in Virgin Islands for Clayton Act purposes after lengthy review of similar decisions); *see also, e.g.*, *Levin v. Joint Committee on Accreditation of Hosps.*, 354 F.2d 515, 517-18 (D.C. Cir. 1965) (per curiam); *Sherman College of Straight Chiropractic v. American Chiropractic Ass'n*, 534 F. Supp. 438, 443-45 (N.D. Ga. 1982). Thus, the BBC's vast nonprofit operations in the United States qualify as business activities under the Clayton Act.

C. *The BBC transacts substantial business in this District.*

In and through at least four different major business operations, the BBC transacts substantial business in this District. These include commercial operations conducted by its subsidiary BBC Studios, alongside nonprofit web-based, radio, and other news operations owned and operated by the BBC directly.

i. *The BBC transacts business in this District through BBC Studios.*

First, the BBC transacts business in this District through the operations of its wholly-owned for-profit subsidiary, BBC Studios, which among other activities owns (in partnership with AMC

14

Networks) the BBC's entertainment cable television channel, BBC America. (*See* Creter Dec. ¶ 37.) As a basic cable channel, BBC America is available to over 80 million television households in the United States. (*See id*. ¶ 38.) In the time period at issue here, BBC America has aired extremely popular shows, such as "Killing Eve," which has been watched millions of times. (*See id*. ¶ 39.) It is a reasonable inference that BBC America programming is watched by at least tens of thousands of people in the Western District of Louisiana. (*See id*. ¶ 40.)

Under the Clayton Act, the business activities of subsidiaries can be and frequently are imputed to the parent corporation. *See, e.g.*, *Scophony*, 333 U.S. at 815-17 (British corporation "transacted business" in America through its U.S. subsidiary); *Tiger Trash v. Browning-Ferris Industries, Inc*., 560 F.2d 818, 824 (7th Cir. 1977) ("large corporations" would be able to circumvent broadened venue provisions of Clayton Act if permitted "to incorporate[e] the many functional subparts of the parent into local operations"). In general, a subsidiary's activities are attributable to the parent when the subsidiary is the parent's "instrument," and not merely a "passive investment":

> When venue is asserted over a parent corporation on the basis of a subsidiary's business activities [under the Clayton Act], the question is whether the parent "exercises sufficient control over its [] subsidiary" . . . to render[] the subsidiary the ***instrument***, rather than merely the ***investment***, of the parent . . . despite the formal separation of corporate entities. Sufficient control ***does not require that the subsidiary be controlled to an ultimate degree by its parent, although something more than mere passive investment by the parent is required***. . . . Day-to-day control of the activities of the subsidiary is not required . . . .

*Campos v. Ticketmaster Corp*., 140 F.3d 1166, 1173 (8th Cir. 1998) (emphasis added).

Here, the allegations before the Court establish at a minimum a *prima facie* case that BBC Studios serves as a BBC "instrument," not a "mere passive investment." To begin with, BBC Studios is a BBC instrument because the BBC uses BBC Studios to achieve one of its core missions—i.e., "champion[ing] British culture . . . all over the world." (*See* Creter Dec. ¶ 40.)

Second, more practically, the BBC uses BBC Studios to do, and reap the benefits of doing, what the BBC cannot do directly—i.e., engage in for-profit activities in international markets like the United States. Profits made by the BBC Studios are recorded as "returns to the BBC" in the latter's financial statements, with BBC Studios delivering "cash" revenue to the BBC of £353 million in 2022, £135 million in 2021, and more than £1.2 billion over the last five years. (*See id*. ¶ 42.)

Moreover, the BBC's own constitutive documents acknowledge that BBC Studios activities are BBC activities. For example, the BBC Charter states that the activities of the BBC's commercial subsidiaries (like BBC Studios) are "activities of the BBC" "carried out by the BBC." (*See id*. ¶ 44.) Similarly, the BBC's agreement with the British government refers to the "commercial activities carried out by the BBC through commercial subsidiaries." (*See id*. ¶ 45.)

By charter and agreement, the BBC is required to monitor and supervise the activities of BBC Studios (and its other commercial subsidiaries) in numerous important respects:

> (5) In carrying out the commercial activities**,** the BBC must be satisfied that all of the following criteria are met—
> (a) the activities must fit with the Mission and the Public Purposes;
> (b) the activities must exhibit commercial efficiency;
> (c) the activities must not jeopardise [*sic*] the good reputation of the BBC or the value of the BBC brand; and
> (d) the activities must not, as a result of the relationship of the activity with the UK Public Services, trading activities or non-service activities, distort the market or create an unfair competitive advantage.

(*See id*. ¶ 46.) To ensure that "the commercial activities carried out by the BBC through commercial subsidiaries" meet the above criteria, "[t]he BBC must carry out and publish . . . detailed periodic reviews," and in "must set and publish measures and targets for those measures for each subsidiary." (*See id*. ¶ 47.) Finally, and critically, BBC Studios is—according to the BBC itself—controlled and governed by the BBC Board, which is "***the main decision making body for all of the BBC, including the BBC's commercial activities.***" (*See id*. ¶ 48 (emphasis added).)

All this establishes at the very least a *prima facie* case that BBC Studios is far more than a BBC "passive investment." It is integral to the BBC's core mission, its activities are recognized by the BBC's own Charter as "activities of the BBC," its profits are returned to the BBC, its businesses are supervised and restricted by the BBC, and its "main decision making body" is the BBC Board. Accordingly, even if Plaintiffs were required to satisfy the Clayton Act's venue provision (which they are not), and even if the BBC transacted business in this District solely through BBC Studios (which is not remotely the case), the BBC's motion would still fail because of its control over BBC Studios and its use of BBC Studios to achieve core BBC objectives. *See Tiger Trash*, 560 F.2d at 823 (finding that parent transacted business through subsidiary under Clayton Act where subsidiary's activities were an "integral part of [parent's] corporate policy" and parent engaged in "management supervision" over, and "setting standards" for, subsidiary).

ii. *The BBC transacts business in this District through its website, bbc.com.*

The BBC also transacts substantial business in this District through its news website, bbc.com. That website attracts vast U.S. viewership, with some 140 million visits from United States viewers every month. (*See* Creter Dec. ¶ 12.) It is a reasonable inference that bbc.com receives at least tens of thousands of visits from this District annually. (*Id*.)

In its brief, the BBC argues that bbc.com is not a BBC activity because the website is "operated and commercialized in the United States by BBC Studios." (ECF No. 39-1 at 15.) That argument fails, first, for the reasons just set forth—i.e., that BBC Studio activities ***are*** BBC activities for Clayton Act purposes. But in any event, the actual evidence before the Court—the "Munro Declaration," on which the BBC relies—states only that the "website is ***commercialized*** in the United States by BBC Studios" (ECF 39-2 ¶ 9 (emphasis added)), ***not*** that the website is

*operated* by BBC Studios. Because a brief is "not evidence,"[12] the BBC's unsupported statement that bbc.com is "operated" by BBC Studios must be ignored.

Instead, publicly available facts indicate that the BBC itself owns and operates bbc.com. When it says that BBC Studios "commercializes" bbb.com, the BBC appears to mean simply that BBC Studios sells advertising space on that website. (*See* Creter ¶ 15.) But the BBC itself ***owns*** bbc.com, ***holds the copyright*** on bbc.com, and ***produces and publishes the content*** of bbc.com, thereby giving the BBC operational control over what bbc.com says and does. (*See id*. ¶¶ 17-19.) The website is, therefore, plainly a BBC business activity from a practical, non-technical point of view. (*See id*. ¶ 20.)

Moreover, bbc.com is an ***interactive*** website, enabling users to communicate directly with the BBC, inviting them to input their names, addresses, and credit card information for a variety of transactions with the BBC itself—for example, applying for tickets to BBC radio/television shows, donating money to BBC causes, applying for BBC grants, and registering for a BBC account, which allows users to comment on BBC news stories. (*See id*. ¶¶ 21-23.) This interactivity by itself satisfies the "transacts business" requirement. "Websites that permit information exchange between the defendant and viewers are deemed 'interactive,'" *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, No. 02 Civ. 9586, 2003 U.S. Dist. LEXIS 11224, at *7 (S.D.N.Y. June 27, 2003), and interactive websites "transact business" wherever they operate. *See Audiovox Corp. v. S. China Enter., Inc.*, No. 11-CV-5142, 2012 U.S. Dist. LEXIS 104656, at *3 (E.D.N.Y. July 26, 2012) ("[I]f a website is interactive and allows a buyer in [a state] to submit an order online, courts typically find that the website operator is 'transacting business' in [that state] and is therefore

---

[12] *See Skyline Corp. v. Nat'l Labor Relations Bd.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.").

subject to the court's jurisdiction."); *see also, e.g.*, *Innovative Automation, LLC v. Audio Video & Video Labs, Inc.*, No. 6:11-CV-234, 2012 U.S. Dist. LEXIS 114501, at *17 (E.D. Tex. May 30, 2012) ("the Court finds that *cdrom2go.com* is a highly interactive website and supports a finding that U.S. Digital purposefully directs its activities at residents of Texas"); *Red Hat v. Bedrock Computer*, No. 6:09-cv-549, 2011 U.S. Dist. LEXIS 171483, at *12 (E.D. Tex. Mar. 30, 2011) ("Go Daddy transacts business [in Texas] via its highly-interactive website"); *Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002) ("If [defendant] wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [defendant] to personal jurisdiction here."); *cf. Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 254 (2d Cir. 2007) (suggesting that same rule applies to interactive website that "accepts donations").

The BBC's contrary argument—citing cases to show that "operating a website that is accessible in the forum does not give rise to ***general jurisdiction***" (ECF 39-1 at 9)—is misleading and inapposite. "General jurisdiction" has nothing to do with the Clayton Act's transacting-business requirement. General jurisdiction is all-purpose jurisdiction, permitting suit on any cause of action. At issue here, rather, is a specific Clayton Act venue provision based on "transacting business" in the forum, and courts have expressly held that a corporate defendant "transacts business . . . via its highly-interactive website." *Red Hat*, 2011 U.S. Dist. LEXIS 171483, at *12; *see also, e.g.*, *Donnelly v. Anand*, No. 21-cv-9562, 2022 U.S. Dist. LEXIS 171719, at *15 (S.D.N.Y. Sept. 22, 2022) ("A defendant's use and control of an interactive commercial website that facilitates transactions with New York customers further supports a showing that [defendant] transacted business in New York").

iii. *The BBC transacts business here through the BBC World Service*.

The BBC also transacts substantial business in this District through the BBC World Service, a primarily-radio broadcast operation headquartered in London through which the BBC

19

"broadcasts and distributes news and other content in a range of genres aimed primarily at users outside the UK," reaching a weekly audience of 365 million people worldwide. (*See* Creter Dec. ¶ 25.) Pursuant to the BBC's agreement with the British government, the BBC itself (not its subsidiaries) owns and operates the World Service (*see id*. ¶ 26), and the World Service is viewed as essential to the BBC's global mission: "The World Service supports a range of BBC activity but contributes primarily to the BBC's fifth Public Purpose to reflect the United Kingdom, its culture and values to the world" (*see id*. ¶ 27). In this District, the BBC World Service is broadcast every day—three hours a day on weekdays, and nine on weekends—on the Red River Radio Network, with 150,000 regular listeners, broadcasting out of Shreveport, Alexandria, and elsewhere. (*See id*. ¶ 28.)

iv. *The BBC transacts business in this District through BBC News.*

Finally, the BBC also transacts substantial business in this District through its celebrated news operation, BBC News, described by the BBC as "the largest news operation in the world," with more than 2,000 journalists and fifty news bureaus worldwide. (*See id*. ¶ 30.) This news operation is owned and controlled by the BBC itself (not by a subsidiary), and the news programming it produces is disseminated across numerous platforms—online, on television and on radio—reaching an American audience of at least "50 million consumers weekly." (*See id*. ¶¶ 31-32.) In the Western District of Louisiana, BBC news programming can be seen on Comcast Xfinity (channel 99), Direct TV (channel 346), AT&T (channels 207 and 1207), and a BBC YouTube Channel. (*See id*. ¶ 33.) It is a reasonable inference that BBC News[13] has a Western District of Louisiana audience at least in the tens of thousands. (*See id*. ¶ 34.)

---

[13] The BBC's usage of the term "BBC News" can be confusing precisely because it runs together the BBC and its subsidiary BBC Studios. "BBC News" frequently refers to the BBC's vast and celebrated news division, owned and run by the BBC itself. But the output of the BBC's news

Not only is BBC News disseminated in this District; it is ***made*** here. The BBC (not its subsidiaries, but the BBC itself) regularly sends cameramen, interviewers, producers and/or reporters to Louisiana to cover important state events. (*See id*. ¶ 35.)  In the Fall of 2022, the BBC sent a team to Shreveport to produce a story about Southwood High School. (*See id*. ¶ 35.)  The BBC team filmed footage on school grounds and conducted numerous local interviews, including of students, parents, the school principal, and Shreveport's mayor Adrien Perkins. (*See id*.) The BBC produced several different versions of the story—varying in genre and length, including a twenty-minute-long audio version—which were then disseminated at different times across a variety of BBC television, radio, and online platforms. (*See id*.)

Thus, across four different major business operations—BBC Studios, bbc.com, the BBC World Service, and BBC News—the evidence establishes at the very least a prima facie case that the BBC delivers products to tens of thousands of customers in the Western District of Louisiana, thereby transacting business of a substantial character here. *See Green v. U. S. Chewing Gum Mfg. Co.*, 224 F.2d 369, 371 (5th Cir. 1955) (holding that defendant with "two regular customers within the district" transacted substantial business there).

VII. ***Because of the BBC's contacts with the U.S., there is no Due Process violation.***

As a last resort, the BBC contends that even if it is subject to personal jurisdiction in this Court under the Clayton Act (which it is), the Court should still "decline" such jurisdiction as a violation of Due Process. (ECF No. 39-1 at 16.) The burden of proof on this issue is heavy and falls on the BBC, which must make a "compelling case" for the Court to abdicate jurisdiction once minimum contacts are shown. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

division is disseminated on many different platforms, including (in the U.S.) a television channel also called "BBC News," legally owned by BBC Studios. (*See* Creter Dec. ¶ 7 n.22.)

The BBC not only fails to make a compelling case; it once again misrepresents the applicable law.

Relying on the **_Fourteenth_** Amendment Due Process test—which applies to state-law-based diversity actions and centers on state contacts—the BBC argues that litigating in **_Louisiana_** would be a constitutionally unfair "burden" and that **_Louisiana_** has "no meaningful role or interest" in this case. (ECF No. 39-1 at 16, 18.) But where (as here) a federal statute authorizes nationwide service of process, **_Fifth_** Amendment Due Process is applicable, under which the relevant forum is the United States and **_national_** contacts govern:

> There remains the requirement of a "constitutionally sufficient relationship" with the forum. With nationwide service, the forum is the United States. So minimum contacts with the United States (Fifth Amendment due process) suffice; minimum contacts with a particular state (Fourteenth Amendment due process) are beside the point.

_Double Eagle Energy Servs. v. Markwest Utica EMG_, 936 F.3d 260, 264 (5th Cir. 2019) (citations omitted).

Because (as shown above) the BBC does not and cannot controvert its substantial contacts with the United States—which include a news bureau, 150 employees, and incorporation in a U.S. jurisdiction—Due Process is satisfied here. _See, e.g._, _Fontenot_, 1996 U.S. App. LEXIS 43933, at *2 (upholding personal jurisdiction based on finding of defendant's incorporation in U.S. because "[t]he relevant minimum contacts inquiry here" is "whether [Defendant] had sufficient minimum contacts with the United States"); _Turner Builders_, 2021 U.S. Dist. LEXIS 236638, at *5-6 (holding that because defendant has "sufficient minimum contacts with the United States . . . [d]ue process concerns and 'traditional notions of fair play and substantial justice' are not violated by the Court's exercise of personal jurisdiction").

Under the national-contacts test, the ultimate Due Process question is whether the defendant "could reasonably anticipate being involved in litigation **_in the United States_**," as opposed to a particular state therein. _Pinker v. Roche Holdings, Ltd._, 292 F.3d 361, 370 (3rd Cir.

2002) (emphasis added); *see, e.g.*, *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d at 1299 ("Like the Fourteenth Amendment's personal jurisdiction test, the Fifth Amendment's Due Process Clause requires a defendant to have fair notice that its activities may subject it to a suit in a particular forum.... When a court determines the constitutionality of exercising personal jurisdiction under the Fifth Amendment, though, the court must consider the United States as the relevant forum, not an individual state."). That test is unquestionably satisfied here. When the BBC secured incorporation in Washington, DC, it voluntarily subjected itself to jurisdiction in the United States. *See Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) (corporation is "at home" and subject to jurisdiction in place where incorporated); *In re Blue Cross*, 225 F. Supp. 3d at 1299 (holding Fifth Amendment Due Process satisfied where "defendant has purposefully directed its activities towards the United States ***by incorporating in one of the states***") (emphasis added).

The BBC's consent to jurisdiction in Washington, DC and New York[14] dooms its Due Process challenge. *Cf. Pinker*, 292 F.3d at 370 n.2 (under national-contacts test, "[a]n alien defendant's preference for a particular state as a more or less convenient forum" generally does not "rise to the level of a constitutional objection"). Moreover, crucially, as alleged in the Complaint, the BBC deliberately and with anti-competitive intent created the TNI, and recruited America's largest Internet platforms into the TNI, with the purpose of censoring rival online news publishers' content in the United States. Such knowing infliction of injury in America creates specific jurisdiction (both in the United States and in this District) and defeats any notion that subjecting the BBC to suit in this country is unfair or unreasonable.

The BBC's assertion that Louisiana's interests in this case are weaker than Great Britain's

---

[14] (*See* ECF No. 39-1 at 20 n.2.)

(ECF No. 39-1 at 19-20) again misunderstands applicable law. The relevant sovereign in this case for Due Process purposes is not Louisiana; it is the United States, whose strong interest in enforcing its antitrust laws cannot be doubted:

> [W]e conclude that the exercise of personal jurisdiction over CEPE [a foreign corporation] would not violate traditional notions of "fair play and substantial justice." There is "undoubtedly . . . a strong national interest in [effective] antitrust enforcement." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 635 (1977) (Rehnquist, J., plurality opinion); *see also In re Vitamin Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 11536, at *67 (D.D.C. Apr. 23, 2001) ("The United States has a strong national interest in enforcement of the antitrust laws.").

*In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 493 (E.D. Pa. 2005).

For all these reasons, the BBC's "fair play and substantial justice" objections to being sued in Louisiana should be dismissed for what they are—*forum non conveniens* arguments improperly dressed up in the garb of Due Process. As the Ninth Circuit put it, rejecting an identical claim:

> Appellants' second argument is . . . more simply dismissed. They advert to the burden placed on an alien defendant who must litigate in Arizona and conclude that this burden, imposed by virtue of national contacts analysis, is inherently violative of the 'fair play and substantial justice' elements of due process. We are not persuaded . . . . [T]he concerns appellants raise are far more akin to a *forum non conveniens* argument than to a jurisdictional one. Considerations underlying a non-jurisdictional doctrine like *forum non conveniens* must be kept separate from the constitutional and jurisdictional analyses we conduct here.

*Go-Video*, 885 F.2d at 1416. The same conclusion applies here.

## CONCLUSION

For the foregoing reasons, Plaintiffs have made at the very least a prima facie case of personal jurisdiction and therefore respectfully submit that the BBC's motion must be denied.[15]

---

[15] In the alternative, should the Court disagree, Plaintiffs are moving (in papers filed simultaneously herewith) for jurisdictional discovery. At a minimum, Plaintiffs have made a "preliminary showing" of the "possible existence of the requisite contacts" to warrant jurisdictional discovery. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citation omitted).

Date: August 15, 2023

Respectfully submitted,


*/s/ G. Shelly Maturin, II*
_____

G. SHELLY MATURIN, II (# 26994)
WELBORN & HARGETT, LLC
1540 W. Pinhook Road
Lafayette, LA 70503
Telephone: (337) 234-5533
Facsimile: (337) 769-3173
shelly@wandhlawfirm.com
*Attorney for Plaintiffs*


JOHN W. HOWARD (CA Bar 80200)
SCOTT J. STREET (CA Bar 258962)
(pro hac vice)
JW HOWARD/ATTORNEYS, LTD.
600 West Broadway, Ste. 1400
San Diego, CA 92101
Telephone: (213) 205-2800
johnh@jwhowardattorneys.com
sstreet@jwhowardattorneys.com
*Attorneys for Plaintiffs*

JED RUBENFELD (NY 2214104)
(pro hac vice)
1031 Forest Rd. New Haven CT 06515
Telephone: (203) 432-7631
jed.rubenfeld@yale.edu


ROBERT F. KENNEDY, JR. (NY 1999993)
(pro hac vice forthcoming)
48 Dewitt Mills Rd., Hurley NY 12433
Telephone: (845) 481-2622


ROGER I. TEICH (CA 147076)
(pro hac vice forthcoming)
337 Liberty St. San Francisco CA 94110
Telephone: (415) 948-0045
rteich@juno.com


*Attorneys for Children's Health Defense*

25

## **CERTIFICATE OF SERVICE**

This is to certify that on the 15th day of August, 2023, a true and correct copy of the above and foregoing was filed with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to all attorneys of record.

*/s/ G. Shelly Maturin, II*
_____

G. SHELLY MATURIN, II