UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

---

| | |
|---|---|
| **CHILDREN'S HEALTH DEFENSE, TRIALSITE, INC., CREATIVE DESTRUCTION MEDIA, LLC, ERIN ELIZABETH FINN, JIM HOFT, DR. BEN TAPPER, BEN SWANN, DR. JOSEPH MERCOLA, TY BOLLINGER, CHARLENE BOLLINGER, AND JEFF CROUERE** | CIVIL ACTION NO. 3:23-cv-00720 |
| *Plaintiffs*, | Judge Terry A. Doughty |
| v. | Magistrate Judge Kayla D. McClusky |
| **WP COMPANY, LLC D/B/A THE WASHINGTON POST, THE BRITISH BROADCASTING CORP., THE ASSOCIATED PRESS & REUTERS NEWS AND MEDIA INC.,** | |
| *Defendants*. | |

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ALTERNATIVE
MOTION FOR JURISDICTIONAL DISCOVERY AND TO HOLD
IN ABEYANCE THE BBC'S RULE 12(b)(2) MOTION**

Defendant the British Broadcasting Corporation ("BBC") has moved to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Plaintiffs Children's Health Defense *et al.* (collectively, "Plaintiffs") are concurrently submitting a brief in opposition to that motion demonstrating that Plaintiffs have already made a *prima facie* showing of this Court's personal jurisdiction over the BBC (which is all that the law requires of Plaintiffs at this stage of the proceedings). It is Plaintiffs' position, therefore, that no jurisdictional discovery or fact-finding is necessary in order for the Court to deny the BBC's motion.

If the Court should disagree, however, then Plaintiffs hereby respectfully move in the alternative, pursuant to Federal Rules of Civil Procedure 26(d)(1), 30, and 33, for the opportunity to conduct jurisdictional discovery concerning the BBC's contacts with Louisiana and the United States, including the BBC's contacts with its American partners in the Trusted News Initiative ("TNI") and the scope of its business in Louisiana and throughout the United States. In that alternative, and through their allegations and evidence of personal jurisdiction over the BBC, Plaintiffs have at the very least made a "preliminary showing" of the "possible existence of the requisite contacts" to warrant limited jurisdictional discovery. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quotations omitted).

**I.     *The Court may allow jurisdictional discovery to resolve fact questions about whether it can assert personal jurisdiction over one of the defendants.***

Discovery in federal court generally does not proceed until after the Rule 26 conference. There are some exceptions to this rule, though, including when a defendant moves to dismiss a case based on a lack of personal jurisdiction. In that situation, "the district court must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Box v. Dallas Mexican Consulate Gen.*, 487 F. App'x 880, 884 (5th Cir. 2012) (quotations omitted); *see also ING Bank N.V. v. M/V Portland, IMO No. 9497854*, No.

315CV00805, 2016 WL 3365426, at *8 (M.D. La. June 16, 2016) (discussing this principle at length).

The requested discovery should be narrowly tailored, and granted when the jurisdictional question turns on disputed factual issues. *E.g., Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 679 (W.D. Tex. 2015). The discovery may include "depositions confined to the issues raised in the motion to dismiss." *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982), plus written discovery, *see Team Express Distrib. LLC v. Junction Sols., Inc.*, No. CVSA15CA00994, 2016 WL 11552404, at *3-6 (W.D. Tex. Sept. 7, 2016), and when "the jurisdictional question intertwines with the merits of the case . . . some discovery on the merits may be necessary, and general discovery may be permitted." *Wyatt*, 686 F.2d at 283. To merit this discovery, the complaint must include "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quotations omitted). This is a low threshold. "In an appropriate case, we will not hesitate to reverse a dismissal for lack of personal jurisdiction, on the ground that the plaintiff was improperly denied discovery." *Wyatt*, 686 F.2d at 283; *see also Toys R Us., Inc. v. Step Two*, 318 F.3d 446, 456 (3d Cir. 2003) (noting that "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous") (quotations omitted).

This is especially true under the Clayton Act, with courts recognizing that "it may be extremely difficult for plaintiffs . . . to make a *prima facie* showing of jurisdiction over a foreign corporation" that they sue in federal court for violating the federal antitrust laws. *Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 417 (S.D.N.Y. 2009) (quotations omitted). Thus, courts are apt to grant jurisdictional discovery in Clayton Act cases involving foreign defendants if the requisite *prima facie* showing to deny a foreign defendant's Rule 12(b)(2) motion is absent.

2

*See, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 305-06 (3d Cir. 2004) (affirming district court's decision to grant jurisdictional discovery of German defendant under Federal Rules of Civil Procedure instead of under Hague Convention); *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1352 (D.C. Cir. 2000) (reaching similar result in case involving operation of websites); *Tese-Milner*, 613 F. Supp. 2d at 417-18 (granting jurisdictional discovery in antitrust case involving British jewelry company).

## II.    *Jurisdictional discovery of the BBC's contacts with the United States is proper.*

In the event the Court is not inclined to deny the BBC's Rule 12(b)(2) motion immediately, the Court should allow Plaintiffs to conduct jurisdictional discovery regarding the BBC's contacts with the United States, particularly as they relate to the BBC's involvement in the TNI.

In antitrust cases, courts "must determine personal jurisdiction based on the defendant's contacts with the United States as a whole rather than just with the state of Louisiana." *Crompton Corp. v. Clariant Corp.*, 221 F. Supp. 2d 683, 688-89 (M.D. La. 2002). There is a good reason for this: the Clayton Act is a federal statute that provides for nationwide—indeed worldwide—service of process. *Id.* at 688 (citing cases); *see also Access Telecom, Inc. v. MCI Telecomm's Corp.*, 197 F.3d 694, 718 (5th Cir. 1999) (discussing this rule). As explained in Plaintiffs' opposition to the BBC's Rule 12(b)(2) motion, the BBC clearly has minimum contacts with the United States. In fact, according to the declaration it submitted with its motion, the BBC has a "bureau" in Washington, DC, plus 150 employees living in America. ECF 39-2, at 3 (para. 10). In addition, the BBC has even incorporated in the District of Columbia. *Id.* That satisfies the "minimum contacts" analysis in an antitrust case and subjects the BBC to personal jurisdiction in this case.

The BBC, however, has tried to avoid this conclusion by arguing that the BBC does not "transact business" in the Western District of Louisiana and that the Clayton Act's personal jurisdiction national-contacts test applies only if Plaintiffs first satisfy the Clayton Act's venue

3

provision, which requires a showing that the defendant "transacts business" in the District where suit was brought. As explained in Plaintiffs' opposition brief, this contention directly conflicts with Fifth Circuit case law. Nevertheless, should the Court accept this contention, and should the Court conclude that a *prima facie* showing has not yet been made that the BBC transacts business in this District, Plaintiffs are clearly entitled to jurisdictional discovery.

> A.   **Plaintiffs have a right to test the fact conclusions on which the BBC relies.**

Essentially, the BBC argues that its Royal Charter prohibits it from conducting commercial activities, meaning that a separate entity, BBC Studios, handles the "commercialization" of the BBC's media in the United States, including its website. The BBC argues that BBC Studios' contacts with the United States cannot provide a basis for exercising personal jurisdiction over the BBC itself. ECF 39, at 9-10, 20 (citing paragraphs 8 and 9 of Munro Declaration). **Plaintiffs have a right to test Mr. Munro's conclusory statements**,[1] which are presented without foundation, stated largely on information and belief from Mr. Munro's "review of records maintained in the regular course of business by the BBC," ECF 39-2, at 1, and called into doubt by public documents.

In *In re Gasoline Spot Litigation*, No. 20-cv-03131, 2020 WL 7431843 (N.D. Cal. Dec. 18, 2020), the district court deferred ruling on one defendant's motion to dismiss for lack of personal jurisdiction to allow for limited discovery in part because the defendant (SK Trading) had submitted a fact declaration from an executive (Mr. Jeong). The court did "not agree that it should accept Mr. Jeong's declaration without allowing Plaintiffs to test his assertions." *Id.* at *8. That was especially important since, like here, many of the statements Mr. Jeong made appeared to lack

---

[1] As explained in Plaintiffs' contemporaneously filed opposition to the BBC's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the law of this Circuit supports Plaintiffs' contention that, even if Mr. Munro's statements are taken as true, the Court may exercise jurisdiction over the BBC for Clayton Act purposes. These arguments for discovery are therefore made in the alternative.

4

a credible foundation, being stated on his "own personal knowledge" and review of "business records." *Id.* (quotations omitted). The court agreed that "Plaintiffs should be allowed to test the statements in Mr. Jeong's declaration and the source of his knowledge." *Id.*

Here, casting doubt on Mr. Munro's declaration, the BBC's charter and other filings and records show that the BBC has *both* legal ownership of *and* daily operational control over the bbc.com website. Declaration of Scott J. Street, dated August 11, 2023 ("Street Decl."), ¶¶ 8-10, Exh. A. Similarly, the BBC—not BBC Studios—has legal ownership of *and* operational control over the BBC World Service, a primarily radio-broadcast operation that reaches millions of people in the United States (and around the world), including more than 150,000 people who listen to it everyday in Louisiana. *See id.* ¶ 9, Exh. B. The BBC also owns *and* operates BBC News, which reports on events in America (including in Louisiana) and broadcasts programs to millions of Americans (including people in Louisiana). *Id.*, ¶¶ 10-12, Exhs. C-E.

Furthermore, contrary to Mr. Munro's statements, the BBC's and BBC Studios' operations are inextricably intertwined. *Id.*, ¶¶ 13-14. For example, the BBC Charter states that the activities of the BBC's commercial subsidiaries (like BBC Studios) are "activities of the BBC" which are "carried out by the BBC." ECF 39-2, at 14. Indeed, by charter and agreement, the BBC must monitor and supervise the activities of BBC Studios (and its other commercial subsidiaries) in numerous important respects, including in fitting the BBC's "Mission and the Public Purposes" of its charter and not "jeopard[izing] the good reputation of the BBC or the value of the BBC brand." *Id.* Finally, according to the BBC itself, BBC Studios is controlled and governed by the BBC's board, which is "the main decision making body for all of the BBC, including the BBC's commercial activities." Street Decl., Exh. G; *see also id.*, Exh. F (discussing how BBC Studios' profits are returned to BBC).

5

These public records cast doubt on Mr. Munro's claims about the alleged separate corporate existence between the BBC and BBC Studios, which can be clarified through jurisdictional discovery. For example, in *Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404 (S.D.N.Y. 2009), *supra*, the trustee of a bankrupt company sued one of the world's biggest diamond companies (De Beers) for monopolistic and anti-competitive actions. The complaint named several foreign entities linked to De Beers as defendants, with the trustee arguing primarily "that jurisdiction [was] appropriate over De Beers as an integrated enterprise." *Id.* at 411. The district court found that the trustee failed to make a *prima facie* case of personal jurisdiction[2] but had presented "evidence that there is common ownership and, to some extent, common management" among the defendants, as well as evidence that "De Beers describes itself as an 'integrated company' and that De Beers' management admits that the sale and marketing of diamonds are connected to the production and manufacturing of diamonds within their corporate structure." *Id.* at 417-18. The court therefore granted the request for jurisdictional discovery.

### B. The need for jurisdictional discovery is strengthened by the BBC's leadership role in the antitrust entity.

The BBC is not a bit player in the antitrust enterprise at issue in this litigation, the TNI. According to Mr. Munro, the BBC was a "founding partner and leader of the" TNI; employs (or employed) people "who have been involved with running the TNI"; has "documents concerning the TNI that are within the BBC's possession . . . in the United Kingdom"; and has hosted four annual summits about the TNI's work. ECF 39-2, at 3-5.

---

[2] Plaintiffs contend that their opposition to the BBC's Rule 12(b)(2) motion ***does*** establish a *prima facie* case of personal jurisdiction, such that the BBC's motion can be denied immediately, but also that (at a bare minimum) Plaintiffs have established a right to discovery. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1352-53 (D.C. Cir. 2000) (reversing denial of motion to dismiss for lack of personal jurisdiction but permitting jurisdictional discovery into ownership and control of websites that were basis for jurisdiction).

Courts grant requests for jurisdictional discovery when a foreign defendant is a key player in an anti-competitive conspiracy. For example, in *Wanachek Mink Ranch v. Alaska Brokerage International, Inc.*, No. C06-089, 2009 WL 1247039, at *1 (W.D. Wash. May 4, 2009), mink ranchers alleged that the defendants engaged in an unlawful conspiracy related to the selling of unprocessed animal furs in the United States, particularly at fur auctions that occurred in the United States. Two defendants moved to dismiss for lack of personal jurisdiction. Each submitted an affidavit stating that it resided in England and had limited, if any, contacts with the United States and no contacts with the forum state (Washington). *See id.* at *2. The court found that the declarations "do not conclusively establish that [the defendants] took or directed no purposeful actions toward Washington or the United States." *Id.* at *4. It also noted that the defendants did "not deny contact or communication with company employees during the fur auctions [that occurred in the United States], or knowledge of, direction, or participation in the conspiracy to control prices as alleged by plaintiffs." *Id.* To clarify those matters, the court continued the motion to dismiss hearing for three months and granted the plaintiff jurisdictional discovery. *See id.* at *5. Similarly, in *In re Gasoline Spot Litigation*, *supra*, the court explained that, because defendant SK Trading "was itself involved in directing and overseeing the anticompetitive horizontal spot market trading activity alleged here," it would be unfair to dismiss that defendant from the case without discovery testing its involvement in the alleged conspiracy carried out in the United States. 2020 WL 7431843, at *8.

Such should be the result here too; if the Court has doubt about whether the BBC has the required minimum contacts with the United States, the Plaintiffs should be permitted to conduct the discovery into the BBC's U.S. operations and role in the alleged TNI conspiracy.

**III.** ***If the BBC's motion is not immediately denied because jurisdictional discovery is deemed necessary, then the current briefing and hearing schedule should be continued***

***to allow for the completion of the discovery.***

The requested discovery includes deposing Mr. Munro about the matters discussed in his declaration and document requests or other inquiries into the following topics:

    a. Communications between the BBC (and any of its subsidiaries) and the American members of the TNI about the formation of the TNI;

    b. Communications between the BBC (and any of its subsidiaries) and the American members of the TNI about any of the Plaintiffs;

    c. Communications between the BBC (and any of its subsidiaries) and the American members of the TNI about the 2020 U.S. presidential election;

    d. Communications between the BBC (and any of its subsidiaries) and the American members of the TNI about the publication of alleged COVID-19 misinformation in America;

    e. Communications between the BBC (and any of its subsidiaries) and the American members of the TNI about the incidents that occurred at the Capitol Building on January 6, 2021;

    f. The extent of control the BBC exercises over entities operating within the U.S., including BBC Studios;

    g. The BBC's own commercial activity outside the United Kingdom, and specifically, within the U.S.;

    h. The BBC's exercise of its mission and charter within the U.S.;

    i. The business activities of the BBC (and/or its wholly owned subsidiaries) in the U.S., the size of its Washington, DC office, the existence of any other offices in the U.S., the number of its employees in the U.S., and the business activities in which those employees are engaged; and

    j. To the extent deemed relevant by the Court, the BBC's business contacts with the Western District of Louisiana.

As in the *Gasoline* litigation, the Court should continue the hearing on the BBC's motion to dismiss for 90-days to allow Plaintiffs to conduct this discovery and to file supplemental briefing with the information they obtain.

**IV.** ***Conclusion.***

For the foregoing reasons, in the event the Court does not immediately deny the BBC's Rule 12(b)(2) motion to dismiss for lack of jurisdiction, the Court should allow Plaintiffs to conduct jurisdictional discovery of the BBC.

RESPECTFULLY SUBMITTED,

DATED: August 15, 2023

*/s/ G. Shelly Maturin, II*
_____

| | |
|---|---|
| G. SHELLY MATURIN, II<br>(La. Bar 26994)<br>Maturin Law<br>322 Heymann Blvd., Suite 1<br>Lafayette, LA 70503<br>Telephone: (337) 362-3514<br>E-mail: shelly@maturinlaw.com<br>Attorney for Plaintiffs | JED RUBENFELD<br>(NY Bar 2214104)<br>(*pro hac vice*)<br>1031 Forest Rd.<br>New Haven CT 06515<br>Tel: (203) 432-7631<br>jed.rubenfeld@yale.edu<br>Attorney for Children's Health Defense |
| JOHN W. HOWARD (CA Bar 80200)<br>(*pro hac vice*)<br>JW HOWARD/ATTORNEYS, LTD.<br>600 West Broadway, Ste. 1400<br>San Diego, CA 92101<br>Telephone: (213) 205-2800<br>johnh@jwhowardattorneys.com<br>Attorney for Plaintiffs | ROBERT F. KENNEDY, JR.<br>(NY Bar 1999994)<br>48 Dewitt Mills Rd.<br>Hurley, NY 12433<br>Tel: (845) 481-2622<br>Attorney for Children's Health Defense |

SCOTT J. STREET (CA Bar No. 258962)
(*pro hac vice*)
JW HOWARD/ATTORNEYS, LTD.
201 South Lake Avenue, Suite 303
Pasadena, CA 91101
Telephone: (213) 205-2800
sstreet@jwhowardattorneys.com
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that on the 15th day of August, 2023, a true and correct copy of the above and foregoing was filed with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to all attorneys of record.

/s/ G. Shelly Maturin, II
_____
G. SHELLY MATURIN, II