IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, TRIALSITE, INC., CREATIVE DESTRUCTION MEDIA, LLC, ERIN ELIZABETH FINN, JIM HOFT, DR. BEN TAPPER, BEN SWANN, DR. JOSEPH MERCOLA, TY BOLLINGER, CHARLENE BOLLINGER, & JEFF CROUERE | |
| | Civil Action No. 3:23-cv-00720 |
| *Plaintiffs,* | Judge Terry A. Doughty |
| v. | Magistrate Judge Kayla D. McClusky |
| WP COMPANY LLC D/B/A THE WASHINGTON POST, THE BRITISH BROADCASTING CORP., THE ASSOCIATED PRESS, & REUTERS NEWS & MEDIA INC., | |
| *Defendants.* | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.     THE COMPLAINT FAILS TO PLAUSIBLY PLEAD A CONSPIRACY TO ACHIEVE AN UNLAWFUL OBJECTIVE. ....................................................... 2

II.    THE COMPLAINT FAILS TO PLEAD CONDUCT BY EACH DEFENDANT. ................................................................................................... 5

III.   THE COMPLAINT FAILS TO PLEAD INJURY OR HARM TO COMPETITION. ............................................................................................... 6

        A.     The Complaint Fails To Plead That Plaintiffs Suffered Antitrust Injuries. ........................................................................................ 7

        B.     The Complaint Fails To Plausibly Plead Injury to Competition. .................... 7

IV.   THE COMPLAINT FAILS TO PLEAD A RESTRAINT OF TRADE ...................... 8

        A.     The Complaint Fails To Plead the Elements of a *Per Se* Group Boycott. .......................................................................................... 8

        B.     The Complaint Fails To Plead a Rule of Reason Violation. .......................... 10

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

*Associated Press v. United States*, 326 U.S. 1 (1945) ...................................................................2, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................2, 3, 5

*Broyles v. Wilson*, 3 F.3d 439 (5th Cir. 1993), 1993 WL 347222 ...............................................1, 4

*Cascades Comput. Innovation LLC v. RPX Corp.*,
    2013 WL 316023 (N.D. Cal. Jan. 24, 2013) ..............................................................................7

*Compliance Mktg., Inc. v. Drugtest, Inc.*, 2010 WL 1416823 (D. Colo. Apr. 7, 2010) ................10

*Gelboim v. Bank of America Corp.*, 823 F.3d 759 (2d Cir. 2016) ...................................................5

*Haygood v. Begue*, 2018 WL 1023114 (W.D. La. Feb. 22, 2018) ..................................................6

*In re London Silver Fixing, Ltd., Antitrust Litigation*,
    332 F. Supp. 3d 885 (S.D.N.Y. 2018) .......................................................................................4

*In re Treasury Sec. Auction Antitrust Litig.*, 595 F. Supp. 3d 22 (S.D.N.Y. 2022) .........................5

*Kennedy, Jr. v. Google LLC*, 2023 WL 5440787 (N.D. Cal. Aug. 23, 2023) ................................10

*Litovich v. Bank of Am. Corp.*, 568 F. Supp. 3d 398 (S.D.N.Y. 2021) ...................................4, 5, 7

*Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368 (5th Cir. 2014) ........................................... passim

*McCormack v. NCAA*, 845 F.2d 1338 (5th Cir. 1998) .................................................................2, 7

*Mt. Crest SRL v. Anheuser-Busch InBev SA/NV*, 456 F. Supp. 3d 1059 (W.D. Wis. 2020) ............7

*N. Am. Soccer League, LLC v. U. S. Soccer Fed'n, Inc.*,
    296 F. Supp. 3d 442 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018) .................................8

*Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F. 3d 1379 (5th Cir. 1994) ................................8

*Tesla, Inc. v. La. Auto. Dealers Ass'n*, 2023 WL 4053438 (E.D. La. June 16, 2023) ..............1, 4, 6

*Total Benefits Planning v. Anthem Blue Cross*, 552 F.3d 430 (6th Cir. 2008) ................................6

*Tunica Web Advert. v. Tunica Casino Operators Ass'n*, 496 F.3d 403 (5th Cir. 2007) ..................9

*United Biologics, LLC v. Allergy & Asthma Network*,
    2019 WL 830967 (W.D. Tex. Feb. 21, 2019) ...........................................................................9

## INTRODUCTION

The Opposition confirms that the Complaint fails to state a plausible group boycott claim, for four independent reasons. On each point, Plaintiffs have no substantive answer to the controlling Fifth Circuit authority cited by Defendants which compels dismissal of this case.

First, Plaintiffs fail to plausibly allege that the Platforms ever *agreed* to take action against the Plaintiffs. The Opposition responds by highlighting generalities in bold italics, suggesting the TNI members would "work together" or "take action" to combat disinformation. Opp. 9–10. But "[w]hether the [TNI members] worked in concert with other parties . . . is uncontroversial." *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 375 (5th Cir. 2014). The "pivotal question is whether the concerted action was a result of an agreement between [TNI members] to unreasonably restrain trade." *Id.* And the Opposition confirms Plaintiffs have zero facts to show the Platforms ever *agreed* to do anything in response to TNI alerts about anyone, let alone Plaintiffs. They ignore multiple Fifth Circuit cases holding that allegations of sharing complaints are insufficient to state a boycott claim. *See, e.g.*, *Broyles v. Wilson*, 3 F.3d 439 (5th Cir. 1993), 1993 WL 347222, at *4; *Tesla, Inc. v. La. Auto. Dealers Ass'n*, 2023 WL 4053438, at *13 (E.D. La. June 16, 2023).

Second, Plaintiffs do not even attempt to respond to Defendants' argument that the Complaint must be dismissed because it fails to plausibly allege "'specific facts demonstrating an intention on the part of' each of the [defendants] 'to engage in a conspiracy' to exclude [Plaintiffs]." *Tesla*, 2023 WL 4053438, at *13 (quoting *Marucci*); Mot. 24–25. Plaintiffs do not allege that any Defendant (as opposed to the Platforms) took any action against them at all. They do not even mention The AP, Post or Reuters a single time in the Argument section of their brief.

Third, Plaintiffs fail to establish sufficient antitrust injury or harm to competition. They argue that it is "axiomatic" that targets of an alleged group boycott suffer antitrust injury. Opp. 21–22. But again they ignore the Fifth Circuit, which affirmed dismissal of a group boycott case

where the "alleged connection" between the defendant's actions and plaintiff's injury "present[ed] the sort of 'speculative' and 'abstract' causal chain that the Supreme Court has held insufficient to support antitrust standing." *McCormack v. NCAA*, 845 F.2d 1338, 1342 (5th Cir. 1998).

Fourth, Plaintiffs fail to state an unreasonable restraint on trade in the purported relevant market for online news.  For example, they argue that Defendants have a dominant position in the market because of TNI members Google and Facebook, but they cannot reconcile their theory with the fact that three of the five "news aggregators" identified in the Complaint as "attracting 80% of online news traffic," and all of the major U.S. news networks, are not TNI members.  Mot. 16–17.  In addition, their rule of reason argument fails at every step under *Marucci*.  751 F.3d at 376–77.

Throughout their Opposition, Plaintiffs try to cure their pleading deficiencies with reference to *Associated Press v. United States*, which held that the First Amendment did not immunize Sherman Act violations.  326 U.S. 1, 20 (1945).  But Defendants have not invoked a First Amendment defense in this motion.  *Associated Press* predated *Twombly* by more than 60 years and cannot absolve the Plaintiffs of their antitrust pleading burdens, which is where they fail.  Because Plaintiffs' theory is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by [the Platforms' own] perceptions of the market," the case should be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

## ARGUMENT

### I. THE COMPLAINT FAILS TO PLAUSIBLY PLEAD A CONSPIRACY TO ACHIEVE AN UNLAWFUL OBJECTIVE.

Plaintiffs' Opposition highlights the central failure at the heart of their Complaint: the lack of any plausible allegation that Defendants entered into an *agreement* with the Platforms to take unlawful action against Plaintiffs.  Plaintiffs readily admit that it is the *Platforms* who have the power to limit access as "gatekeepers," through exercising their own content moderation

guidelines. *See* Opp. 2; Mot. 10. But they fail to articulate any plausible explanation for why the suppression they allege is not "independent action" by the Platforms. *Twombly*, 550 U.S. at 557.

Indeed, the allegations emphasized in the Opposition show why Plaintiffs' theory is fundamentally implausible. Plaintiffs allege that the "behemoth" Platforms have such market power that they can "control and suppress the news content that hundreds of millions of Americans see and hear every day," while Defendants, traditional news publishers, are in "economic freefall." Opp. 2. Defendant news publishers have, by Plaintiffs' own admission, no power over the Platforms, and it makes no sense why the Platforms would agree to target Plaintiffs at Defendants' request. Their theory is rendered even more speculative by Plaintiffs' separate lawsuit alleging that it was *the government*—i.e., not Defendants—that "succeeded in inducing major social-media platforms to censor" their speech. *See* Mot. 4–5, 10. They do not attempt to reconcile these cases.

Dismissal is appropriate under *Marucci*, which Plaintiffs all but ignore. There, the Fifth Circuit emphasized that a complaint does not state a claim under the Sherman Act if it does not sufficiently allege that Defendants "engaged in concerted action—that is, a 'conscious commitment to a common scheme designed to achieve an unlawful objective.'" 751 F.3d at 374–75. Rather than substantively engage with *Marucci*, Plaintiffs lard their Opposition with reference to instances in which TNI members generically referenced a TNI "collaboration" or "partnership." Opp. 7–10. Plaintiffs ignore that "[w]hether the [TNI members] worked in concert with other parties . . . is uncontroversial," and that the "pivotal question is whether the concerted action was a result of an agreement between the [TNI members] *to unreasonably restrain trade*." *Marucci*, 751 F.3d at 375 (emphasis added). They have failed to plausibly make such a showing.[1]

---

[1] Plaintiffs point to cases holding that evidence referring "to an understanding between" alleged co-conspirators can be direct evidence of agreement. Opp. 10. But not just any agreement will suffice; the agreement must have an anticompetitive aim. *See Marucci*, 751 F.3d at 375.

3

The only thing Plaintiffs have plausibly alleged is that the TNI members agreed to share alerts. Their repeated quotations of certain comments made by TNI participants like BBC official Jessica Cecil do not show that Defendants agreed to do more than that. Opp. 1, 8–9; Mot. 10–11.[2] There is no plausible allegation of an *agreement* to do anything other than share alerts, and for the Platforms to undertake independent "review," subject to their moderation polices and imperatives.

Plaintiffs ignore the multitude of authority cited by Defendants that such allegations of sharing complaints within a group are insufficient to establish an agreement to restrain trade. *See* Mot. 8. Plaintiffs' only direct response to any of these cases is that one is distinguishable because it was a summary judgment opinion. *See* Opp. 11 n.7. But they have nothing to say about the multiple other cases identified in Defendants' motion in which courts granted or affirmed dismissal on this specific basis, including the Fifth Circuit. *See* Mot. 9; *Broyles*, 1993 WL 347222, at *4; *Tesla, Inc.*, 2023 WL 4053438, at *13–14; *Litovich v. Bank of Am. Corp.*, 568 F. Supp. 3d 398, 423 (S.D.N.Y. 2021). "[T]he Fifth Circuit has made clear that 'one-sided complaints are just not a suitable basis for an inference of conspiracy'. . . . There are simply no specific factual allegations supporting an inference that the [Platforms] agreed with [Defendants] to take any action that would keep [Plaintiffs] out of the market." *Tesla, Inc.*, 2023 WL 4053438, at *13 (brackets omitted).[3]

---

[2] Plaintiffs also reference the TNI website, suggesting participants would "work together" and "take action." Opp. 10. But in their rush to emphasize these platitudes, Plaintiffs fail to acknowledge that the page explains that the method for this cooperation is simply that "Partners *alert each other* to high risk disinformation so that content *can be reviewed* promptly by platforms, whilst publishers ensure they don't unwittingly share dangerous falsehoods." *See* About Us, TNI, https://www.bbc.co.uk/beyondfakenews/trusted-news-initiative/about-us (emphases added).

[3] Rather than engage on this Fifth Circuit authority, Plaintiffs misread two cases for the idea that "mere information-sharing" can be anticompetitive. Opp. 8 n.3. But the cases are inapposite. Neither involved a group boycott, and the information was competitively sensitive. For example, in *In re London Silver Fixing, Ltd., Antitrust Litigation*, a price-fixing case, the court emphasized that sharing certain sensitive pricing information with competitors was "not rational." 332 F. Supp. 3d 885, 904 (S.D.N.Y. 2018). But the lynchpin was not mere information sharing; it was evidence of chat messages in which some of the defendants "clearly discuss market manipulation." *Id.* By

Plaintiffs offer no response to Defendants' arguments that their purported circumstantial evidence of an unlawful agreement is implausible. They do not contest that they have no factual allegation that any Defendant *ever* took any action against *any* Plaintiff, let alone that a Defendant even flagged a Plaintiff's content for a Platform. Mot. 11–12; *compare Litovich*, 568 F. Supp. 3d at 423 (granting motion to dismiss where "Plaintiff does not name a single Defendant who complained [about the Plaintiff] or a single complaint that was made"). Plaintiffs also cannot explain how the Platforms' vastly inconsistent choices about Plaintiffs' content, including whether to allow Plaintiffs to maintain access, indicate a conspiracy. Mot. 12, 18 n.11. It makes no sense to conclude that Plaintiffs' access was limited by an agreement with Defendants when the simplest explanation is that these varying outcomes resulted from the Platforms' independent decisions.

Plaintiffs are left to argue that they do not have to "rule out" the possibility that the Platforms acted independently. Opp. 8 n.4, 11.[4] But they ignore that under *Twombly*, their theory cannot be "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by [the Platform's own] perceptions of the market." 550 U.S. at 554. Where Plaintiffs do not dispute that the Platforms independently remove content subject to their content moderation policies or business imperatives, "there are 'obvious alternative explanations for the facts alleged,'" and "[a]n inference of conspiracy will not arise." *Litovich*, 568 F. Supp. 3d at 417.

## II.  THE COMPLAINT FAILS TO PLEAD CONDUCT BY EACH DEFENDANT.

The Complaint must be dismissed because Plaintiffs have failed to allege "specific *facts*

---

contrast, there is "no such 'smoking gun' evidence" here. *In re Treasury Sec. Auction Antitrust Litig.*, 595 F. Supp. 3d 22, 48 (S.D.N.Y. 2022) (distinguishing *In re London* on this basis).

[4] Plaintiffs' only authority on this point, *Gelboim v. Bank of America Corp.*, 823 F.3d 759, 781 (2d Cir. 2016), is inapposite. It did not concern a situation where there was an "obvious alternative explanation" for the conduct alleged; indeed, *Litovich* dismissed a group boycott claim on this basis, distinguishing *Gelboim*. 568 F. Supp. 3d at 433. And the plaintiffs in *Gelboim* asserted specific facts suggesting an agreement to conspire on pricing not present here. *See, e.g., id*.

demonstrating an intention on the part of [each defendant] to engage in a conspiracy." *Marucci*, 751 F.3d at 375 (emphasis in original); *see* Mot. 24–25. As the motion explained, this kind of "generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*." Mot. 24 (quoting *Total Benefits Planning v. Anthem Blue Cross*, 552 F.3d 430, 436 (6th Cir. 2008)). The Opposition offers no response. Thus, "Plaintiffs have waived contesting this issue." *Haygood v. Begue*, 2018 WL 1023114, at *6 (W.D. La. Feb. 22, 2018) (compiling cases; granting motion to dismiss).

Even if Plaintiffs' silence did not constitute waiver, their Opposition underscores their utter failure to make any plausible claims about each individual Defendant: Plaintiffs do not even *mention*, much less identify specific conduct by, The AP, Post, or Reuters a single time in the Argument section of their brief. While the Opposition names the BBC a few times, Plaintiffs likewise fail to identify *any* conduct taken by the BBC involving *Plaintiffs*, which is insufficient. *See, e.g.*, *Tesla, Inc.*, 2023 WL 4053438, at *13 (granting motion to dismiss where plaintiff failed to allege "'specific facts demonstrating an intention on the part of' *each of the commissioners* 'to engage in a conspiracy' *to exclude Tesla*") (emphases added) (quoting *Marucci*).[5]

Thus, the Complaint "fall[s] significantly short of the required pleading threshold." *Total Benefits*, 552 F.3d at 436; *Marucci*, 751 F.3d at 375; *Tesla, Inc.*, 2023 WL 4053438, at *13.

## III. THE COMPLAINT FAILS TO PLEAD INJURY OR HARM TO COMPETITION.

Neither the Complaint nor the Opposition plausibly alleges that the Defendants' conduct caused antitrust injury and harm to competition. Mot. 22–24.

---

[5] At most, Plaintiffs have alleged that the Defendants participated in the TNI group. But that is not enough. Even if Plaintiffs had sufficiently alleged the association engaged in anticompetitive acts, "federal courts across the country have concluded that '[m]ere membership in associations is not enough to establish participation in a conspiracy.'" *Tesla, Inc.*, 2023 WL 4053438, at *13.

### A. The Complaint Fails To Plead That Plaintiffs Suffered Antitrust Injuries.

Plaintiffs' only response to Defendants' argument that they have failed to plead antitrust injury and standing is to say it is "axiomatic" that targets of an alleged group boycott necessarily suffer antitrust injury. Opp. 21–22. But that is simply not the law. Courts routinely dismiss group boycott cases where, as here, the plaintiff has failed to allege sufficient facts to plausibly show that the defendant's conduct caused the plaintiff cognizable harm. For example, in *McCormack v. NCAA*, the Fifth Circuit affirmed dismissal of a group boycott claim where the plaintiff's "alleged connection" between the defendant's actions and his injury "present[ed] the sort of 'speculative' and 'abstract' causal chain that the Supreme Court has held insufficient to support antitrust standing." 845 F.2d at 1342 (internal quotation marks omitted).[6]

*McCormack* controls this case, and Plaintiffs completely ignore it. They point to no facts to support a plausible inference that their injuries were caused by Defendants' alleged conduct; to the contrary, their Complaint alleges, and their Opposition confirms, that to the extent they suffered harm at all, it was exclusively at the hands of individual Platforms. Mot. 22–24.

### B. The Complaint Fails To Plausibly Plead Injury to Competition.

Plaintiffs also fail to plausibly plead injury to competition, as their only allegations of such harm are conclusory. Plaintiffs' "predominate focus on [their] own injury is misguided because antitrust laws are designed to protect competition, not competitors." *Marucci*, 751 F.3d at 376.

In the Opposition, Plaintiffs point to no specific allegations of suppression in the alleged market. Opp. 22–24. Plaintiffs seem to suggest that they can make out an allegation that

---

[6] *See also Mt. Crest SRL v. Anheuser-Busch InBev SA/NV*, 456 F. Supp. 3d 1059, 1070 (W.D. Wis. 2020) (dismissing group boycott claim absent a "direct link between the alleged antitrust violation and the claimed antitrust injury"); *Cascades Comput. Innovation LLC v. RPX Corp.*, 2013 WL 316023, at *11 (N.D. Cal. Jan. 24, 2013) (similar); *Litovich*, 568 F. Supp. 3d at 434 (similar).

7

"competition in news is *categorically* diminished," *id.* at 24 (emphasis added), but "categorical" is little more than code for "presumed," and Plaintiffs' "[s]peculation about anticompetitive effects is not enough." *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F. 3d 1379, 1385 (5th Cir. 1994). The Fifth Circuit rejected this kind of pleading in *Marucci*, where the plaintiff "fail[ed] to provide the *identity* of the 'new market entrants' or demonstrate when and how" they were harmed. 751 F.3d at 377 (emphasis added).[7]

Second, as in *Marucci*, Plaintiffs do not plausibly allege any effect on price in the market. *See* Mot. 20. While Plaintiffs vaguely argue that their case concerns "zero-price offerings," Opp. 20, they have failed to demonstrate significant price changes for the advertising supporting such business models. Plaintiffs have supposedly quantified these damages for themselves, Compl. ¶¶ 358, 368, 385, 388, 449, 464, but make no showing as to the *market*. *Marucci*, 751 F.3d at 377.

Plaintiffs lean heavily on *Associated Press v. United States*, 326 U.S. 1, 20 (1945); Opp. 2, 21, 23–24, but as noted *supra*, the case is inapposite for multiple reasons.[8] It does not excuse them from pleading harm to competition with non-conclusory allegations. *Marucci*, 751 F.3d at 377.[9]

## IV. THE COMPLAINT FAILS TO PLEAD A RESTRAINT OF TRADE.

### A. The Complaint Fails To Plead the Elements of a *Per Se* Group Boycott.

Plaintiffs attempt to dodge their burden of adequately pleading a *per se* group boycott

---

[7] Plaintiffs do not even attempt to reconcile their assertion of decreased output with their separate allegation that the market is "explo[ding]" with new entrants. Compl. ¶ 163; Mot. 20–21.

[8] To the extent *Associated Press* "indicate[s] that courts may impute the existence of an agreement between participants when the agreement on its face is designed to preclude all competition or competitors . . . [t]hat is not the case here." *N. Am. Soccer League, LLC v. U. S. Soccer Fed'n, Inc.*, 296 F. Supp. 3d 442, 461 n.28 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018). Plaintiffs allege no agreement at all, much less one that "*on its face*" excludes them from anything.

[9] The other cases Plaintiffs cite concerning the supposed suppression of "viewpoints," Opp. 23, are also irrelevant to this analysis; they do not address antitrust injury or harm to competition at all. *See also* Mot. 22–23 (explaining that harm to the marketplace of ideas is not antitrust injury).

8

claim, arguing that the Court is not required to consider the three *Tunica* factors. Opp. 15; *see Tunica Web Advert. v. Tunica Casino Operators Ass'n*, 496 F.3d 403, 414–15 (5th Cir. 2007). Plaintiffs are incorrect. Courts routinely dismiss cases based on failure to plausibly plead these factors. *See, e.g.*, *United Biologics, LLC v. Allergy & Asthma Network*, 2019 WL 830967, at *4–5 (W.D. Tex. Feb. 21, 2019) (analyzing *Tunica* factors to find that Plaintiffs failed to state a per se horizontal group boycott claim). That is precisely what should happen here.

First, Plaintiffs fail to plausibly allege that TNI members have a dominant position in a relevant market. Mot. 14–17. The Opposition merely regurgitates statistics from the Complaint: Plaintiffs repeat their claim that a "publisher de-platformed by the TNI's Big Tech Members loses at least 90% (and probably more) of its traffic," Opp. 17–18 (quoting Compl. ¶ 234), but they offer no response to Defendants' argument that the claim is illogical and not measuring the relevant market, Mot. 16. Furthermore, Plaintiffs ignore that three of the five "news aggregators" identified in the Complaint as driving "80% of online news traffic" are not TNI members, nor are major news networks like ABC, CBS, CNN, Fox, and NBC. Mot. 16–17.[10] Plaintiffs cannot plausibly allege market dominance based solely on TNI members Facebook and Google when key participants in the alleged relevant market for online news are not TNI members at all.

Second, Plaintiffs fail to allege that TNI members cut off their access to any facility necessary to compete in the alleged relevant market. *See* Mot. 17–19. They do not contest in their Opposition that they continue to have access to the very Platforms they claim injured them, in addition to platforms outside of the TNI group and their own websites. *See id.* 17–18. The fact that Plaintiffs continue to have access to the overwhelming majority of their accounts, despite the

---

[10] Plaintiffs also do not dispute that when the Complaint cites a report's assertion that dominant firms can "impose unilateral terms on publishers, such as take-it-or-leave-it revenue sharing agreements," the report is referring to *Apple*, which is also not a TNI member. *See* Mot. 16.

alleged actions of the TNI, shows why their claim is fundamentally implausible.[11]

Third, the Complaint fails to allege facts demonstrating that the TNI lacked any plausible procompetitive justifications. *See* Mot. 19. Plaintiffs attempt to dodge the requirement, contending that procompetitive justifications are an "affirmative defense" better addressed at summary judgment. Opp. 20. Not so; where, as here, the pro-competitive justifications are clear on the face of the Complaint, they are grounds for dismissal. *See, e.g.*, *Compliance Mktg., Inc. v. Drugtest, Inc.*, 2010 WL 1416823, at *13 (D. Colo. Apr. 7, 2010) (dismissing group boycott claim on this basis). Plaintiffs' only other response is to misconstrue Defendants' argument, suggesting it is based on an alleged improvement to "the *quality* of online news." Opp. 21 (emphasis original). In fact, Defendants' argument is that the TNI is consistent with Congress's statutory scheme that allows independent content moderation decisions, which is subject to judicial notice. Mot. 19.

**B. The Complaint Fails To Plead a Rule of Reason Violation.**

Because Plaintiffs cannot make out any of the *per se* factors, their case should be dismissed unless they can plausibly allege a rule of reason violation. *See* Mot. 20–21. Plaintiffs' Opposition confirms that they have not done so, and have again failed to address *Marucci*, which guides this analysis. *See id*. For the reasons discussed *supra* Section III(B), they have failed to show plausible injury to the market. Accordingly, the TNI's "anticompetitive evils, pursuant to the information in the . . . Complaint, are virtually non-existent." *Marucci*, 751 F.3d at 377.

**CONCLUSION**

The Court should grant the motion and dismiss Plaintiffs' Complaint in its entirety.

---

[11] Notably, CHD Chairman Robert F. Kennedy Jr. recently admitted in a separate case that "he is still able to post content on Facebook and X" that was allegedly censored on YouTube. *See Kennedy, Jr. v. Google LLC*, 2023 WL 5440787, at *5 (N.D. Cal. Aug. 23, 2023). The court concluded that "[t]here are numerous other ways that Plaintiff may share video content concerning his viewpoints on vaccinations and COVID-19," *id.*, which proves ongoing access.

Dated: August 29, 2023

/s/ Leslie E. John
Leslie E. John (*pro hac vice*, #917698)
Elizabeth P. Weissert (*pro hac vice*, #917700)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500; Fax: (215) 864-8999
johnl@ballardspahr.com
weisserte@ballardspahr.com

Jay Ward Brown (*pro hac vice*, #917699)
Ballard Spahr LLP
1909 K Street N.W., 12th Floor
Washington, DC 20006
Tel: (202) 661-2200; Fax: (202) 661-2299
brownjay@ballardspahr.com

Loretta Mince #25796
Fishman Haygood LLP
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170
Tel: (504) 586-5252; Fax: (504) 586-5250
lmince@fishmanhaygood.com

*Attorneys for The Associated Press*

/s/ Jeffrey C. Bank
Jeffrey C. Bank (*pro hac vice*, #917708)
Allison B. Smith (*pro hac vice*, #917709)
Wilson Sonsini Goodrich & Rosati
1700 K Street, N.W., 5th Floor
Washington, DC 20006
Tel: (202) 973-8800; Fax: (202) 973-8899
jbank@wsgr.com
allison.smith@wsgr.com

Thomas M. McEachin #26412
Andrea V. Timpa #29455
William P. Gibbens #27225
Schonekas, Evans, McGoey
& McEachin, L.L.C.
909 Poydras Street, Suite 1600

Respectfully submitted,

/s/ John E. Schmidtlein
John E. Schmidtlein (*pro hac vice*, #917694)
Thomas G. Hentoff (*pro hac vice*, #917696)
Nicholas G. Gamse (*pro hac vice*, #917695)
Kathryn E. Garza (*pro hac vice*, #917697)
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Tel: (202) 434-5000; Fax: (202) 434-5029
jschmidtlein@wc.com
thentoff@wc.com
ngamse@wc.com
kgarza@wc.com

Bernard S. Johnson #07280
Cook, Yancey, King & Galloway
333 Texas Street, Suite 1700 (71101)
P.O. Box 22260
Shreveport, LA 71120-2260
Tel: (318) 221-6277; Fax: (318) 227-7850
bernard.johnson@cookyancey.com

*Attorneys for WP Company LLC*
*d/b/a The Washington Post*

/s/ Jan P. Christiansen
Jan P. Christiansen #20142
G. Adam Cossey #31678
Hudson Potts & Bernstein
1800 Hudson Lane, Suite 300
Monroe, LA 71201
Tel: (318) 388-4400; Fax: (318) 388-2758
jpchris@hpblaw.com
acossey@hpblaw.com

Edward B. Schwartz (*pro hac vice*, #914616)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000, East Tower
Washington, DC, 20005
Tel: (202) 414-9200
eschwartz@reedsmith.com

New Orleans, LA 70112  
Tel: (504) 680-6050; Fax: (504) 680-6051  
thomas@semmlaw.com  
andrea@semmlaw.com  
billy@semmlaw.com  

*Attorneys for Reuters News & Media Inc.*

Michelle A. Mantine (*pro hac vice*, #917715)  
Reed Smith LLP  
Reed Smith Centre, 225  
Fifth Avenue  
Pittsburgh, PA, 15222  
Tel: (412) 288-3131  
mmantine@reedsmith.com  

Casey J. Olbrantz (*pro hac vice*, #917713)  
Reed Smith LLP  
599 Lexington Avenue  
New York, NY 10022  
Tel: (212) 521-5400  
colbrantz@reedsmith.com  

*Attorneys for The British Broadcasting Corporation*

## **CERTIFICATE OF SERVICE**

  The undersigned Counsel hereby certifies that on the 29th day of August 2023, notice of the foregoing pleading was provided via the CM/ECF system to the counsel of record.

               */s/ John E. Schmidtlein*
               John E. Schmidtlein