UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, TRIALSITE, INC., CREATIVE DESTRUCTION MEDIA, LLC, ERIN ELIZABETH FINN, JIM HOFT, DR. BEN TAPPER, BEN SWANN, DR. JOSEPH MERCOLA, TY BOLLINGER, CHARLENE BOLLINGER, & JEFF CROUERE<br><br>*Plaintiffs*,<br>v.<br><br>WP COMPANY LLC D/B/A THE WASHINGTON POST, THE BRITISH BROADCASTING CORP., THE ASSOCIATED PRESS, & REUTERS NEWS & MEDIA INC.,<br><br>*Defendants*. | Civil Action No. 3:23-cv-00720<br><br>Judge Terry A. Doughty<br><br>Magistrate Judge Kayla D. McClusky |

**DEFENDANTS' RESPONSE TO THE STATE OF LOUISIANA'S AMICUS CURIAE BRIEF IN SUPPORT OF THE PLAINTIFFS**

**TABLE OF CONTENTS**

Page(s)

**INTRODUCTION** ...................................................................................................................... 1

**ARGUMENT** .............................................................................................................................. 1

I.     LOUISIANA CANNOT CURE THE DEFICIENCIES IN PLAINTIFFS' ANTITRUST CLAIMS. ................................................................... 1

        A.     Plaintiffs Have Not Brought a First Amendment Claim. ........................... 2

        B.     The Antitrust Laws Are Concerned With Restraints of Trade and Economic Injuries. ............................................................................. 3

        C.     Louisiana Cannot Remedy Plaintiffs' Failure to Plead a Restraint of Trade or Harm to Competition. .............................................. 4

        D.     *Missouri v. Biden* Renders Plaintiffs' Antitrust Allegations Implausible. ................................................................................................ 5

II.     THE COURT SHOULD DISREGARD THE FACTS PROFFERED BY LOUISIANA. ...................................................................................................... 6

III.     LOUISIANA'S AMICUS BRIEF DOES NOT BEAR ON DEFENDANTS' MOTION TO TRANSFER. ........................................................ 7

**CONCLUSION** ........................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adams v. Am. Bar Assoc.*,
   400 F. Supp. 219 (E.D. Pa. 1975) ............................................................................................4

*In re Associated Press*,
   172 F. App'x 1 (4th Cir. 2006) .................................................................................................2

*Associated Press v. United States*,
   326 U.S. 1 (1945) .....................................................................................................................4

*Battle v. Liberty Nat'l Life Ins. Co.*,
   493 F.2d 39 (5th Cir. 1974) ......................................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................6

*Biden v. Knight First Amendment Institute at Columbia University*,
   141 S. Ct. 1220 (2021) .............................................................................................................3

*Boudreaux v. Sch. Bd. of St. Mary Par.*,
   No. 6:65- 11351, 2023 WL 4771231 (W.D. La. July 24, 2023) ..............................................6

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ....................................................................................................6

*DataCell Ehf v. Visa, Inc.*,
   No. 1:14-1658, 2015 WL 4624714 (E.D. Va. July 30, 2015) ..................................................3

*Johnson v. Comm'n on Presidential Debates*,
   869 F.3d 976 (D.C. Cir. 2017) .................................................................................................4

*Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*,
   418 U.S. 241 (1974) .................................................................................................................2

*Missouri v. Biden*,
   No. 3:22-1213 (W.D. La. filed May 5, 2022) ...............................................................2, 3, 5, 6

*Norris v. Hearst Tr.*,
   500 F.3d 454 (5th Cir. 2007) ....................................................................................................3

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979) .................................................................................................................3

*Sierra Club v. FEMA*,
    No. H-07-0608, 2007 WL 3472851 (S.D. Tex. Nov. 14, 2007) ............................................6, 7

*United States v. City of New Orleans*,
    No. 12-1924, 2022 WL 4465534 (E.D. La. Sep. 26, 2022) .......................................................2

**Federal Statutes**

15 U.S.C. § 15(a) .............................................................................................................................3

**Constitutional Provisions**

U.S. CONST. AMEND. I ............................................................................................................ *passim*

## INTRODUCTION

The State of Louisiana has submitted an amicus brief in support of Plaintiffs, espousing the importance of a free press. Defendants, as news publishers, agree that a free press is critical. But Plaintiffs do not assert First Amendment claims, and there are no allegations of government censorship. Instead, Plaintiffs have brought claims under the Sherman Act alleging that Defendants engaged in an anticompetitive group boycott that restrained trade. The Sherman Act is designed to redress restraints of trade and their concomitant economic injuries – not to protect First Amendment rights. To plead an antitrust claim, Plaintiffs must plead sufficient facts to plausibly allege the existence of an anticompetitive agreement causing them to suffer cognizable antitrust injuries. The arguments asserted by Louisiana in its amicus brief do not address Plaintiffs' failure to do so.

Additionally, this is an action by eleven private plaintiffs—not one of which resides in the Western District of Louisiana—against private defendants. Louisiana does not take a position on Defendants' motion to transfer nor does it articulate any unique interest in the case; to the contrary, the interest in a free press is shared by every state. The Court can and should dismiss this case or transfer it to a district more convenient for the parties and nonparty witnesses.

## ARGUMENT

**I.    LOUISIANA CANNOT CURE THE DEFICIENCIES IN PLAINTIFFS' ANTITRUST CLAIMS.**

Louisiana's amicus brief (ECF No. 62 ("Amicus")) does not remedy the pleading deficiencies in Plaintiffs' Complaint. First, Louisiana's focus on the importance of a free press is misplaced, as Plaintiffs have not asserted a First Amendment claim. Second, although individual liberty interests may underlie the antitrust laws, they are economic in nature and designed to

redress commercial injuries to business or property. Third, Louisiana makes no argument as to why Plaintiffs have met the requirements to properly plead an antitrust claim, which they have not (and which Louisiana could not cure in any event). Finally, contrary to Louisiana's assertion, Defendants do not argue that *Missouri v. Biden* precludes this suit. The amicus brief thus does not bear on the issues raised by Defendants' pending motions. *See United States v. City of New Orleans*, No. 12-1924, 2022 WL 4465534, at *2 (E.D. La. Sep. 26, 2022) (declining to consider proposed amicus brief that "is not useful or helpful to the Court.").

### A. Plaintiffs Have Not Brought a First Amendment Claim.

Louisiana devotes much of its amicus brief to the importance of a free press. But Plaintiffs have not brought a First Amendment case, rendering inapposite Louisiana's arguments that a free press is essential to preserve liberty and that the alleged conspiracy harms free speech. As news publishers, Defendants are ardent proponents of the rights guaranteed by the First Amendment, including the right to be free from content-based censorship by the government. Defendants have themselves sought to protect the rights that the First Amendment guarantees.[1] But Defendants are not government actors, and instead have their own First Amendment rights to determine what to publish. *See Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 258 (1974) ("The choice of material to go into a newspaper, and the decisions made as to . . . treatment of public issues and public officials -- whether fair or unfair -- constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press[.]"). And unlike in *Missouri v. Biden*, No. 3:22-1213

---

[1] *See, e.g., In re Associated Press*, 172 F. App'x 1 (4th Cir. 2006) (seeking access under the First Amendment to documents admitted into evidence in the criminal trial of an individual charged with the September 11th attacks).

(W.D. La. filed May 5, 2022), the government is not a defendant here and there are no allegations that Defendants worked with or were encouraged or coerced by the government.[2] In sum, Defendants agree with the importance of the First Amendment but Louisiana's arguments concerning it have no bearing on whether Plaintiffs have stated an antitrust claim.

    **B.    The Antitrust Laws Are Concerned With Restraints of Trade and Economic Injuries.**

The antitrust laws protect economic competition and promote "consumer welfare." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 343 (1979) (quoting Robert H. Bork, The Antitrust Paradox 66 (1978)). Thus, Section 4 of the Clayton Act provides for the recovery of damages by "any person who shall be injured *in his business or property* by reason of anything forbidden in the antitrust laws[.]" 15 U.S.C. § 15(a) (emphasis added). The Fifth Circuit has recognized that antitrust "plaintiffs must show that they have suffered injury to 'business or property,' . . . defined as referring to 'commercial interests or enterprises.'" *Battle v. Liberty Nat'l Life Ins. Co.,* 493 F.2d 39, 48 (5th Cir. 1974) (quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264 (1972)); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 467 (5th Cir. 2007) (quoting *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983)) ("[T]he Sherman Act was enacted to assure customers the benefits of price competition[.]").

Louisiana argues that a group boycott among the "legacy media" could hypothetically violate the antitrust laws because it could "obliterate journalistic diversity." Amicus at 9. This is not what the antitrust laws, which are inherently commercial, are meant to protect. *See DataCell Ehf v. Visa, Inc.*, No. 1:14-1658, 2015 WL 4624714, at *7 (E.D. Va. July 30, 2015) ("Congress

---

[2]     Louisiana quotes from Justice Thomas's concurrence in *Biden v. Knight First Amendment Institute at Columbia University*, 141 S. Ct. 1220 (2021). *See, e.g.*, Amicus at 2, 8. That is a First Amendment case against the government with no discussion of or relevance to the antitrust laws.

created antitrust laws to protect free market competition, not to protect the free exchange of ideas."). They do not redress harms to First Amendment rights, such as freedom of speech, journalistic diversity or other injuries allegedly suffered in the "marketplace of ideas." *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 983 (D.C. Cir. 2017) ("[A]ntitrust laws protect market (*i.e.* economic) competition."); *see also Adams v. Am. Bar Assoc.*, 400 F. Supp. 219, 223 (E.D. Pa. 1975) ("The antitrust laws are economic in their purpose and effect and clearly do not reach conduct which the plaintiffs perceive as a monopoly of 'free trade in ideas.'").

   **C. Louisiana Cannot Remedy Plaintiffs' Failure to Plead a Restraint of Trade or Harm to Competition.**

Louisiana does not attempt to address whether Plaintiffs have met the requirements for pleading an antitrust claim, including pleading an anticompetitive agreement and antitrust injury. Louisiana argues that "large news organizations [have] enlist[ed] their social media allies to banish journalism at odds with their favored viewpoints." Amicus at 8. But that is exactly what Plaintiffs have failed to allege. The Complaint lacks any plausible allegations that the social media platforms agreed with Defendants to take unlawful action against Plaintiffs, or any news publishers. The factual allegations in the Complaint demonstrate that TNI members, at most, agreed to share information. What each member chose to do with that information was its own independent decision. Plaintiffs have pled no plausible factual allegations supporting an agreement to restrain competition, and Louisiana cannot point to any.[3]

---

[3]  This stands in contrast to *Associated Press v. United States*, 326 U.S. 1 (1945), as that case involved a binding agreement by news publishers to engage in anticompetitive conduct. Specifically, The AP's bylaws prohibited news publisher members from selling news to non-members, effectively blocking non-members from any opportunity to buy news from any of The AP's members, and permitted members to veto new potential members. *Id.* at 8–11.

4

Louisiana argues that the actions of the TNI have reduced the quality and output of news, Amicus at 1, but fails to point to any specific factual allegations supporting these supposed harms to competition. Indeed, the factual allegations in the Complaint show unrestrained competition in the market for online news. *See, e.g.*, Compl. ECF No. 1 at ¶ 163 (alleging there has been "an explosion of new entrants into the news market" through online news publishing). Louisiana speculates that "*[w]ere* multinational news organizations to coordinate a social media boycott of a Louisiana news publication . . . a Louisiana business would suffer appreciable harm to its bottom line." Amicus at 12 (emphasis added). But, Louisiana does not argue that any Louisiana news publication, in fact, has suffered such commercial harm caused by Defendants. Plaintiffs do not allege that they have experienced any economic injuries directly attributable to Defendants' alleged efforts, or even that any of their content was actually suppressed due to an alert shared by a TNI member. Louisiana's amicus brief adds nothing to rebut this failure. These fundamental flaws with Plaintiffs' antitrust claims remain.[4]

        **D.**    *Missouri v. Biden* **Renders Plaintiffs' Antitrust Allegations Implausible.**

Louisiana argues that "Defendants in this case contend that the Plaintiffs are precluded from bringing suit here in light of their allegations in the separate litigation." Amicus at 13. This is incorrect. Defendants do not argue that the First Amendment claims being pursued by Louisiana, as well as some of these Plaintiffs, against government officials preclude this separate private antitrust suit. Defendants reference *Missouri v. Biden*, No. 3:22-1213 (W.D. La. filed May 5, 2022), not to argue that Plaintiffs' claims are precluded, but rather to emphasize the implausibility of Plaintiffs' antitrust claim.

---

[4] Louisiana similarly does not address the Complaint's failures to make plausible allegations against each individual defendant and to allege a plausible *per se* or rule of reason group boycott claim, which remain independent grounds for dismissal.

Under the pleading standards of *Twombly*, an antitrust complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Here, Plaintiffs' Complaint lacks any factual averments to establish that the dominant social media platforms agreed with Defendants to censor Plaintiffs' content.  Nothing in the amicus addresses Plaintiffs' pleading failure in that regard. As Louisiana itself has detailed in *Missouri v. Biden*, it is just as, or even more, plausible that the social media platforms acted in response to governmental pressure (or their own content moderation policies).  Defendants here do not have any coercive power over the social media platforms.  In short, *Missouri v. Biden* underscores that, under the plausibility standard of *Twombly*, Plaintiffs have not stated an antitrust claim.

## II.     THE COURT SHOULD DISREGARD THE FACTS PROFFERED BY LOUISIANA.

Courts in this district have cautioned that "[a]n amicus who argues facts should rarely be welcomed."  *Boudreaux v. Sch. Bd. of St. Mary Par.*, No. 6:65- 11351, 2023 WL 4771231, at *3 (W.D. La. July 24, 2023) (internal quotation omitted).  Yet Louisiana's brief tries to do this, with supposed examples of the power of social media platforms and their acts of alleged censorship. *E.g.*, Amicus at 3–8.  To the extent Louisiana offers facts not supported by allegations in Plaintiffs' Complaint, the Court should disregard them.  On a motion to dismiss, the Court "must limit itself to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Such factual allegations cannot be supplemented by an amicus brief. "A district court must keep in mind the differences between the trial and appellate court forums in determining whether it is appropriate to allow an amicus curiae to participate.  "Chief among those differences is that a district court resolves fact issues." *Sierra Club v. FEMA*, No. H-07-

6

0608, 2007 WL 3472851, at *1 (S.D. Tex. Nov. 14, 2007). Any new facts proffered by Louisiana in its amicus brief should not be considered.

Even if the Court were to consider the facts proffered by Louisiana, they have no relevance to the pending motions. For example, Louisiana identifies individuals whose content has allegedly been censored by social media platforms, such as Senator Rand Paul and Dr. Jay Bhattacharya. Amicus at 4–5. But neither of those individuals is a plaintiff in this case and, moreover, Louisiana does not argue that their alleged censoring by social media platforms was in any way connected to the activities of Defendants or even the TNI more generally.

### III. LOUISIANA'S AMICUS BRIEF DOES NOT BEAR ON DEFENDANTS' MOTION TO TRANSFER.

Louisiana's amicus brief nowhere opposes the Defendants' motion to transfer and accordingly does not impact the transfer analysis. Although Louisiana argues that restricting information harms "Louisiana residents and state officials" because they need a free press to communicate, Amicus at 1, the need for a free press is in no way unique to Louisiana. The same free press concern could be articulated by any state in the union, including New York and the District of Columbia. More importantly, this is not a class action—unnamed residents and state officials of Louisiana are not members of a proposed class—nor are they plaintiffs. While Louisiana points in a footnote to plaintiff Jeffrey Crouere's residency in Louisiana, *id.*, he does not live in this District. Louisiana's amicus brief does not impact Defendants' arguments that transfer of this case is appropriate. The Court can and should transfer this case and need not even reach the merits of Defendants' motion to dismiss.

### CONCLUSION

Defendants respectfully submit that Louisiana's amicus brief does not aid Plaintiffs in their opposition to Defendants' pending motions. The Court should grant Defendants' motion to

7

transfer and transfer this lawsuit to the District of Columbia or the Southern District of New York. Alternatively, the Court should grant Defendants' motion to dismiss and dismiss Plaintiffs' Complaint in its entirety.

Dated: September 11, 2023

Respectfully submitted,

/s/ Leslie E. John
Leslie E. John (*pro hac vice*, #917698)
Elizabeth P. Weissert (*pro hac vice*, #917700)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500; Fax: (215) 864-8999
johnl@ballardspahr.com
weisserte@ballardspahr.com

Jay Ward Brown (*pro hac vice*, #917699)
Ballard Spahr LLP
1909 K Street N.W., 12th Floor
Washington, D.C. 20006
Tel: (202) 661-2200; Fax: (202) 661-2299
brownjay@ballardspahr.com

Loretta Mince #25796
Fishman Haygood LLP
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170
Tel: (504) 586-5252; Fax: (504) 586-5250
lmince@fishmanhaygood.com

*Attorneys for The Associated Press*

/s/ Jan P. Christiansen
Jan P. Christiansen #20142
G. Adam Cossey #31678
Hudson Potts & Bernstein
1800 Hudson Lane, Suite 300
Monroe, Louisiana 71201
Tel: (318) 388-4400; Fax: (318) 388-2758
jpchris@hpblaw.com

/s/ Jeffrey C. Bank
Jeffrey C. Bank (*pro hac vice*, #917708)
Allison B. Smith (*pro hac vice*, #917709)
Wilson Sonsini Goodrich & Rosati
1700 K Street, N.W., 5th Floor
Washington, D.C. 20006
Tel: (202) 973-8800; Fax: (202) 973-8899
jbank@wsgr.com
allison.smith@wsgr.com

Thomas M. McEachin #26412
Andrea V. Timpa #29455
William P. Gibbens #27225
Schonekas, Evans, McGoey
& McEachin, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Tel: (504) 680-6050; Fax: (504) 680-6051
thomas@semmlaw.com
andrea@semmlaw.com
billy@semmlaw.com

*Attorneys for Reuters News & Media Inc.*

/s/ John E. Schmidtlein
John E. Schmidtlein (*pro hac vice*, #917694)
Thomas G. Hentoff (*pro hac vice*, #917696)
Nicholas G. Gamse (*pro hac vice*, #917695)
Kathryn E. Garza (*pro hac vice*, #917697)
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Tel: (202) 434-5000; Fax: (202) 434-5029

acossey@hpblaw.com

Edward B. Schwartz (*pro hac vice*, #914616)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000, East Tower
Washington, D.C., 20005
Tel: (202) 414-9200
eschwartz@reedsmith.com

Michelle A. Mantine (*pro hac vice*, #917715)
Reed Smith LLP
Reed Smith Centre, 225
Fifth Avenue
Pittsburgh, PA, 15222
Tel: (412) 288-3131
mmantine@reedsmith.com

Casey J. Olbrantz (*pro hac vice*, #917713)
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
colbrantz@reedsmith.com

*Attorneys for The British Broadcasting Corporation*

jschmidtlein@wc.com
thentoff@wc.com
ngamse@wc.com
kgarza@wc.com

Bernard S. Johnson #07280
Cook, Yancey, King & Galloway
333 Texas Street, Suite 1700 (71101)
P.O. Box 22260
Shreveport, Louisiana 71120-2260
Tel: (318) 221-6277; Fax: (318) 227-7850
bernard.johnson@cookyancey.com

*Attorneys for WP Company LLC
d/b/a The Washington Post*