UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

---

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, TRIALSITE, INC., CREATIVE DESTRUCTION MEDIA, LLC, ERIN ELIZABETH FINN, JIM HOFT, DR. BEN TAPPER, BEN SWANN, DR. JOSEPH MERCOLA, TY BOLLINGER, CHARLENE BOLLINGER, & JEFF CROUERE, | CIVIL ACTION NO. 3:23-cv-00720 |
| | Judge Terry A. Doughty |
| | Magistrate Judge Kayla D. McClusky |
| *Plaintiffs*, | |
| v. | |
| WP COMPANY, LLC D/B/A THE WASHINGTON POST, THE BRITISH BROADCASTING CORP., THE ASSOCIATED PRESS, & REUTERS NEWS & MEDIA INC., | JURY TRIAL DEMANDED |
| *Defendants.* | |

---

**PLAINTIFFS' SUR-REPLY
IN OPPOSITION TO VENUE TRANSFER**

## INTRODUCTION

Defendants' new evidence and arguments can't save their motion to transfer. That motion is still barred by controlling Supreme Court precedent, and Defendants still do not come close to demonstrating that transfer is "clearly" warranted. Indeed, the genuinely important new evidence in this case is the amicus filed by Louisiana's Attorney General, who expressly attests to this state's profound interests in ensuring its citizens a free market in online news uncorrupted by collusive social media censorship—thus debunking Defendants' claim that no local interests exist here.

## PROCEDURAL STATEMENT

On July 11, 2023, Defendants moved to transfer this case to either Washington, DC or the Southern District of New York. (ECF No. 42.) On August 15, 2023, Plaintiffs responded, showing insuperable defects in Defendants' motion and evidence. (ECF No. 52.)

Among other fatal flaws, Plaintiffs showed that Defendants' motion violated *Hoffman v. Blaski*, 363 U.S. 335 (1960). (*Id*. at 7-8.) Under *Hoffman*—which Defendants neglected to mention in their opening brief—Defendants were required to demonstrate that their proposed transferee courts would have had personal jurisdiction over each and every defendant ***irrespective of a defendant's consent to be sued there***. (*Id*. at 8.) *Hoffman* thus categorically ruled out the Southern District of New York, because Defendants' sole argument for personal jurisdiction in New York over the BBC was the BBC's proffered consent to be sued there. (*Id*. at 9-10.) It also ruled out Washington, DC because of Defendants' reliance on the argument that two other Defendants—Reuters and the AP—would consent to suit in Washington. (*Id*. at 7, 11-12.) As Plaintiffs showed, apart from such consent (which is precluded under *Hoffman*), Defendants' only argument for personal jurisdiction in Washington, DC over Reuters was the claim that Reuters transacts substantial business there, but Defendants' evidentiary submission purporting to prove this fact

1

was utterly insufficient. (*Id*. at 12-13.) In addition, Plaintiffs showed that not a single interest factor clearly favored transfer, while the most important of those factors—witness convenience, the existence of pending related cases, and the familiarity of this Court with the issues raised—favor keeping this case here. (*Id*. at 14-25.)

On August 29, 2023, Defendants filed their venue-transfer reply. (ECF No. 59.) Evidently recognizing the deficiency of their original evidence and argument, the reply improperly submits brand-new evidence and arguments. (ECF No. 59.) This sur-reply responds to the new material.

## **ARGUMENT**

Even if the Court chooses to consider Defendants' new evidence and arguments, their motion to transfer remains fatally defective. Defendants are still trying to violate *Hoffman* and still have not come close to demonstrating that transfer is clearly warranted.

**I.** **Defendants still have not demonstrated—and cannot demonstrate—that Plaintiffs had an "unqualified right" to bring this suit either in New York or Washington.**

As a prerequisite for transfer, a defendant seeking transfer must first prove that the plaintiff had an "***unqualified right***" to bring suit in defendant's preferred venue, including proof that the transferee court would have had personal jurisdiction over all defendants "***irrespective of consent or waiver***." (ECF No. 52 at 7-8 (citing and quoting numerous cases).) Defendants' burden of proof on this issue is a heavy one. "If there is a '***real question***' whether a plaintiff could have commenced the action originally in the transferee forum, it is evident that he would not have an unqualified right to bring his cause" there. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970) (emphasis added). Thus "***any ambiguity is resolved against transfer***." *NRDC v. United States DOE*, No. 17 Civ. 6989, 2018 U.S. Dist. LEXIS 36548, at *13 (S.D.N.Y. Mar. 5, 2018) (emphasis added). Defendants still have not met—and cannot meet—this burden.

      **A.**      **Transfer to the Southern District of New York remains barred by *Hoffman* because Defendants are still relying on BBC's consent to be sued there**.

Recognizing that *Hoffman* bars them from relying on the BBC's representation to this Court that it will consent to suit in New York, Defendants now invoke the BBC's ***previous*** offer of consent to suit in New York, made in the Texas proceedings. (ECF No. 59 at 5.) According to Defendants, the BBC's ***prior*** offer of consent somehow works the magic they need to establish personal jurisdiction over the BBC in New York, even though its ***present*** consent does not. (*Id.*)

This is a brand-new legal theory, and it has therefore been waived. "[A]rguments raised for the first time in a reply brief are waived." *Noble House, L.L.C. v. Certain Underwriters at Lloyd's*, 67 F.4th 243, 249 n.3 (5th Cir. 2023); *Iteld, Bernstein & Assocs., LLC v. Hanover Ins. Gp.*, No. 06-3418, 2009 U.S. Dist. LEXIS 71539, at *11 (E.D. La. Aug. 12, 2009) (same). In any event, it is unsupported by any authority, and mistaken on its own terms.

*Hoffman* and the hundreds of cases decided under it are clear. Defendants ***cannot secure a transfer by "waiv[ing] their statutory defenses as to venue and jurisdiction,"*** *Hoffman,* 363 U.S. at 344 (emphasis added), and thus "defendants have the burden of showing that the case could have been bought in the transferee forum ***irrespective of consent or waiver***." *Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, No. 2:16-CV-01425, 2017 U.S. Dist. LEXIS 213778, at *9 (E.D. Tex. Dec. 28, 2017) (emphasis added). The BBC's ***past*** offer of consent to a New York suit violates this rule just as clearly as does its ***present*** consent.

Moreover, the case Plaintiffs filed in Texas was voluntarily dismissed without prejudice on May 23, 2023 (S.D.N.Y. ECF No. 70), and "[t]he rule in the federal courts is that the effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) ***is to render the [prior] proceedings a nullity and leave the parties as if the action had never been brought***.'" *Thompson v. Greyhound Lines, Inc.*, 574 Fed. Appx. 407, 409 (5th Cir. 2014) (emphasis added). Thus Defendants are

3

invoking a consent that had no legal existence when the instant suit was commenced. *See Hoffman*, 363 U.S. at 342, 344 (defendant must show plaintiff had a right to bring suit in transferee venue ***at the time the present suit was commenced***). Finally, Defendants do not cite a single case suggesting that a defendant's *earlier*-offered consent changes anything, or any sound reason why it should. So novel an argument necessarily leaves open a "real question," and "[i]f there is a 'real question' whether a plaintiff could have commenced the action originally in the transferee forum, it is evident that he would not have an unqualified right to bring his cause" there. *Shutte*, 431 F.2d at 24.

> **B. Transfer to Washington, DC is similarly barred because Defendants have failed to prove personal jurisdiction over Reuters.**

In their opening brief, Defendants sought to establish personal jurisdiction in Washington, DC over Reuters by asserting that "all Defendants agree to consent to personal jurisdiction in the District of Columbia." (ECF No. 42 at 9 & n.2.) Because this gambit directly violated *Hoffman*, Defendants have now submitted new arguments and new evidence.

Defendants now argue that Plaintiffs have "conceded" that Reuters transacts business in Washington, DC because the Complaint "alleges that each of the Defendants is 'transacting substantial business in every American state and district,'" and this "allegation[] must be 'accepted as true' for purposes of this motion." (ECF No. 59 at 2.) This new argument is both waived and erroneous. Defendants have apparently forgotten that "legal conclusions" and "conclusory allegations" asserted in a complaint are ***not*** assumed true. *See, e.g.*, *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) ("we 'do not accept as true "conclusory allegations" [or] "legal conclusions."'") (citations omitted); *Charles v. SBC Disability Income Plan*, No. 6:05-CV-006-C, 2005 U.S. Dist. LEXIS 59510, at *5 (N.D. Tex. Sept. 19, 2005) ("once a defendant challenges venue, conclusory allegations, speculation, and unsubstantiated assertions cannot be used to establish proper venue"). The venue-predicating assertion that all Defendants "transact[]

4

substantial business in every American . . . district" is just such an allegation.

Moreover, a plaintiff is "permitted to set out conflicting alternative theories in its complaint without one constituting an admission against the other." *Zee Co. v. Williams, Mullen, Clark & Dobbins, P.C.*, 547 Fed. Appx. 166, 168 n.3 (4th Cir. 2013); *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985). On top of that, Defendants' new theory **contradicts Defendants' own arguments**: if the Complaint's assertion that all Defendants transact substantial business in every district is assumed true, then Defendants' claim that this Court lacks personal jurisdiction over the BBC (*see* ECF No. 42 at 22), premised on the (erroneous) claim that the BBC does ***not*** transact business in this District, must be rejected. Defendants cannot have it both ways. By moving for transfer, Defendants incurred the burden of coming forward with ***facts*** and ***evidence*** affirmatively proving that Reuters News & Media Inc. transacts substantial business in Washington, DC—as opposed to relying on a legal conclusion in the Complaint.

Recognizing this deficiency, Defendants have improperly submitted new declarations from new declarants. One of these, the "Murray Declaration," asserts that "Reuters" has an office at 1333 H. St. NW Washington, DC and that "Reuters" has "over 135 editorial and other staff based in Washington." (ECF No. 59-1 at 2.) This declaration should not be considered,[1] but in any event, it remains deficient because it never connects the declarant to the actual Defendant in this case (Reuters News & Media Inc.) and carefully omits to say which of Thomson Reuters' multi-billion dollar businesses is located at 1333 H. St. or employs the staff "based" in Washington, DC.

---

[1] While this Court has not struck Defendants' new declarations, it should not consider them. "[T]he purpose of a reply brief is to rebut the nonmovant's response with argument, not to introduce new evidence," and it is therefore "improper for a party to introduce new evidence at the reply stage of a motion proceeding." *Heatcraft Refrigeration Prods. LLC v. Freezing Equip. Co.*, No. 3:20-CV-1689-L, 2020 U.S. Dist. LEXIS 255165, at *1 n.2 (N.D. Tex. Aug. 3, 2020); *see Redhawk Holdings Corp. v. Schreiber*, 836 Fed. Appx. 232, 235 (5th Cir. 2020) (courts in Fifth Circuit generally do not "consider arguments and evidence raised for the first time in a reply brief").

Reuters News & Media Inc., a New York corporation, is the Defendant in this case. (ECF No. 1 at ¶ 119.) It is part of Thomson Reuters, a multi-billion dollar corporation operating numerous major lines of business (including, e.g., West Publishing).[2] Thomson Reuters is itself sometimes referred to as "Reuters,"[3] and in addition there are apparently at least *eight* other affiliate companies called "Reuters" nested in an incredibly complex ownership structure.[4] The Thomson Reuters website identifies the office at 1333 H St. as a "***Thomson Reuters***" location;[5] a Thomson Reuters document suggests that West has worked out of that office;[6] and a Reuters public filing lists 1333 H. Street as the address of a major Thomson Reuters subsidiary called "Court Express."[7] If Reuters News & Media Inc. in fact employs any of the "over 135" "staff" based in Washington, the Murray Declaration does not say how many.

It is well established that the Clayton Act's substantial-transaction-of-business test (the test

---

[2] Thomson Reuters, Annual Report 2022, https://ir.thomsonreuters.com/static-files/c8f80e59-857a-4312-a478-e7dc1e206891, at 2, 4, 90. *See Hernandez v. Wells Fargo & Co.*, No. 18-cv-07354, 2019 U.S. Dist. LEXIS 114817, at *14 (N.D. Cal. July 10, 2019) ("[P]arty admissions may be judicially noticed for the truth of the matter if requested by the opposing party.").

[3] "On July 10, Thomson Reuters announced plans to sell its intellectual property and science business to private-equity funds . . . for $3.55 billion. The intellectual property and science business ***owned by Reuters*** provided intellectual property . . . ." Editage, https://www.editage.com/insights/thomson-reuters-sells-its-intellectual-property-and-science-business-for-355-billion/1468334191 (emphasis added). *See also, e.g.*, S.D. Legislator Reference Book, 2019-2020 Term, https://mylrc.sdlegislature.gov/api/Documents/171829.pdf at 57 ("The current code is published by Thomson West, which is ***owned by Reuters***.") (emphasis added).

[4] "Reuters C LLC is wholly-owned by Reuters America Holdings Inc., which is wholly-owned by Reuters International Holdings S.A.R.L., which is wholly-owned by Reuters Overseas Holdings BV, which is 98.6% owned by Reuters Group Overseas Holdings (UK) Limited, which is wholly-owned by Reuters Limited, which is wholly-owned by Reuters Holdings Limited, which is 96.5% owned by Reuters Group PLC." Thomson Reuters, SEC Filing, https://ir.thomsonreuters.com/node/28121/html (spelling corrected).

[5] Thomson Reuters, Washington DC Location, https://www.thomsonreuters.com/en/locations/location-detail.html/washington-dc-location.

[6] *See* Thomson Reuters, https://legal.thomsonreuters.com/content/dam/ewp-m/documents/legal/en/pdf/other/2020_invite-year-review-conference.pdf (describing conference organized by West Publishing and using "1333 H St." in Washington as contact address).

[7] NUCLEAR REGULATORY COMM., https://www.nrc.gov/docs/ML1805/ML18053A341.pdf at 3.

at issue here) distinguishes between activities of a defendant corporation and the activities of its parent or subsidiaries, unless the parent is proven to satisfy certain control criteria. (*See* ECF No. 53 at 13.) To prove that Defendant Reuters News & Media Inc. transacts substantial business in Washington, DC, Defendants would have had to prove either that such control criteria exist here or else that Reuters News & Media Inc.—not Thomson Reuters or some other entity in the byzantine Reuters corporate structure—is the actual leaseholder of 1333 H St. ***and*** the employer of the "over 135" "staff" based in Washington (or at the very least specify how many of those employees are Reuters News & Media Inc. employees).

But the Murray Declaration does not do any of this. Instead it says only that "Reuters" does business in Washington and leaves open a "real question" about how much business activity is actually conducted by Defendant Reuters News & Media Inc. "If there is a '***real question***' whether a plaintiff could have commenced the action originally in the transferee forum, it is evident that he would not have an ***unqualified right*** to bring his cause" there. *Shutte*, 431 F.2d at 24 (emphasis added). The Murray Declaration is ambiguous on the critical facts at issue, and "***any ambiguity is resolved against transfer***." *NRDC v. United States DOE*, 2018 U.S. Dist. LEXIS 36548, at *13 (emphasis added); *see also, e.g.*, *Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*, No. 2:19-CV-00266, 2020 U.S. Dist. LEXIS 208572, at *6 (E.D. Tex. Sep. 30, 2020) ("when deciding a motion to transfer venue under § 1404(a), the court may consider ***undisputed*** facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party") (emphasis added).[8]

---

[8] The Murray Declaration (at 1-2) points out (correctly) that reuters.com reaches customers in Washington, but makes no showing that Defendant Reuters News and Media Inc. owns or operates that website or that the website is interactive. (*Cf.* ECF No. 53 at 17-19 (showing that bbc.com is owned and operated by the BBC and interactive).)

**II.      Defendants' new evidence and arguments don't come close to proving that transfer is clearly warranted—or even that transfer is clearly favored under any factor.**

If Defendant had cleared the *Hoffman* bar (which they have not), they would next bear the "significant burden" of proving that transfer is "***clearly***" warranted. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) (emphasis added). Under this "elevated burden" of proof, the "moving party 'must show ***materially more than a mere preponderance of convenience***.'" *United Servs. Auto. Ass'n v. Truist Bank*, No. 2:22-CV00291, 2023 U.S. Dist. LEXIS 62443, at *4 (E.D. Tex. Apr. 8, 2023) (citations omitted) (emphasis added). In assessing whether Defendants have made this showing, the Court accepts as true the Complaint's factual allegations, draws all reasonable inferences in Plaintiffs' favor, and resolves all factual conflicts in Plaintiffs' favor as well. (*See* ECF No. 52 at 5-6 & n.1 (collecting cases).)

**A.      Defendants' new evidence and arguments fail again to prove that witness convenience clearly favors transfer.**

In their opposition, Plaintiffs showed in detail that the highly important witness convenience factor, far from clearly favoring New York or Washington, actually favors this District, because the key non-party witnesses (the most important for venue transfer purposes) will be employees of the TNI's West Coast-based Big Tech Members, and Monroe is significantly closer to the West Coast than are Defendants' East Coast transferee venues. (ECF No. 52 at 17-20.) Defendants' reply now submits new evidence purporting to show for the first time that flight time from California is longer to Monroe than to the East Coast. (ECF No. 59 at 8 n.8.)

This new evidence is almost comically deficient. First, it consists solely of Google links, which would be manifestly non-noticeable even if they worked. But second, the links do not work; they generate error messages. Third, most important, the Fifth Circuit (like other courts) holds that witness convenience is measured not by time, but by ***distance***. *See, e.g.*, *In re Volkswagen AG*,

8

371 F.3d 201, 204-05 (5th Cir. 2004). And one fact that *is* judicially noticeable is that the West Coast is some **seven hundred miles closer** to Monroe than to the East Coast.

With respect to European-based witnesses, Defendants' reply asserts for the first time (ECF No. 59 at 7-8) that this Court should ignore the dozens of cases holding that foreign witnesses are a neutral factor in transfer analysis. According to Defendants, the "better approach" is to look exclusively at the distance the European witnesses will have to travel (ECF No. 59 at 7)—precisely the approach Defendants reject for West Coast witnesses. But Defendants have it backwards. Distance *is* the measure for ***U.S.-based*** witnesses (see *Volkswagen AG*, 371 F.3d at 204-05; ECF No. 52 at 19-20), whereas Defendants are flouting the case law when it comes to ***foreign*** witnesses. *See, e.g.*, *Phoji, Inc. v. Atlassian, Inc.*, No. 6:21-cv-00888, 2022 U.S. Dist. LEXIS 116531, at *10-11 (W.D. Tex. June 23, 2022) ("the Court accords little to no weight to [foreign] witnesses under this factor because they will have to travel a great distance independent of the result") (citing numerous cases). (*See also* ECF No. 52 at 20-21 & n.15 (collecting numerous other cases).)

**B.      Defendants' new compulsory process argument fails.**

Defendants' reply brief, while acknowledging that the compulsory process factor applies only to ***unwilling*** witnesses, argues for the first time that Defendants have no obligation to ***identify*** unwilling witnesses and protests that Defendants cannot be "clairvoyant" about whether their witnesses (many of them their own employees) will be unwilling. (ECF 59 at 7.) Unfortunately for Defendants, this new argument too flies in the face of the case law. *See, e.g.*, *Morgan v. Sewell*, No. 5:22-CV-89, 2023 U.S. Dist. LEXIS 25470, at *8 (S.D. Miss. Feb. 15, 2023) ("the Court notes that Defendants have failed to identify any particular unwilling witnesses . . . . As such, this factor does not weigh in favor of changing venue.") (citations to numerous in-Circuit cases omitted).

**C.      Defendants' new argument about the related cases currently pending before this Court is erroneous.**

The existence of related cases pending in a given forum is a "powerful reason" favoring that forum in a transfer motion. *See Cornerstone Sys. v. Prestress Servs. Indus., LLC*, No. 2:15-cv-02255, 2016 U.S. Dist. LEXIS 87946, at *17 (W.D. Tenn. July 7, 2016) (collecting numerous cases). Here, three related cases are currently pending before this Court. (*See* ECF No. 52 at 5 (identifying those cases).) In their reply brief, Defendants argue for the first time that the related cases are "not related." (ECF No. 59 at 2, 10.) Defendants are wrong. Like this case, the three related cases: involve censorship of COVID-related and political speech by Google, Facebook, and Twitter (all members of the TNI); share overlapping parties with this case (e.g., Children's Health Defense and Jim Hoft); and in one case share pages of identical allegations as well. (*See* ECF No. 52 at 5.) Moreover, the First Amendment issues raised in those cases are highly relevant here because, as Plaintiffs have shown, the Sherman Act is to be interpreted in news industry cases to further First Amendment principles and interests. (*See* ECF No. 51 at 23.) Try as they might, Defendants cannot escape the fact that this Court is more familiar with the issues presented by this case than any other court in the country.

### D. General Landry has refuted Defendants' new local-interest argument.

In their reply, Defendants contend (for the first time) that there are no local interests here on the ground that the Attorney General's litigation in *Missouri v. Biden* shows that local interests exist only in **First Amendment** social media censorship cases. (*See* ECF No. 59 at 10 & n.10.) But as just stated, First Amendment interests are crucially at issue here. Even more important, Defendants' contention has now been decisively refuted by General Landry himself, whose amicus brief expressly attests to Louisiana's profound interests in this case. (*See* ECF No. 62 at 1-2.)

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully ask the Court to deny transfer.

Date: September 15, 2023

Respectfully submitted,

*/s/ G. Shelly Maturin, II*
_____

| | |
|---|---|
| G. SHELLY MATURIN, II (# 26994)<br>WELBORN & HARGETT, LLC<br>1540 W. Pinhook Road<br>Lafayette, LA 70503<br>Telephone: (337) 234-5533<br>Facsimile: (337) 769-3173<br>shelly@wandhlawfirm.com<br><br>JOHN W. HOWARD (CA 80200)<br>SCOTT J. STREET (CA 258962)<br>JW HOWARD/ATTORNEYS, LTD.<br>600 West Broadway, Ste. 1400<br>San Diego, CA 92101<br>Telephone: (213) 205-2800<br>johnh@jwhowardattorneys.com<br>sstreet@jwhowardattorneys.com<br><br>Attorneys for Plaintiffs | JED RUBENFELD (NY 2214104)<br>(pro hac vice)<br>1031 Forest Rd.<br>New Haven, CT 06515<br>Telephone: (203) 432-7631<br>jed.rubenfeld@yale.edu<br><br>ROBERT F. KENNEDY, JR. (NY 1999993)<br>(pro hac vice forthcoming)<br>48 Dewitt Mills Rd.<br>Hurley, NY 12433<br>Telephone: (845) 481-2622<br>(pro hac vice)<br><br>ROGER I. TEICH (CA 147076)<br>(pro hac vice)<br>337 Liberty St.<br>San Francisco, CA 94110<br>Telephone: (415) 948-0045<br>rteich@juno.com<br><br>Attorneys for Children's Health Defense |

## **CERTIFICATE OF SERVICE**

This is to certify that on the 15th day of September, 2023, a true and correct copy of the above and foregoing was filed with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to all attorneys of record.

*/s/ G. Shelly Maturin, II*
_____

G. SHELLY MATURIN, II