**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **CHILDRENS HEALTH DEFENSE ET AL** | **CASE NO. 3:23-CV-00720** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **W P COMPANY LLC DBA THE WASHINGTON POST, ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

Before the Court is a Motion to Transfer Case [Doc. No. 42] filed by Defendants The Associated Press ("the AP"), Reuters News & Media, Inc. ("Reuters"), and WP Company LLC, dba The Washington Post ("the Post"). An Opposition [Doc. No. 52] was filed by Plaintiffs Children's Health Defense ("Children's Health"), Trialsite, Inc. ("Trialsite"), Creative Destruction Media, Inc. LLC, ("Creative"), Erin E. Finn ("Finn"), Jim Hoft ("Hoft"), Ben Tapper ("Tapper"), Ben Swann ("Swann"), Dr. Joseph Mercola ("Mercola"), Ty Bollinger ("Bollinger"), Charline Bollinger ("Charlene"), and Jeff Crouere ("Crouere"). A Reply [Doc. No. 59] was filed by the AP, Reuters, and The Post. A Sur-Reply [Doc. No. 75] was filed by Plaintiffs.

For the reasons set forth herein, the Motion to Transfer is **GRANTED** to transfer this matter to the District of Columbia. The Motion to Transfer this case to the Southern District of New York is **DENIED.**

**I.     BACKGROUND**

The issue in this ruling is whether the present action should be heard in the Western District of Louisiana ("WDLA"), or whether the present action should be transferred to the Southern District of New York ("SDNY") or to the District of Columbia ("DC").

1

The present action is an antitrust action with a free speech twist. Children's Health, Trialsite, Creative, Finn, Hoft, Tapper, Swann, Mercola, Bollinger, Charlene and Crouere filed a Complaint in the WDLA, Monroe Division on May 31, 2023.[1] Defendants, the AP, Reuters, The Post, and the British Broadcasting Corporation ("BBC"), are major online news publishing businesses.

Defendants are alleged to be members of a partnership called the Trusted News Initiative ("TNI"). Defendants are alleged to have, as part of the TNI, worked together to exclude rival news from publishers from the world's dominant Internet platforms."[2] Plaintiffs further allege that Defendants engaged in a "group boycott" which violates the Sherman Act.[3]

Specifically, Plaintiffs allege Defendants, through the TNI, have worked to persuade social media companies to join them in censoring claims labeled by the TNI as "misinformation."[4] Plaintiffs allege they have been damaged as a result of Defendants' actions in keeping Plaintiffs' rival news from reaching the American public.[5]

The present action[6] was originally filed in the Northern District of Texas ("NDTX"), Amarillo Division. Defendants filed a motion to transfer the case to the SDNY. On May 12, 2023, Judge Matthew J. Kacsmaryk granted[7] Defendants' motion transferring the suit to the SDNY.[8] After the case was transferred to the SDNY (and docketed as Case Number 23-cv-4072), Plaintiffs voluntarily dismissed the suit pursuant to FED. R. CIV. P. 41(a) on May 23, 2023, and filed the present proceeding on May 31, 2023.

---

[1] [Doc. No. 1]
[2] [Id. at ¶ 5]
[3] [Id. at ¶ 6]
[4] [Id. at ¶¶ 286, 291, 294, and 306]
[5] [Id. at ¶¶ 308, 312, 363]
[6] Crouere was not a Plaintiff in the previous suit filed in the Northern District of Texas.
[7] 2023 WL 3940446 (N.D. Texas, May 22, 2023)
[8] Plaintiffs argue that the ruling was inadvertently issued prior to the deadline for Plaintiffs to respond and that Judge Kacsmaryk thought the motion was uncontested.

Plaintiffs maintain the present action is proper in the WDLA, while the Defendants maintain the present action should be transferred to the SDNY or to the DC pursuant to 28 U.S.C. § 1404(a).

## II. LAW AND ANALYSIS

### A. Standard for Change of Venue Under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division **where it might have been brought** or to any district or division to which all parties have consented." A defendant seeking a transfer of venue must demonstrate that the plaintiff could have originally brought the action in the transferee court. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

After this initial showing has been made, the defendant must then demonstrate "good cause" why the case should be transferred. *In re Volkswagen of Am. Inc*., 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). A defendant can carry this burden by showing, through the relevant private and public interest factors enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 505, 508 (1947) ("*Gilbert*") that the transferee district is a more convenient venue. *Volkswagen II*, 545 F.3d 304, 315.

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other pretrial problems that make trial of the case easy, expeditious, and inexpensive. *Id*. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the evidence of

unnecessary problems of conflict of laws or in the application of foreign law. *Id.* Although the *Gilbert* factors are appropriate for most transfer cases, they are not necessarily exclusive, *Id.* and none can be said to be of dispositive weight. *Action Indus. Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2014).

### B. Where It Might Have Been Brought

The first step of 28 U.S.C. § 1404(a) requires the transferee court be a court where the suit "might have been brought" by plaintiffs. Defendants argue the SDNY, and the DC are districts where the Plaintiffs' suit might have been brought. Plaintiffs argue it could not have been brought in either district.

Children's Health is incorporated in California and headquartered in New Jersey.[9] Trialsite is incorporated and headquartered in Utah.[10] Creative is incorporated and headquartered in Wyoming.[11] Finn resides in Florida.[12] Tapper resides in Nebraska.[13] Hoft resides in Missouri.[14] Swann resides in Georgia.[15] Ty and Charlene Bollinger reside in Tennessee.[16] Mercola lives in Florida. Crouere lives in Louisiana [17].

The Post is incorporated in Delaware and headquartered in Washington, DC.[18] BBC is a corporation formed in the United Kingdom with its principal place of business in London, England.[19] The AP is a cooperative, unincorporated association headquartered in New York.[20]

---

[9] [Doc. No. 1 at ¶ 39]
[10] [Id. at ¶ 43]
[11] [Id. at ¶ 53]
[12] [Id. at ¶ 61]
[13] [Id. at ¶ 69]
[14] [Id. at ¶ 75]
[15] [Id. at ¶ 87]
[16] [Id. at ¶ 96]
[17] [Doc. No. 52-2], Declaration of Jeff Crouere
[18] [Id. at ¶ 116]
[19] [Id. at ¶ 117]
[20] [Id. at ¶ 118]

Reuters is a New York Corporation based in London, England, with its principal place of business within the United States in New York, New York.[21]

### (i) Venue

In an antitrust action, venue is proper, and all Defendants are subject to personal jurisdiction where they are "inhabitants" or where they "transact business." 15 U.S.C. § 22. The party seeking transfer has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Extreme Technologies, LLC v. Stabil Drill Specialties, LLC*, 2019 WL 2353168 at 2 (W.D. La. May 30, 2019). Courts have found that a defendant is an "inhabitant" under 15 U.S.C. § 22 when it is "incorporated under the laws of that jurisdiction," and a defendant "transacts business" when its business activities are of a "substantial character" in the jurisdiction. *Acad. Of Allergy & Asthma in Primary Care v. La. Health Serv. & Indemnity Co.*, 2020 WL 4050243 at 3 (E.D. La. July 17, 2020).

### (ii) Southern District of New York

The Post declared a substantial portion of its business functions are performed in New York, New York.[22] The BBC is an inhabitant of the DC, but BBC declares it will not contest jurisdiction in this action if the suit is transferred to the SDNY.[23] The AP and Reuters declare they are principally operated out of New York, New York, but each has a smaller, although substantial office in the DC.[24] Therefore, Defendants argue the action could have been brought by Plaintiffs in the SDNY.

Plaintiffs however maintain they could not have brought the action in the SDNY because BBC cannot consent to jurisdiction. In *Hoffman v. Blaski*, 363 U.S. 335 (1960), the Supreme Court

---

[21] [Doc. No. 42-4], Declaration of Jane Barrett
[22] [Doc. No. 42-4], Declaration of Peter Wellston
[23] [Id at ¶ 4]
[24] [Doc. No. 42-3 ¶¶ 4-5], Declaration of John Daniszewski, [Doc. No. 42-4 at ¶¶ 4-5], Declaration of Jane Barrett

of the United States held that under the express language of 28 U.S.C. § 1404(a), a plaintiff must have had a "right" to bring the case in the transferee court at the time of filing, and defendants cannot secure a transfer by "waiving their statutory defenses as to venue and jurisdiction."

This Court finds this action therefore could not have been brought against BBC in the SDNY.

### (iii) District of Columbia

Defendants argue this action could have been brought by Plaintiffs in the DC because The Post is headquartered in Washington, DC,[25] The AP has an office and conducts substantial business in Washington DC,[26] Reuters has its principal place of business in Washington, DC,[27] and because a majority of BBC's United States Staff works in the BBC bureau in Washington, DC, where BBC also incorporated.[28]

Plaintiffs argue they could not have brought the suit in the DC because Defendants have failed to prove that Reuters transacts "substantial business" in Washington, DC. Plaintiffs point to the Declaration of Jonathan Munro,[29] where Munro declares that less than 150 of its 17,000 staff reside in the United States, a majority of which work out of Washington, DC. Plaintiffs argue the declaration does not say whether Reuters transacts "substantial business" (or any business) in Washington, DC and is insufficient to meet Defendants' burden of proof, to prove the requirement of substantial transaction of business.

In Reply, Defendants submit the Declaration of Kieran Murray,[30] which declares Reuters has maintained ongoing operations in Washington, DC for several decades. Murry further declared

---

[25] [Doc. No. 42-2]
[26] [Doc. No. 42-3], Declaration of John Daniszewski
[27] [Doc. No. 42-4]
[28] [Doc. No. 39-2 ¶ 10]
[29] [Id]
[30] [Doc. No. 59-1]

Reuters currently has approximately 135 editorial and other staff based in Washington, DC, and that Reuters performs news gathering, reporting, and editing activities for customers around the world. Murry further declared Reuters provides news coverage to media organizations based in Washington, DC and this is substantial and core to Reuter's news business.

Therefore, this Court finds the Post, the AP, Reuters, and BBC all transact substantial business in the DC and that Plaintiffs could have brought the suit in the DC against the Defendants.

### C. Convenience

The only proposed transferee court in which this action could have been brought is in the DC. The question becomes whether the DC is "clearly more convenient" than the WDLA by applying the *Gilbert* private and public interest factors.

#### (i) Private Interest Factors

#### (1) Ease of Access to Sources of Proof

This factor examines the location of documents and physical evidence. *Volkswagen*, 545 F.3d at 316. Defendants argue the relevant documents would be found in the Defendant's respective headquarters in New York, the District of Columbia and London. Defendants point out no relevant documents will be found in the WDLA or anywhere close to the WDLA. In the event Plaintiffs themselves have documents, Defendants argue they will be found in California, New Jersey, Utah, Wyoming, Florida, Nebraska, Missouri, Georgia, Tennessee, and in Louisiana.

Plaintiffs argue that much of the evidence is electronic and it would be located in social media companies' offices in California. Plaintiffs argue that the factor is neutral because the location of the documents is entitled to little weight because the documents are electronic. The Fifth Circuit has rejected that argument, finding that although the access is a lesser inconvenience

7

because of relative ease of access to sources of proof, that is still a meaningful factor in the analysis. That is where the items are located. 545 F.3d 304, 316 (5th Cir. 2008).

Although it appears any evidentiary documents could be located all over the country, more of the documents would be located near the DC than the WDLA. Therefore, this factor weighs in favor of transfer.

### (2) Availability of Compulsory Process

The second private interest factor is the availability of compulsory process[31] to secure the attendance of witnesses. Defendants argue the DC has subpoena power over many potential witnesses, while the WDLA has subpoena power over no witnesses.

Plaintiffs argue this factor is neutral because many witnesses lie beyond the subpoena power of either court. Except for the possible subpoena power over Crouere (who lives in New Orleans, Louisiana), the WDLA does not have subpoena power over any witness. Although the DC does not have subpoena power over all witnesses, it certainly has subpoena power over more than the WDLA. The Declaration of Peter Wallsten[32] lists himself, Greg Barber and Cameron Barr as likely witnesses that live in or near Washington, DC.

Therefore, this factor favors transfer.

### (3) Cost for Attendance of Willing Witnesses

The Court in *Volkswagen I*, 371 F.3d at 204-05, set a 100-mile threshold that when the distance between an existing venue for trial and a proposed venue is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional travel time increases the probability for meal and lodging expenses, and overnight stays, requiring witnesses to be away from their regular employment.

---

[31] Fed. R. Civ. P. 45
[32] [Doc. No. 42-2]

8

This factor is often recognized as the most important factor to be considered. *Nexen Petroleum U.S.A. Inc. v. Ensco Offshore Co.*, 2015 WL 6511879 (W.D. La., Oct. 27, 2015) at 4. Special attention is given to nonparty witnesses. *Cornelius v. Am. Com. Barge Line, LLC*, 2021 WL 4762578 (W.D. La., October 12, 2021) at 3. This factor strongly weighs in favor of transfer.

Defendants have identified several current and former employees that possess relevant information as to the Post, the AP, Reuters, and BBC's involvement in the TNI. The Post employees include Peter Wallsten (Washington, DC), Greg Barber (former, Arlington, Virginia,[33] and Cameron Barr (former, Washington DC, to relocate to England). The AP potential witnesses include John Daniszewski (New York, NY) and Barbara Whitaker (works in New York and resides in Connecticut).[34]

BBC potential witnesses involved with the TNI are Tony Hall (former, England); Jamie Angus (former, United Arab Emirates); and Jess Cecil (former, United Kingdom).[35] Reuters employees who worked with the TNI are Jane Berrett (England); Hazel Baker (former, England); Stephanie Burnett (Netherlands); Michael Friedenberg (former, New York or Pennsylvania); and Steve Adler (former, New York).

Plaintiffs argue that the WDLA would be more convenient because of potential witnesses from Facebook, Google, Twitter, and Microsoft, all which likely live in California or on the West Coast. Plaintiffs maintain Monroe, Louisiana, is a much closer venue than the DC. Plaintiffs also maintain witnesses located abroad are a neutral factor since witnesses located abroad would have to travel a great distance no matter what. Plaintiffs also argue that as to US witnesses, taken

---

[33] [Id.]
[34] [Doc. No. 42-3]
[35] [Doc. No. 39-2]

together, the WDLA is the superior forum, because the US witnesses are spread out all over the country, and Louisiana is much more centrally located than Washington, DC.

This Court finds that this factor weighs in favor of transfer. The DC is a commercial hub with numerous hotels, modes of transportation, direct flights, restaurants, two airports, and other conveniences. Monroe is a much smaller city, with one airport and very few direct flights. Several of Defendants' witnesses that worked with TNI live in the DC area. Although flights from the West Coast to Louisiana may be a few hundred miles shorter, it would not be more convenient. There are no direct flights from anywhere in California to Monroe, Louisiana. The same with persons living abroad. There are no direct flights from anywhere outside the United States to Monroe, Louisiana.

Plaintiffs are from California, New Jersey, Utah, Wyoming, Florida, Nebraska, Missouri, Georgia, Tennessee, and Louisiana. Some are closer to Louisiana, and some are closer to Washington DC. Overall, this Court believes a trial in the DC would be more convenient.

**(4)    Other Practical Problems**

Defendants argue that the WDLA has no personal jurisdiction over BBC[36] and severing a case as a result of lack of jurisdiction is strongly disfavored. Defendants also argue 28 U.S.C. § 1404 does not allow a partial transfer except in special circumstances. Plaintiffs argue its claim of venue is entitled to special weight, especially in antitrust cases. Defendants maintain that this is Plaintiffs' second choice, not first choice, and should not be entitled to deference.

Taking all of this together, this Court finds this factor is neutral. There has not yet been a determination whether the WDLA has jurisdiction over BBC and the WDLA actually was Plaintiffs' second choice.

---

[36] [Pending Motion to Dismiss, Doc. No. 39]

10

### (ii) Public Interest Factors

#### (1) Court Congestion

This factor favors a district that can bring a case to trial faster. Courts commonly consider federal judicial caseload statistics to determine whether one Court's docket is more congested than another. *Hard Metal Advantage*, 2022 WL 1088887 at 5. The median time from filing to disposition in the DC was 4.7 months, while it was 9.1 months in the WDLA.

Plaintiffs do not contest these statistics. This Court finds this factor favors transfer.

#### (2) Local Interest

The Court must consider any localized interests in deciding local interests within its own district. *Crochet v. Seadrill Americas Inc.*, 2022 WL 18492150 at 3 (W.D. La. Dec. 19, 2022). Defendants argue there is no local interest by the WDLA in this case. There are no plaintiffs or defendants that are located within the WDLA. The Post has its office in the DC. BBC has its United States operations in the DC. The AP has an office in the DC. Reuters has a U.S. based editorial staff in the DC.

This Court finds the local interest factor favors transfer.

#### (3) Familiarity With the Law

Defendants maintain this factor is neutral, as federal courts are equally familiar with federal statutes. *Haughton v. Plan Admin. of Xerox Corp. Ret. Income Guarantee Plan*, 2 F. Supp. 3d 928 (W.D. La. 2014). Plaintiffs argue this factor favors keeping this case in the WDLA because this Court is familiar with the censorship of social media because of the case of *Missouri v. Biden*, 3:22-1213, W.D. La., Monroe Division, and related cases.

However, this case is primarily an antitrust case involving private social media companies and private companies. *Missouri v. Biden* is not an antitrust case, but a case involving federal

11

agencies who are alleged to have coerced or significantly encouraged social media companies to take down content.

This Court finds both courts are equally able to apply the law and this factor is neutral.

### (4) Conflict of Laws

The final factor is the avoidance of unnecessary problems due to conflict of laws. Since this is an antitrust case in which federal law applies, there are no conflicts. Therefore, this factor is neutral.

### III. CONCLUSION

For the reasons set forth herein, this Court finds this case could have been brought by Plaintiffs in the District of Columbia, but not in the Southern District of New York.

In evaluating the public and private *Gilbert* factors, this Court finds five of the factors favor transfer to the DC, three factors are neutral, and no factors favor this case remaining in the WDLA.

Therefore,

**IT IS ORDERED** that the Motion to Transfer Case [Doc. No. 42] is **GRANTED** as to the request to transfer the case to the District of Columbia. It is **DENIED** as to the request to transfer the case to the Southern District of New York.

**IT IS FURTHER ORDERED** that this proceeding be transferred to the District of Columbia.

**MONROE, LOUISIANA**, this 18th day of September 2023.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE